## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL M. GORDON,[1] | * |
| PATRICIA A. HARTMAN, and | * |
| JOSEPH W. TIRRELL | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| EXECUTIVE OFFICE | * |
| OF THE PRESIDENT | * |
| 1600 Pennsylvania Avenue, N.W. | * |
| Washington, D.C. 20500 | * |
| | * |
| and | * |
| | * |
| PAMELA J. BONDI, | * |
| in her official capacity as Attorney General | * |
| of the DEPARTMENT OF JUSTICE | *     Civil Action No: 25-_____ |
| 950 Pennsylvania Avenue, NW | * |
| Washington, D.C. 20530 | *     **JURY TRIAL DEMANDED** |
| | * |
| and | * |
| | * |
| DEPARTMENT OF JUSTICE | * |
| 950 Pennsylvania Avenue, NW | * |
| Washington, D.C. 20530 | * |
| | * |
| and | * |
| | * |
| THE UNITED STATES OF AMERICA | * |
| Washington, D.C. 20500 | * |
| | * |
| Defendants. | * |
| | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

---

[1] Pursuant to Local Civil Rule 5.1(c)(1), Plaintiffs' residential addresses are being filed under seal with the Court in a separate Notice of Filing.

1

## COMPLAINT

Plaintiffs Michael M. Gordon, Patricia A. Hartman, and Joseph W. Tirrell served as distinguished public servants for the United States Department of Justice ("DOJ") throughout both Republican and Democratic administrations. At the time relevant here, Mr. Gordon was an Assistant United States Attorney in the U.S. Attorney's Office for the Middle District of Florida, and in the aftermath of the January 6th insurrection, was also detailed as Senior Trial Counsel to the Capitol Siege Section of the U.S. Attorney's Office in Washington, D.C. to assist with the prosecution of January 6th-related defendants. Ms. Hartman was a Supervisory Public Affairs Specialist in DOJ's U.S. Attorney's Office for the District of Columbia. Mr. Tirrell served as the senior-most executive in charge of DOJ's Departmental Ethics Office in Washington, D.C. As government employees, Plaintiffs were all members of the federal civil service, and Mr. Tirrell was also a member of the Senior Executive Service.

Disregarding long-standing statutory and regulatory protections that govern how and when members of the civil service can be terminated, and the limits thereof, Attorney General Pamela Bondi individually informed Plaintiffs by one-page memoranda that they were summarily removed from federal service "[p]ursuant to Article II of the United States Constitution and the laws of the United States." No cause, let alone a proper merit-based one, or required due process was provided to Plaintiffs with respect to their termination and removal.

In order to both assert their own rights, respectively, and protect the integrity of the federal civil service system, Plaintiffs bring this action against the Executive Office of the President, U.S. Attorney General Pamela Bondi, in her official capacity, the U.S. Department of Justice, and the United States of America for the purposes of seeking relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs

Act, and the Fifth Amendment to the Constitution of the United States.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under the Constitution and laws of the United States.

2.      Venue is appropriate in this judicial district under 28 U.S.C. §§ 1391(b) and (e) and 5 U.S.C. § 703.

3.      Sovereign immunity for non-monetary relief is waived under 5 U.S.C. § 702, which entitles Plaintiffs to relief when Defendants acted unconstitutionally and beyond statutory authority.

## PARTIES

4.      Mr. Gordon served as an Assistant United States Attorney ("AUSA") in DOJ's U.S. Attorney's Office for the Middle District of Florida (Tampa Division) ("USAO-MDFL") from January 1, 2017 to June 27, 2025, when Defendants terminated his employment without prior warning or a merit-based cause.  Over his eight-and-a-half years of federal service at DOJ, Mr. Gordon was an exemplary employee with no disciplinary history.  He consistently received "Outstanding" performance ratings in every annual review since 2017.  Two days before his termination, Mr. Gordon again received a rating of "Outstanding" on his mid-year DOJ performance review—the highest rating available to employees.

5.      From November 2021 to December 2023, he was notably detailed as Senior Trial Counsel to the Capitol Siege Section of the U.S. Attorney's Office for the District of Columbia, where he prosecuted high-profile cases of individuals involved in the January 6, 2021 insurrection, including Richard Barnett, Eric Munchel, and Ray Epps.  In his eight-and-a-half-year tenure at the

USAO-MDFL, Mr. Gordon tried approximately twenty criminal trials to verdict, secured over one hundred convictions, and handled or participated in over one hundred federal investigations.

6.      Ms. Hartman served as a Supervisory Public Affairs Specialist for DOJ prior to her termination on July 7, 2025.  She had worked in different DOJ components for nearly two decades, starting in July 2007 in the U.S. Attorney's Office for the Eastern District of Pennsylvania.  She was working in the U.S. Attorney's Office for the District of Columbia ("USAO-DC") when Defendants terminated her employment.  Throughout her tenure at DOJ, Ms. Hartman consistently received positive performance evaluations of "Successful" or "Outstanding."  Prior to her role as a Supervisory Public Affairs Specialist in USAO-DC, Ms. Hartman was a public affairs specialist with the Federal Bureau of Investigation ("FBI") and the U.S. Drug Enforcement Administration.

7.      From December 5, 2022 up until June 2023, Ms. Hartman was the primary official handling public affairs work specific to the government's prosecution of criminal cases concerning the January 6, 2021 insurrection. Her responsibilities in that regard pertained to handling media inquiries regarding the ongoing criminal investigations and proceedings, including issuing authorizing press releases and information for use by the media..

8.      Mr. Tirrell served as DOJ's Director of the Departmental Ethics Office ("DEO") from July 2023 to July 11, 2025, when Defendants terminated his employment without prior warning.  At the time relevant here, Mr. Tirrell was a member of the Senior Executive Service ("SES").  With approximately seven-and-a-half years of federal service in DOJ's DEO, Mr. Tirrell was an exemplary employee with no disciplinary history.

9.      Prior to his role as the senior-most executive in charge of DOJ's Ethics Office, Mr. Tirrell served as the Deputy Director in charge of DOJ's DEO.  Prior to that, he served as an Ethics and Compliance Attorney in the Office of Integrity and Compliance at the FBI for approximately

4

five years.  Mr. Tirrell was employed at the FBI from 2006 – 2018, and has approximately 19 years

of total federal civil service and over six years of military service as a United States Naval Officer.

10.     Defendant Executive Office of the President is headquartered in Washington, D.C.

and initiated the unlawful and unconstitutional actions taken against Mr. Gordon, Ms. Hartman,

and Mr. Tirrell.

11.     Defendant Pamela J. Bondi is sued in her official capacity as the Attorney General

of the United States.  Attorney General Bondi signed the "Memorandum for Michael M. Gordon,"

dated June 27, 2025, the "Memorandum for Patricia A. Hartman," dated July 7, 2025, and the

"Memorandum for Jospeh W. Tirrell" [*sic*],[2] dated July 11, 2025, terminating the named

individuals from federal service and thereby authorizing the unlawful and unconstitutional actions

taken against Mr. Gordon, Ms. Hartman, and Mr. Tirrell, respectively.

12.     Defendant DOJ is headquartered in Washington, D.C. and is an agency of the

United States as defined by 5 U.S.C. § 701 and subject to the jurisdiction of this Court.  DOJ

controls its components, including the U.S. Attorney's Offices that carried out the unlawful and

unconstitutional actions against Mr. Gordon and Ms. Hartman.  DOJ also controls its DEO, which

carried out the unlawful and unconstitutional action against Mr. Tirrell.

13.     Defendant United States of America is responsible for the exercise of state action

by the other named Defendants and being challenged by Plaintiffs here.

---

[2] The Attorney General's Memorandum for Mr. Tirrell misspelled his first name, Joseph.

**FACTS**

***Limitations on the Attorney General's Ability to Remove DOJ Employees***

14.     The Attorney General does not have absolute authority to simply remove DOJ employees. Specifically, there are crucial guardrails that protect employees from arbitrary or unlawful termination.

15.     The government may only terminate Plaintiffs if doing so does not violate statutorily defined prohibited personnel practices, and only after established due process procedures are followed.

16.     The limitations on the Attorney General's removal authority include, but are not limited to, the Prohibited Personnel Practices, as administered and interpreted by the Office of Personnel Management ("OPM"). *See* 5 U.S.C. § 2302(b).

17.     OPM is explicitly charged with administering the federal civil service, which encompasses all federal employment. *Id.* § 1103(a)(5). Additionally, OPM is responsible for promoting and enforcing the nine Merit Systems Principles, which apply across the federal service and dictate that personnel actions (including removals) must be based on merit and fitness, and must not be arbitrary, capricious, or discriminatory. *Id.* § 2301. These principles require that "[e]mployees should be protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." *Id.* § 2301(b)(8)(A).

18.     OPM also administers and interprets the Prohibited Personnel Practices as outlined in 5 U.S.C. § 2302(b). These statutory prohibitions prevent agencies from taking, or failing to take, personnel actions against members of the civil service for certain reasons. For example, agencies cannot discriminate against a person for conduct that does not adversely affect performance, their political affiliation, or their refusal to engage in any coerced political activity. *See* 5 U.S.C.

§§ 2302(b)(10) (prohibiting discrimination based on conduct not adversely affecting performance); 2302(b)(1) (prohibiting discrimination based on protected characteristics, including political affiliation); 2302(b)(3) (prohibiting action taken against any employee as reprisal for refusal to engage in any coerced political activity); 2302(b)(11) (as applied to veterans, prohibiting knowingly taking any personnel action that would violate a veterans' preference requirement).

19.    The Whistleblower Protection Act ("WPA") also protects covered federal employees from personnel actions, such as retaliation, taken with respect to disclosures of information that the employee "reasonably believes" evidence behavior of "a violation of law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A).

***SES Protections (Applicable Only to Mr. Tirrell)***

20.    Established in the Civil Service Reform Act of 1978 ("CSRA"), the SES was designed to be a senior corps of civil service executives, selected for their leadership qualifications, who serve as the link between political appointees and the rest of the federal workforce. 5 U.S.C. § 3131 *et seq.*

21.    Recognizing that the success of the federal government depends upon an accountable leadership corps, the CSRA established a comprehensive system for reviewing personnel action taken against federal employees. It specifies how employees can be elevated to the SES, and how they can be removed from it. After a probationary period, career senior executives may "not be removed from the Senior Executive Service or civil service except in accordance with" certain statutory provisions. 5 U.S.C. § 3393(g).

22.    The CSRA and other civil service laws were enacted by Congress to specifically protect federal employees, including SES employees, from political retaliation and to provide procedural protections. *See* 5 U.S.C. § 2301(b)(8)(A). Thus, the government can dismiss members

of the SES, such as Mr. Tirrell, only for reasons specified in statute, and only after established due process procedures are followed.

***Termination of Michael Gordon***

23.    At approximately 4:15 PM EDT on June 27, 2025, Mr. Gordon was in his office at the USAO-MDFL conducting a virtual witness preparation interview for an upcoming criminal trial when the USAO-MDFL's Administrative Officer walked in and asked him to pause his video call with the witness. Mr. Gordon was then handed a one-page document, titled "MEMORANDUM FOR MICHAEL M. GORDON" from "THE ATTORNEY GENERAL" with the subject line, "Notice of Removal from Federal Service" (hereinafter the "Gordon Termination Memorandum").

24.    The Gordon Termination Memorandum reads as follows:

This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, United States Attorney's Office – Florida, and from the federal service, effective immediately.

Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

If applicable, you may have a right to file an appeal of this removal with the U.S. Merit Systems Protection Board (MSPB) within 30 days of the effective date of the removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

25.    The Gordon Termination Memorandum was signed by Attorney General Bondi and dated June 27, 2025.

26.    Significantly, the Gordon Termination Memorandum did not assert any justification for his firing other than that his removal was "[p]ursuant to Article II of the United States Constitution and the laws of the United States."

27.     Mr. Gordon was directed to turn over his USAO-MDFL government devices and access cards, pack up his personal belongings, and leave the building.  No one with whom he spoke that day provided any justification for his termination beyond the Gordon Termination Memorandum.

28.     At the time of his termination, Mr. Gordon was counsel of record in seventeen cases for the USAO-MDFL, had twenty ongoing investigations, and was slated to have at least six trials between July and September 2025.

29.     Mr. Gordon's termination came as a particular shock because just over one month earlier, on May 19, 2025, he was hand-selected by U.S. Attorney Gregory Kehoe to co-lead the case team investigating and prosecuting Leo Govoni and John Witeck, who are accused of stealing over $100 million from a medical trust fund intended to help individuals with disabilities, injured workers, and retirees.  Mr. Gordon's work on the *Govoni* case culminated in a 15-count grand jury indictment on June 18, 2025.  *See U.S. v. Govoni et al.*, 8:25-cr-00299-VMC-NHA (M.D. Fla.).

30.     The indictment was co-signed by Mr. Gordon and DOJ's press release announcing the indictment specifically recognized Mr. Gordon's work.[3]  Mr. Gordon was also personally congratulated on the indictment by U.S. Attorney Kehoe, the USAO-MDFL's Criminal Chief, and the USAO-MDFL's Economic Crimes Section Chief.  Mr. Gordon's handling of the *Govoni* case solidified his reputation as a top-tier prosecutor capable of handling the most demanding cases in the Middle District of Florida.

31.     Additionally, two days before his unlawful termination, Mr. Gordon received a rating of "Outstanding" on his mid-year DOJ performance review—the highest rating available to

---

[3] DOJ Press Release, "Florida Nonprofit Founder and Accountant Charged with Stealing Over $100M from Special Needs Victims" (June 23, 2025), https://www.justice.gov/opa/pr/florida-nonprofit-founder-and-accountant-charged-stealing-over-100m-special-needs-victims.

employees.  When Mr. Gordon asked his supervisor, the Economic Crimes Section Chief, during that performance review to provide constructive criticism or identify areas where Mr. Gordon could improve his performance, his supervisor stated that he could not think of any.

32.    Notably, Mr. Gordon was fired on the same day as two other AUSAs who had previously worked on the prosecution of January 6th defendants, indicating that Mr. Gordon's termination was retaliation for prosecutions that were perceived as politically-affiliated.

***Termination of Patricia Hartman***

33.    At approximately 3:50 PM EDT on July 7, 2025, Ms. Hartman was in her office working on a press release when her computer suddenly shut down.  As she was in the midst of calling the Help Desk for support, another DOJ official, Matt Fox-Moles, came to her door and handed her a one-page document, titled "MEMORANDUM FOR PATRICIA A. HARTMAN" from "THE ATTORNEY GENERAL" with the subject line, "Notice of Removal from Federal Service" (hereinafter the "Hartman Termination Memorandum").

34.    The Hartman Termination Memorandum reads as follows:

This memorandum provides official notice that you are removed from your position of Supervisory Public Affairs Specialist, GS-1035-14, Front Office/Executive Staff, United States Attorney's Office for the District of Columbia, and from the federal service, effective immediately.

Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

If applicable, you may have a right to file an appeal of this removal with the U.S. Merit Systems Protection Board (MSPB) within 30 days of the effective date of the removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

35.    The Hartman Termination Memorandum was signed by Attorney General Bondi and dated July 7, 2025.

36.    Significantly, the Hartman Termination Memorandum did not assert any justification for her firing other than that her removal was "[p]ursuant to Article II of the United States Constitution and the laws of the United States."

37.    Ms. Hartman was immediately locked out of her government-issued electronic devices.  No one with whom she spoke that day provided any justification for her termination beyond the Hartman Termination Memorandum.

***Termination of Joseph Tirrell***

38.    At approximately 4:30 PM EDT on July 11, 2025, an Assistant Director for Labor and Employment Law in DOJ's Justice Management Division e-mailed Mr. Tirrell a one-page document, titled "MEMORANDUM FOR JOSPEH W. TIRRELL" [*sic*] from "THE ATTORNEY GENERAL" with the subject line, "Notice of Removal from Federal Service" (hereinafter the "Tirrell Termination Memorandum").

39.    The Tirrell Termination Memorandum reads as follows:

This memorandum provides official notice that you are removed from your position of Director, Departmental Ethics Office, ES-0905-00, Ethics Office Justice Management Division, and from the federal service, effective immediately.

Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

If applicable, you may have a right to file an appeal of this removal with the U.S. Merit Systems Protection Board (MSPB) within 30 days of the effective date of the removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

40.    The Tirrell Termination Memorandum was signed by Attorney General Bondi and dated July 11, 2025.

41.    Significantly, the Tirrell Termination Memorandum did not assert any justification for his firing other than that his removal was "[p]ursuant to Article II of the United States Constitution and the laws of the United States."

42.    Upon information and belief, neither Mr. Tirrell's immediate supervisor, a Deputy Assistant Attorney General in DOJ's Justice Management Division, nor the Assistant Attorney General were notified of his removal at the time he received the Tirrell Termination Memorandum. No one with whom he spoke that day provided any justification for his termination beyond the Tirrell Termination Memorandum.

43.    As a member of the Civil and Senior Executive Services, Mr. Tirrell was entitled to procedural and substantive due process before his termination and removal. Defendants' removal of Mr. Tirrell without such process was unlawful.

44.    The grounds for dismissing members of the SES, such as Mr. Tirrell, are specified and limited by statute, including, but not limited to 5 U.S.C. § 7543(a), which notes that "[u]nder regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." The Tirrell Termination Memorandum did not cite any of those grounds, and none are applicable to Mr. Tirrell.

45.    Additionally, the CSRA provides that a "career appointee may not be removed from the Senior Executive Service or civil service except in accordance with" five specified provisions. 5 U.S.C. § 3393(g). Section 3592(a)(2) allows a career SES employee to be removed based only on a finding of "less than fully successful executive performance as determined under subchapter II of chapter 43 of this title." None of the five specified provisions were cited in the Tirrell

Termination Memorandum or are applicable to Mr. Tirrell.

46. The procedures that must be followed before terminating a member of the SES, such as Mr. Tirrell, are also governed by statute and regulation including, but not limited to, 5 U.S.C. § 7543(b) and 5 C.F.R. §§ 752.601–606. Those provisions clearly set forth the obligations the Defendants were required to follow before terminating Mr. Tirrell, which included:

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe that the employee has committed a crime for which a sentence of imprisonment can be imposed, stating specific reasons for the proposed action;
>
> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
>
> (3) be represented by an attorney or other representative; and
>
> (4) a written decision and specific reasons therefore at the earliest practicable date.

5 U.S.C. § 7543(b). The Defendants did not afford any of these protections to Mr. Tirrell before they unlawfully terminated him.

47. Additionally, as a veteran of the United States Navy, Mr. Tirrell is afforded additional safeguards under the Prohibited Personnel Practices. Specifically, it is a Prohibited Personnel Practice to "knowingly take, recommend, or approve any personnel action if the taking of such action would violate a veterans' preference requirement." 5 U.S.C. § 2302(b)(11)(A). As such, federal employees or agencies with the authority to make personnel decisions must not discriminate against veterans in a way that violates the rules governing veterans' preferences—a system that, in practice, gives certain veterans and eligible family members advantages in federal personnel actions, such as reductions in force or termination. *Id.* § 2302(e)(1).

*Unavailability and Futility of the Merit Systems Protection Board*

48.     In a normal course of proceedings, Plaintiffs would be able to seek recourse through the Merit Systems Protection Board ("MSPB").  But because of the government's own actions, any complaint filed before the MSPB will be futile.[4]

49.     Congress enacted the CSRA in 1978 to create a uniform scheme for administrative and judicial review of covered federal employee personnel actions, in order to ensure a non-political career civil service for the good of the American public.  That scheme sets forth the protections and remedies available to such employees as well as a procedural process to vindicate their rights.  Normally, when federal employees seek relief from an action covered by the CSRA, they follow that prescribed scheme of administrative and judicial review and generally may not bring an initial claim in federal court.

50.     The CSRA established the MSPB as an independent agency consisting of three members, each appointed by the President with the advice and consent of the Senate to serve seven-year terms. 5 U.S.C. §§ 1201, 1202(a)–(c). The MSPB is a quasi-judicial body, adjudicating conflicts between civil servants and their employing agencies. It was designed to resolve disputes including federal employees' allegations that their government employers discriminated against them, retaliated against them for whistleblowing, violated protections for veterans, or otherwise subjected them to an unlawful adverse employment action or prohibited personnel practice.  5 U.S.C. §§ 1204(a)(1), 1221, 2302(b)(1), (8)–(9), 3330a(d), and 7512.

51.     By statute, no more than two members of the MSPB are permitted to be from the same political party, to ensure that federal employees are "protected against arbitrary action, personal favoritism, or coercion for partisan political purposes."  5 U.S.C. §§ 1201, 2301.  MSPB

---

[4] To preserve Plaintiffs' rights and remedies, Mr. Gordon, Ms. Hartman, and Mr. Tirrell are each filing an appeal with the MSPB challenging their respective terminations from DOJ.

members serve seven-year terms—a term limit longer than that guaranteed to the appointing President. *Id.* § 1202(a).  Pursuant to its duties under the Appointments Clause, the Senate must consent to the nomination of any MSPB member. *Id.* § 1201.

52.    Thus, agency action to remove employees covered by the CSRA through termination, such as in this matter, is supposed to be challengeable before the MSPB. *See id.* §§ 7511–15 (excepted service employees); 7541–43 (senior executive service employees).   The statutes provide that a covered employee "against whom an action is proposed is entitled to[:]" a minimum of "30 days' advance written notice[;]" the opportunity to respond orally and in writing; representation; and "a written decision and the specific reasons therefor at the earliest practicable date." *Id*. §§ 7513(b); 7543(b).  Decisions are appealable, first to the MSPB and then in most cases to the United States Court of Appeals for the Federal Circuit. *Id*. §§ 7513(d), 7543(d); 7703(b).

53.    However, due to the government's own actions to stymie the Board, the MSPB currently cannot function as intended.

54.    MSPB member Cathy Harris' term was set to expire on March 1, 2028, but President Trump terminated her MSPB position on February 10, 2025.  On March 4, 2025, the U.S. District Court for the District of Columbia issued a permanent injunction reinstating Ms. Harris to her MSPB position.  After appeals, however, the U.S. Supreme Court ultimately stayed that injunction and permitted Ms. Harris' removal, which remains the case at the time of the filing of this Complaint.

55.     As of this filing, there is only one remaining member of the MSPB,[5] which thus lacks a quorum to vote on any petitions for review.[6]

56.     In addition, upon information and belief, MSPB administrative judges do not have the ability to issue timely decisions, again due to the government's actions.  As a direct result of the government's unlawful terminations of thousands of federal employees, MSPB administrative judges have become overwhelmed.  Available statistics published on the MSPB's website show that there were approximately 100 or fewer cases filed per week from September 2024 to January 2025.  Yet in February 2025, the number of filed cases ballooned dramatically, peaking at 2,188 cases filed between February 23, 2025 and March 1, 2025.[7]

57.     Finally, the government itself has argued before the MSPB that the CSRA is effectively unconstitutional because it violates the President's Article II prerogatives, and that the MSPB does not have the jurisdiction to adjudicate the legality of the government's actions.  To be clear, Plaintiffs vigorously dispute that the Constitution provides the President a blank check to ignore the civil service laws passed by Congress.  But as part of their effort to dismantle the federal government, Defendants have effectively launched a wholesale assault on the constitutionality of the MSPB.  As a result, Plaintiffs need not exhaust their claims before the very agency that the government argues is unconstitutionally structured.

---

[5] MSPB member Raymond Limon retired on February 28, 2025.  *See* Press Release, U.S. Merit Systems Protection Board, Member Raymond A. Limon Retiring (Feb. 28, 2025), https://www.mspb.gov/publicaffairs/press_releases/ Ray_Limon_Farewell_Press_ Release.pdf.

[6] *See U.S. Merit Systems Protection Board: Frequently Asked Questions about the Lack of Quorum Period and Restoration of the Full Board, UPDATED: April 9, 2025*, U.S. Merit Systems Protection Board (Apr. 9, 2025), https://www.mspb.gov/FAQs_ Absence_of_Board_Quorum_4-9-25.pdf.

[7] *See Weekly Number of Cases Received in the Regional and Field Offices, Fiscal Year 2025*, U.S. MERIT SYSTEMS PROTECTION BOARD, https://www.mspb.gov/Recent%20ROFO%20Case%20Receipts.pdf (last visited July 21, 2025).

58.    Therefore, because (a) there is no quorum at the MSPB, (b) independently, the MSPB cannot perform its duties so that the claims of covered employees, such as Mr. Gordon, Ms. Hartman, and Mr. Tirrell, cannot be adequately processed or resolved, and (c) Defendants have taken the position that the MSPB has no jurisdiction over what the Defendants characterize as an "Article II removal," the framework of the CSRA has been thwarted and this Court may exercise jurisdiction over the presented Constitutional and statutory challenges.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. §§ 706(1) and 706(2)**
**<u>(Against Defendants Bondi and DOJ)</u>**

59.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

60.    Defendants Bondi and DOJ, in authorizing and signing the issuance of the Plaintiffs' Termination Memorandums on June 27, 2025, July 7, 2025, and July 11, 2025, implemented a final agency decision "not in accordance with the law," "contrary to a constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

61.    Plaintiffs have each suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(*ULTRA VIRES* IN VIOLATION OF STATUTORY AUTHORITY)**
**<u>(Against Defendants Bondi and DOJ)</u>**

62.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

63.    Defendants Bondi and DOJ had no lawful authority to terminate Plaintiffs from federal service without adhering to the statutory protections afforded to each.  Their terminations were therefore *ultra vires* and without legal force or effect.

64.    Plaintiffs have each suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities. As such, they are each entitled to reinstatement, an award of backpay, and any other available damages.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(PROCEDURAL DUE PROCESS, PROPERTY INTEREST)**
**(<u>Against All Defendants</u>)**

65.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

66.    Plaintiffs each have a protected property interest in their continued employment with DOJ.

67.    Defendants' actions to terminate Plaintiffs without due process unlawfully deprived each Plaintiff of that property interest.

68.    Plaintiffs have each suffered adverse and harmful effects from the deprivation of their respective property interests in their employment, including, but not limited to, loss of income and lost or jeopardized present and future financial opportunities.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE FIFTH AMENDMENT**
**(PROCEDURAL DUE PROCESS, LIBERTY INTEREST)**
**(<u>Against All Defendants</u>)**

69.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

70.    The Fifth Amendment's protection against deprivation of liberty without due process of law protects against reputational harm caused by government actors when that harm is accompanied by other harm.  Here, the Defendants' actions harmed each Plaintiff's reputational interests by terminating them without cause, based solely on the President's alleged Article II authority and the laws of the United States.  In addition, Defendants' actions have caused the loss of Plaintiffs' present government employment and have harmed their future employment prospects.

71.     As DOJ employees within the federal civil service, Plaintiffs were each entitled by statutes, regulations, and the Fifth Amendment to protections against deprivation of their liberty interest without the process required by law.  The lack of any due process accorded to Plaintiffs deprived each of them of the ability to challenge the accuracy of any evidence that allegedly serves as the basis for their removal, if any even exists, as well as to protect each of their reputations.

72.    The Defendants' actions have prevented each Plaintiff from participating in their chosen profession or line of work.  Should Plaintiffs apply to work for a federal agency or a private civilian employer for a position that requires even the most rudimentary background investigation, the Defendants may disseminate information, in addition to what they already have, to include known inaccurate and false information that will adversely impact their reputation and chances for additional employment opportunities. As a result, the Defendants have effectively stigmatized Plaintiffs' reputations and imparted a "status change" upon each of them that has implicated Mr. Gordon, Ms. Hartman, and Mr. Tirrell's liberty interests.

73.    As no opportunity was ever provided to Plaintiffs to respond to the termination and removal actions taken by Defendants, Plaintiffs are entitled to, among other remedies, a name-clearing hearing regarding the false public statements regarding their actions and the basis for their

respective removals.

74.    Plaintiffs have each suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

**FIFTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 and 2202**
**(Against All Defendants)**

75.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

76.    Plaintiffs are each entitled to declaratory relief on the basis of all claims identified. There is a substantial and ongoing controversy between Plaintiffs and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that the Defendants do not have authority to remove Plaintiffs without affording each of them all rights and protections set forth by applicable statutes and regulations.

77.    Plaintiffs have each suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future financial opportunities.

**SIXTH CAUSE OF ACTION**
**WRIT OF MANDAMUS**
**(Against All Defendants)**

78.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above, inclusive.

79.    In the alternative, Plaintiffs are entitled to a writ of mandamus commanding Defendants to return them to their respective offices and not remove them from federal service without following lawful procedures.  Defendants have a legal duty not to terminate Plaintiffs without affording each of them the protections prescribed by law and, absent this Court granting relief, there is no other adequate means of redress.

20

80.     The provisions of 28 U.S.C. § 1361 create jurisdiction in cases seeking a writ of mandamus against federal officers, employees, and agencies, and they provide for an independent cause of action in the absence of any other available remedies.  To the extent relief is unavailable under either the APA, common law equity, or any other law to enjoin unlawful government action, mandamus lies here.

## JURY DEMAND

81.     Plaintiffs demand a jury trial on all triable issues.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Michael M. Gordon, Patricia A. Hartman, and Joseph W. Tirrell request that the Court award them the following relief:

(1)     A declaration that Defendants Bondi and DOJ violated the Administrative Procedure Act;

(2)     A declaration that the Defendants' actions violated Plaintiffs' Fifth Amendment due process and statutory rights and order appropriate relief, to include, but not limited to, a name-clearing hearing;

(3)     An order requiring Defendants to immediately reinstate Plaintiffs and enjoin Defendants from taking any further adverse personnel action against each of them without providing appropriate procedural and substantive due process as required by law and the Fifth Amendment;

(4)     An award of backpay and other monetary and administrative relief as appropriate;

(5)     An award of the costs of this action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law; and

(6)     Grant such other relief as the Court may deem just and proper.

Date:   July 24, 2025                              Respectfully Submitted,

/s/ Abbe David Lowell                              /s/ Mark S. Zaid
Abbe David Lowell (DDC No. 358651)                 Mark S. Zaid (DDC No. 440532)
Brenna L. Frey (*pro hac vice* forthcoming)        Bradley P. Moss (DDC No. 975905)
David A. Kolansky (DDC No. 7680722)                LAW OFFICES OF MARK S. ZAID, P.C.
Isabella M. Oishi (DDC No. 7680428)                1250 Connecticut Avenue, N.W., Suite 700
LOWELL & ASSOCIATES, PLLC                          Washington, DC 20036
1250 H Street, N.W., Suite 250                     T: (202) 498-0011
Washington, DC 20005                               Mark@MarkZaid.com
T: (202) 964-6110                                  Brad@MarkZaid.com
F: (202) 964-6116
ALowellpublicoutreach@lowellandassociates.com
BFrey@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com                     /s/ Heidi R. Burakiewicz
                                                   Heidi Burakiewicz (DDC No. 473973)
/s/ Norman L. Eisen                                BURAKIEWICZ & DEPRIEST
Norman L. Eisen (DDC No. 435051)                   1015 15th St N.W., Suite 600
Stephen A. Jonas (*pro hac vice* forthcoming)      Washington, DC 20005
DEMOCRACY DEFENDERS FUND                           T: (202) 856-7500
600 Pennsylvania Avenue S.E., Suite 15180          HBurakiewicz@bdlawdc.com
Washington, DC 20003
(202) 594-9958
norman@statedemocracydefenders.org
steve@statedemocracydefenders.org