# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| MICHAEL M. GORDON, PATRICIA A. HARTMAN, and JOSEPH W. TIRRELL,<br><br>    *Plaintiffs*,<br><br>        *v.*<br><br>EXECUTIVE OFFICE OF THE PRESIDENT; PAMELA J. BONDI, in her official capacity as Attorney General; DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,<br><br>    *Defendants*. | No. 1:25-cv-02409-JMC |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................1

BACKGROUND.................................................................................................................2

      A.    Legal Background.................................................................................2

      B.    Factual Background ...........................................................................3

LEGAL STANDARD ........................................................................................................6

ARGUMENT ....................................................................................................................6

I.     THE COURT LACKS JURISDICTION OVER PLAINTIFFS' APA, ULTRA VIRES,
      CONSTITUTIONAL, AND DECLARATORY JUDGMENT CLAIMS...........................................6

      A.    The CSRA Strips District Courts of Jurisdiction Over the Challenged
             Personnel Actions ............................................................................7

      B.    Recent Factual Developments Cannot Constitute an Implicit Grant of
             Jurisdiction to District Courts .........................................................11

      C.    Because the Court Lacks Jurisdiction Over Claims I–IV, it Cannot
             Exercise Jurisdiction Over the Declaratory Judgment Claim...........14

II.    THE COURT LACKS JURISDICTION OVER PLAINTIFFS' MANDAMUS CLAIM.....................16

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011).............................................................14

*Am. Fed. of Gov't Emps. v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019)..............................................................8

*Am. Hosp. Ass'n v. Burwell*,
  812 F.3d 183 (D.C. Cir. 2016)............................................................16

*\*C&E Servs., Inc. v. D.C. Water & Sewer Auth.*,
  310 F.3d 197 (D.C. Cir. 2002)......................................................14, 15

*Califano v. Sanders*,
  430 U.S. 99 (1977)...............................................................................7

*Cohen v. United States*,
  650 F.3d 717 (D.C. Cir. 2011)..............................................................7

*Commodity Futures Trading Comm'n*,
  67 F. Supp. 3d 373 (D.D.C. 2014).........................................................6

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  944 F.3d 945 (D.C. Cir. 2019)......................................................15, 16

*\*Elgin v. Department of the Treasury*,
  567 U.S. 1 (2012) ........................................................................*passim*

*Esparraguera v. Dep't of the Army*,
  101 F.4th 28 (D.C. Cir. 2024)...........................................................3, 4

*\*Fed. L. Enf't Officers Ass'n v. Ahuja*,
  62 F.4th 551 (D.C. Cir. 2023).....................................................7, 9, 10

*\*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005)...................................................10, 11, 16

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010)...........................................................................12

*Gordon v. DOJ*,
  No. DC-0752-25-3242-I-1 (MSPB 2025)...............................................5

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
  560 F.3d 495 (D.C. Cir. 2009)......................................................2, 11

*Hartman v. DOJ,*
  No. DC-0752-25-3368-I-1 (MSPB 2025)...................................................5

*Heckler v. Ringer,*
  466 U.S. 602 (1984).......................................................................17

*Illinois v. Ferriero,*
  60 F.4th 704 (D.C. Cir. 2023)....................................................16, 17

*Jolley v. United States,*
  549 F. Supp. 3d 1 (D.D.C. 2021)......................................................13

*Kareem v. Haspel,*
  986 F.3d 859 (D.C. Cir. 2021)...........................................................5

*Lovitky v. Trump,*
  949 F.3d 753 (D.C. Cir. 2020)....................................................15, 17

*Miriyeva v. U.S. Citizenship & Immigr. Servs.,*
  9 F.4th 935 (D.C. Cir. 2021).............................................................15

*\*Nat'l Treasury Emps. Union v. Vought,*
  149 F.4th 762 (D.C. Cir. 2025)...........................................7, 8, 9, 10

*Ord v. Dist. of Columbia,*
  587 F.3d 1136 (D.C. Cir. 2009)..........................................................6

*Renne v. Geary,*
  501 U.S. 312 (1991)...........................................................................6

*Schilling v. Rogers,*
  363 U.S. 666 (1960).........................................................................14

*Seminole Tribe of Fla. v. Florida,*
  517 U.S. 44 (1996).....................................................................12, 13

*Sierra Club v. Jackson,*
  813 F. Supp. 2d 149 (D.D.C. 2011)....................................................6

*Skelly Oil Co. v. Phillips Petroleum Co.,*
  339 U.S. 667 (1950).........................................................................14

*Tirrell v. DOJ,*
  No. DC-0752-25-3432-I-1 (MSPB 2025)...........................................5

*\*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994)...................................................................8, 12

*United States v. Fausto*,
   484 U.S. 439 (1988) ............................................................................................... *passim*

Warth v. Seldin,
   422 U.S. 490 (1975) ....................................................................................................... 6

**STATUTES**

5 U.S.C. § 3132(a)(2) ......................................................................................................... 3

5 U.S.C. § 1204(a) ............................................................................................................. 17

5 U.S.C. § 3592 ................................................................................................................... 3

5 U.S.C. §§ 7511–15 .......................................................................................................... 10

5 U.S.C. § 7542 ................................................................................................................... 3

5 U.S.C. § 7701(g) ............................................................................................................. 17

28 U.S.C. § 1331 ................................................................................................................. 6

28 U.S.C. § 2201(a) ............................................................................................................ 14

**LEGISLATIVE MATERIALS**

171 Cong. Rec. S6975 (2025) .............................................................................................. 5

## INTRODUCTION

When Congress passed the Civil Service Reform Act of 1978 (CSRA), it "comprehensively overhauled the civil service system, creating an elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (quotation cleaned). A key part of that framework was to jettison what had become standard suits by federal employees for injunctive relief, mandamus relief, and other remedies in federal district courts in favor of centralized, largely exclusive review of federal personnel claims by the Merit Systems Protection Board (MSPB). The primary rationale for doing so was the need to correct what had evolved over many years into a "patchwork system" of disjointed, overlapping, and often conflicting statutes, regulations, and rules. *Id.* at 445. Per the CSRA's careful design, the MSPB adjudicates covered claims of improper personnel action in the first instance, and parties dissatisfied with the outcome of that adjudication may seek Article III review primarily in the United States Court of Appeals for the Federal Circuit.

Plaintiffs here, three former Department of Justice (DOJ) employees who allege that they were unlawfully removed, have availed themselves of that comprehensive scheme, separately appealing their removals to the MSPB. Each of their appeals is already assigned to an MSPB administrative judge for trial proceedings, the first step toward review by the full Board. Yet they have also sued in this Court, seeking relief from the same adverse personnel actions they simultaneously appealed to the MSPB. They acknowledge their pending MSPB appeals, just as they acknowledge that the CSRA "create[s] a uniform scheme for administrative and judicial review" by which covered employees "seek recourse through the [MSPB]." Compl. ¶¶ 48–49. Nonetheless, they would have this Court carve out of that scheme an exception for this suit. Because they fear that "any complaint filed before the MSPB will be futile," *id.* ¶ 48, they assert

1

that they should be allowed to bring a parallel action in federal district court, seeking the same relief.

But that is not how district-court jurisdiction works for personnel disputes within the CSRA's scope. As both the Supreme Court and the D.C. Circuit have held—frequently and without fail—the CSRA strips district courts of jurisdiction to entertain claims regarding such disputes, channeling review of those claims through the MSPB and from there to the Federal Circuit. There are narrow exceptions to that rule, but none exists for plaintiffs who are afforded remedies for their claims under the CSRA but who are dissatisfied with how MSPB proceedings might work in their cases. None of the factual developments Plaintiffs allege can reverse Congress's decision, almost fifty years ago, to channel judicial review of the claims they assert away from federal district court. And none of the various theories of relief that Plaintiffs posit can shake that underlying jurisdictional reality.

Accordingly, the Court should dismiss Plaintiffs' Complaint for lack of jurisdiction.

## BACKGROUND

### A.    Legal Background

In 1978, President Carter signed the CSRA into law, thereby effecting "the most systematic governmental review and revision of the federal civil service system since … 1883." *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 496–97 (D.C. Cir. 2009) (quotation cleaned). The CSRA replaced the "outdated patchwork of statutes and rules" and "haphazard arrangements for administrative and judicial review of personnel action" with "an integrated scheme … designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 444–45. That "integrated scheme" divides civil-service employees into three main classifications. The Senior Executive Service

2

(SES) encompasses high-level positions in the Executive branch for which appointment by the President and confirmation by the Senate are not required. *See* 5 U.S.C. § 3132(a)(2). The "competitive service" encompasses all other employees for whom Presidential appointment and Senatorial confirmation are not required, unless specifically excepted by statute or statutorily authorized regulation. *Id.* § 2102. And the "excepted service" encompasses all employees that do not fall within the reach of the first two classifications. *Id.* § 2103; *see also Fausto*, 484 U.S. at 441 n.1 (describing these three categories of Executive-branch employees).

For each classification, the CSRA also describes whether and what kind of review is available for certain adverse personnel actions. As relevant here, when a member of the SES is removed from federal civil service, he "is entitled to appeal to the Merit Systems Protection Board" in keeping with § 7701. 5 U.S.C. §§ 7542, 7543(d).[1] When a member of the competitive service is removed from office, he, too, "is entitled to appeal [the action] to the [MSPB] under [§] 7701." § 7513(d) (for removals generally); § 4303(a), (e) (in case of removal "for unacceptable performance"). Likewise for members of the excepted service. *See* §§ 7511(a)(1), 7513(d). Final decisions of the MSPB may then be appealed to the federal circuit courts of appeals, typically the Court of Appeals for the Federal Circuit. § 7703(a)–(b).

## B.    Factual Background

At the motion-to-dismiss stage, the parties accept the following relevant facts, drawn from Plaintiffs' factual allegations in the Complaint, as true.

---

[1] The CSRA uses some variation of the term "remove" to refer to both terminations and demotions of SES members. *See* 5 U.S.C. §§ 3592, 7542; *see also Esparraguera v. Dep't of the Army*, 101 F.4th 28, 41 n.2 (D.C. Cir. 2024) (Henderson, J., dissenting) (explaining differences in meaning of the same term). The appeal rights mentioned here do not apply to a demotion—i.e., a "remov[al] from the [SES] to a civil service position outside of the [SES]." *See* § 3592(a).

Plaintiffs are three former members of the federal civil service, each terminated from their employ in the summer of 2025. Michael M. Gordon served in the DOJ as an Assistant U.S. Attorney (AUSA) in the U.S. Attorney's Office (USAO) for the Middle District of Florida. Compl. ¶ 4. He was terminated without cause on June 27, 2025. *Ibid.* That day, he received notice of his termination by way of a memorandum signed by the Attorney General of the United States, which read, in relevant part:

> This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, United States Attorney's Office – Florida, and from the federal service, effective immediately.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

*Id.* ¶¶ 24–25.

Similarly, Patricia A. Hartman served as a Supervisory Public Affairs Specialist for the DOJ in the USAO for the District of Columbia. *Id.* ¶ 6. She was terminated without cause on July 7, 2025. *Ibid.* That day, she received notice of her termination by way of a memorandum signed by the Attorney General of the United States, which read, in relevant part:

> This memorandum provides official notice that you are removed from your position of Supervisory Public Affairs Specialist, GS-1035-14, Front Office/Executive Staff, United States Attorney's Office for the District of Columbia, and from the federal service, effective immediately.
>
> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

*Id.* ¶¶ 34–35.

Joseph W. Tirrell served as the Director of the Departmental Ethics Office at the DOJ. *Id.* ¶ 8. He was terminated without cause on July 11, 2025, and was, at that time, a member of the

SES. *Ibid.* On the date of his termination, he received notice thereof by way of a memorandum signed by the Attorney General of the United States, which read, in relevant part:

> This memorandum provides official notice that you are removed from your position of Director, Departmental Ethics Office, ES-0905-00, Ethics Office Justice Management Division, and from the federal service, effective immediately.

> Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

*Id.* at ¶¶ 39–40.

Each termination memorandum explained that the terminated individual might have the right to appeal his termination to the MSPB. *Id.* ¶¶ 24, 34, 39. Accordingly, Plaintiffs duly availed themselves of that right. *Id.* ¶ 48 n.4.[2] But in parallel with those actions, and before the resolution of MSPB proceedings, Plaintiffs filed suit in this Court, alleging various theories of relief and asserting that the MSPB's "normal course of proceedings … will be futile" due to the absence (at that time) of a quorum on the Board and the number of new cases recently filed before MSPB administrative judges. *Id.* ¶¶ 48, 55–56.

Then, on October 7, 2025, the Senate confirmed the President's nomination of James Woodruff II to serve on the Board; he was sworn in on October 28, 2025, restoring the Board's quorum. *See* 171 Cong. Rec. S6975–76, S6992 (daily ed. Oct. 7, 2025); Ex. A at 1.[3] Notwithstanding the lack of a Board quorum for much of 2025, MSPB administrative judges

---

[2] *Gordon v. DOJ*, No. DC-0752-25-3242-I-1 (MSPB 2025); *Hartman v. DOJ*, No. DC-0752-25-3368-I-1 (MSPB 2025); *Tirrell v. DOJ*, No. DC-0752-25-3432-I-1 (MSPB 2025).

[3] At the motion-to-dismiss stage, courts may take judicial notice of "a fact that is not subject to reasonable dispute if it either is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Kareem v. Haspel*, 986 F.3d 859, 866 n.7 (D.C. Cir. 2021) (quotation cleaned). That standard is satisfied as to the confirmation and swearing-in of Mr. Woodruff to the Board.

continued to adjudicate appeals assigned to them, including by ruling on motions, overseeing discovery, and holding evidentiary hearings, among other standard adjudicatory functions they perform by delegation of authority from the Board.  *See* Ex. A at 1–2.

Defendants now seek dismissal of all claims, with prejudice, for lack of subject-matter jurisdiction.

## LEGAL STANDARD

"On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction," *Sierra Club v. Jackson*, 813 F. Supp. 2d 149, 154 (D.D.C. 2011), and a court should "presume that [it] lack[s] jurisdiction unless the contrary appears affirmatively from the record," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation cleaned).  To be sure, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 399 (D.D.C. 2014) (quoting *Ord v. Dist. of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)).  But the Court "may [also] consider documents outside the pleadings to assure itself that it has jurisdiction."  *Ibid.* (citation omitted).  And if the Court's jurisdiction "does not adequately appear from all materials of record, the complaint must be dismissed."  *Ibid.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

## ARGUMENT

### I.    THE COURT LACKS JURISDICTION OVER PLAINTIFFS' APA, *ULTRA VIRES*, CONSTITUTIONAL, AND DECLARATORY JUDGMENT CLAIMS

Generally, 28 U.S.C. § 1331 imbues the federal courts with broad jurisdiction to entertain "all civil actions arising under the Constitution, laws, or treaties of the United States."  Relying on

that broad jurisdictional authority, Plaintiffs assert claims under the APA,[4] a theory of *ultra vires* agency action, and the Fifth Amendment to the Federal Constitution.  Compl. ¶ 1; *id.* at 17–20. But under binding Supreme Court and D.C. Circuit precedent, Congress has affirmatively stripped this Court of § 1331 jurisdiction over claims regarding adverse personnel decisions like those challenged in this case.  And because the Court lacks jurisdiction to hear Plaintiffs' APA, *ultra vires*, and constitutional claims regarding those decisions, it also lacks jurisdiction to grant declaratory relief.  Accordingly, the Court should dismiss Claims I–V with prejudice for lack of jurisdiction.

### A.    The CSRA Strips District Courts of Jurisdiction Over the Challenged Personnel Actions

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."  *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023). And although "[d]istrict courts usually have jurisdiction over claims arising under federal law," *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 774 (D.C. Cir. 2025) (citing § 1331), "Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review as an *exclusive* system of review," *Ahuja*, 62 F.4th at 558 (quotation omitted; emphasis added).  Congress had done just that as to the claims that Plaintiffs assert here.

Without exception, the Supreme Court and the D.C. Circuit alike have held that personnel actions like those at issue in this case are exclusively channeled away from district-court review.

---

[4] The Supreme Court has long held that the APA does not provide federal courts with an independent source of jurisdiction over challenges to agency action.  *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977); *see also Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011) ("The APA … is not an independent source of jurisdiction.").  Accordingly, the absence of subject-matter jurisdiction under § 1331 dooms not only the *ultra vires* and constitutional claims, but the APA claims, too.

In *Elgin v. Department of Treasury*, for instance, Plaintiffs were former competitive service employees challenging the lawfulness of their removal from federal employ; the Supreme Court held that the CSRA's "elaborate" framework made clear that "Congress intended to deny such employees … review in the district court," instead channeling their claims to the MSPB. 567 U.S. 1, 11–12 (2012). The Court affirmed that even for constitutional claims regarding the removal of federal personnel, district courts could not exercise jurisdiction, warning against "the possibility of parallel litigation regarding the same agency action before the MSPB and a district court." *Id.* at 12–14. That holding re-affirmed the Supreme Court's decision over two decades earlier in *Fausto*, which likewise had held that the CSRA evinced "a congressional judgment" that federal employees generally "should not be able to demand judicial review for the type of personnel action covered" by the statute. 484 U.S. at 448. And the D.C. Circuit has doubled down on that principle, explaining that in the CSRA, "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector," thereby demonstrating Congress's intention that "the statutory scheme … be exclusive with respect to claims within its scope," and thus precluding district-court jurisdiction. *Am. Fed. of Gov't Emps. v. Trump*, 929 F.3d 748, 755, 757 (D.C. Cir. 2019) (quotation cleaned).

Even beyond that weight of binding precedent, application of the multi-factor test articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), affirms that the CSRA's intricate statutory scheme jurisdictionally channels Plaintiffs' claims away from district-court review. "To decide whether such a scheme displaces § 1331, [the Court] consider[s] two questions": first, "whether a preclusive intent is 'fairly discernible in the statutory scheme'"; and second, "whether the claims at issue 'are of the type Congress intended to be reviewed within'" that scheme. *Nat'l Treasury Emps. Union*, 149 F.4th at 774 (quoting *Thunder Basin*, 510 U.S. at

207, 212). Critically, "Congress need not expressly deem a statutory regime to be exclusive for it to satisfy step one. Rather, Congress's intent to displace district court jurisdiction may be 'implied'—for instance, by the comprehensive nature of the statutory system of review and Congress's purpose in enacting it." *Ahuja*, 62 F.4th at 558; *see also Elgin*, 567 U.S. at 8–10 (Congress need not be "explicit" when it divests district courts of § 1331 jurisdiction). Here, the inquiry points to preclusion of jurisdiction at both steps of the *Thunder Basin* analysis.

First, Plaintiffs each allege injuries flowing exclusively from their "loss of employment" in the federal government. *Nat'l Treasury Emps. Union*, 149 F.4th at 774. As all parties apparently agree, *see* Compl. ¶¶ 48–58, the relevant statutory scheme is therefore the CSRA, which "comprehensively regulates virtually every aspect of federal employment," *Nat'l Treasury Emps. Union*, 149 F.4th at 775 (quotation cleaned). The question, then, is whether the CSRA evinces a "fairly discernible" intent to preclude district-court jurisdiction. *Id.* at 774. The Supreme Court has long had a ready answer to that question: "the comprehensive nature of the CSRA," its "elaborate" framework, and "the painstaking detail with which [it] sets out the method for covered employees to obtain review of adverse employment actions" combine to make it "fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin*, 567 U.S. at 10–12 (citing *Fausto*, 484 U.S. at 443, 448) (quotation cleaned). In other words, if the adverse personnel action is "covered" by the CSRA, its "scheme is 'exclusive.'" *Nat'l Treasury Emps. Union*, 149 F.4th at 775 (quoting *Elgin*, 567 U.S. at 5).

Accordingly, the CSRA "ousts the district courts of their … jurisdiction" unless Plaintiffs' claims are not "of the type Congress intended to be reviewed within" the statute's scheme. *Id.* at 774 (quotation omitted). Here, Plaintiffs' terminations are precisely the type of personnel action that falls within the CSRA's reach. As Plaintiffs themselves acknowledge, their removal from

9

federal service is, in fact, "covered" by the CSRA. Compl. ¶ 52 (citing 5 U.S.C. §§ 7511–15, 7541–43). But if there were any doubt that the CSRA applies, a three-part test governs whether Plaintiffs' claims are among the "limited circumstances" in which claims, though facially within the CSRA's ambit, are "found to fall outside of the scope of [the] special statutory scheme": "when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Nat'l Treasury Emps. Union*, 149 F.4th at 775. Applying that test confirms the obvious: Plaintiffs' claims are covered by the CSRA.

In fact, not one of those three factors is satisfied here. First, the absence of district-court jurisdiction does not foreclose meaningful judicial review; "the CSRA provides individual claimants with an opportunity for meaningful judicial review" by way of "appeal of final MSPB decisions directly to the Federal Circuit." *Ahuja*, 62 F.4th at 560. Second, Plaintiffs' claims are not "wholly collateral" to the CSRA's review provisions; to the contrary, "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," and "reinstatement, backpay, and attorney's fees"—i.e., what Plaintiffs seek here, Compl. at 21—"are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide." *Elgin*, 567 U.S. at 22. Third, Plaintiffs' claims are hardly "beyond the expertise" of the MSPB; they "seek redress for allegedly unlawful terminations—the heartland of CSRA coverage." *Nat'l Treasury Emps. Union*, 149 F.4th at 775–76.

In sum, straightforwardly applying the *Thunder Basin* analysis requires re-routing Plaintiffs' claims to the MSPB. "Allowing an alternative route to relief in the district court … would substitute an entirely different remedial regime for the one Congress intended to be exclusive." *Fornaro v. James*, 416 F.3d 63, 68 (D.C. Cir. 2005) (Roberts, J.). And "[i]t would

erode the primacy of the MSPB for administrative resolution of disputes and the primacy of the Federal Circuit for judicial review," thus "undermining the consistency of interpretation by the Federal Circuit envisioned" by the CSRA. *Id.* at 69 (quotation cleaned). Because Plaintiffs' terminations are covered by the CSRA, this Court lacks jurisdiction to entertain their claims for relief from those terminations. Accordingly, the Court should dismiss those claims with prejudice.[5]

## B.    Recent Factual Developments Cannot Constitute an Implicit Grant of Jurisdiction to District Courts

Apparently conceding the primacy of MSPB review, Compl. ¶¶ 48, 52, Plaintiffs try a novel argument: that despite the CSRA's express channeling of these claims to that agency, this Court should discard Congress's carefully designed statutory scheme because "the [G]overnment's own actions" have "stymie[d] the Board," *id.* ¶ 53; *see also id.* ¶¶ 54–58. That argument is at odds with the legal tests outlined in the binding caselaw discussed above. As those cases explain, whether Congress has stripped district courts of jurisdiction is a *legal* question, not a factual one. None of the factual developments that Plaintiffs recite can imbue district courts with jurisdictional authority that, as a matter of law, they do not have.

For the reasons described above, *see supra* Part I.A., binding precedent decisively resolves the *Thunder Basin* test against this Court's exercise of jurisdiction. So Plaintiffs' argument to the contrary can only prevail by introducing a novel requirement to that longstanding test. Whereas *Thunder Basin* instructs courts to evaluate jurisdiction-stripping by whether Congress's intent to

---

[5] The same preclusion arguments apply no matter whether Plaintiffs style their claims as APA claims or constitutional claims. *Grosdidier*, 560 F.3d at 497 ("Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall APA to challenge agency employment actions."); *Elgin*, 567 U.S. at 22 (even constitutional claims, if for a personnel action covered by the CSRA, must be channeled to the MSPB).

preclude district-court jurisdiction is "fairly discernible in the statutory scheme," 510 U.S. at 207, Plaintiffs would have this Court evaluate a different factor—one unsupported by any Supreme Court or D.C. Circuit preclusion jurisprudence, yet so powerful as to *overcome* the test actually articulated in that jurisprudence: whether the MSPB "currently cannot function as intended." Compl. ¶ 53.

Simply put, that argument invites this Court to radically remake the analytical framework that the Supreme Court and D.C. Circuit have articulated in this context. *Thunder Basin* instructs that congressional intent "to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." 510 U.S. at 207 (citation omitted); *see also Elgin*, 567 U.S. at 10 (analyzing "the CSRA's text, structure, and purpose"). And where Congress has demonstrated that intent by "creat[ing] procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quotation cleaned). Nothing in that *legal* inquiry suggests that the exclusiveness of agency jurisdiction over Plaintiffs' claims is subject to anything *other* than the considerations recited in *Thunder Basin*, *Elgin*, and *Free Enterprise Fund*. And there is no room in that inquiry for such *factual* considerations as whether the statutory scheme generates efficient results, or has been effectively implemented after enactment. *Cf. Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74–76 (1996) (holding that 25 U.S.C. § 2710(d) precludes *Ex parte Young* actions *even after* the Supreme Court deemed operative provisions of that statute unconstitutional).

No factual inquiry into how that scheme "currently … function[s]," Compl. ¶ 53, can be reconciled with the governing legal test. And because this Court lacks jurisdiction *as a matter of*

*law*, none of the *factual* developments cited in the Complaint, *see* ¶¶ 53–58, can undo that legal reality. To that point, even accepting as true Plaintiffs' allegations of delay in the administrative process, this Court has recognized that matters covered by the CSRA's exclusive regime must be channeled through the scheme's administrative procedures even when they are incapable of providing the immediate relief sought. *See, e.g., Jolley v. United States*, 549 F. Supp. 3d 1, 6 (D.D.C. 2021) (even in absence of Board quorum "for over four years," there existed "no basis, statutory or otherwise, to say that a court's subject matter jurisdiction can turn on the presence or absence of political gridlock"). The statutory channeling requirements remain intact, no matter the administrative issues that arise in the implementation of those requirements.

Finally, Plaintiffs' argument raises grave separation-of-powers concerns. Jurisdiction-channeling is a question of congressional intent, and federal courts must use great caution before exercising jurisdiction in areas where Congress has chosen to foreclose district-court review, whether by implication or otherwise. Federal courts are not "free to rewrite the statutory scheme in order to approximate what [they] think Congress might have wanted" based on subsequent developments in the implementation of that scheme. *Seminole Tribe*, 517 U.S. at 76. "If that effort is to be made, it should be made by Congress, and not by the federal courts." *Ibid.*

In short, because the CSRA evinces Congress's intent to divest this Court of jurisdiction in favor of administrative review, Plaintiffs' assertions of inefficiency or dissatisfaction with the administrative process can do nothing to move the needle on that threshold issue. Congress has directed these claims to the exclusive jurisdiction of the MSPB, and this Court should not accept Plaintiffs' invitation to so readily trample Congress's express wishes underfoot.

### C.    Because the Court Lacks Jurisdiction Over Claims I–IV, it Cannot Exercise Jurisdiction Over the Declaratory Judgment Claim

In addition to their APA, *ultra vires*, and constitutional claims, Plaintiffs bring a freestanding declaratory-judgment claim "on the basis of all claims identified." Compl. ¶ 76. As the fifth of six total claims, the "claims identified," though not actually specified in the Complaint, presumably refer to those outlined in Claims I–IV. But the absence of jurisdiction under § 1331 sinks not only the APA, *ultra vires*, and constitutional claims; it also divests this Court of jurisdiction to grant declaratory relief.[6]

That is because the Declaratory Judgment Act, by its own terms, empowers the Court to grant declaratory relief only "[i]n a case … within its jurisdiction." 28 U.S.C. § 2201(a). In other words, "the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'" *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 202 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). (Nor, in fact, does it provide an independent cause of action. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).) Instead, "[t]he operation of the Declaratory Judgement Act is procedural only"—that is, by it, Congress merely "enlarged the range of remedies available in the federal courts," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), without creating a new "judicially remediable right" or jurisdictional mandate, *Ali*, 649 F.3d at 778.

The D.C. Circuit has squarely addressed this issue in a closely analogous case illustrating the point. In *C&E Services*, a disappointed bidder for a D.C. government contract argued that the city's refusal to award it the contract violated, in relevant part, the Service Contract Act (SCA).

---

[6] If, instead, Plaintiffs mean "claims identified" to include the mandamus claim, Compl. ¶¶ 78–80, that cannot succeed in securing jurisdiction for the declaratory-judgment claim, either: as discussed below, the Court also lacks jurisdiction over Plaintiffs' mandamus claim. *See infra* Part II.

310 F.3d at 198–200. The SCA set out a scheme channeling disputes to the Department of Labor for administrative adjudication; those adjudications were then reviewable in the Article III courts. *See id.* at 201. Nevertheless, the bidder sued in district court without first completing the administrative-review process, seeking a declaratory judgment that the D.C. government had violated the Act. *Id.* at 199. The district court held that it lacked jurisdiction to grant declaratory relief, *see id.* at 200, and the D.C. Circuit affirmed, explaining that "[a] judicial declaration telling [the defendant] how to interpret the SCA would constitute an end-run around Congress's clear intent that the Department of Labor interpret and enforce the SCA in the first instance," *id.* at 201. Just so here. When it passed the CSRA, Congress clearly intended that the MSPB adjudicate civil-servant personnel disputes in the first instance before opening those adjudications to judicial review. By their claim for declaratory relief, Plaintiffs attempt an "end-run around Congress's clear intent" to channel their claims to the MSPB. *Ibid.* And "the Declaratory Judgment Act does not authorize such a result." *Ibid.*

As described in detail above—and as Plaintiffs themselves concede, Compl. ¶¶ 48, 52—the CSRA channels claims regarding adverse personnel actions to the MSPB. That statutory scheme strips this Court of jurisdiction to entertain Plaintiffs' claims, and "resort to the Declaratory Judgment Act will not fill a gap in subject matter jurisdiction." *Lovitky v. Trump*, 949 F.3d 753, 758 (D.C. Cir. 2020) (quotation cleaned). At bottom, "[s]ince the … [C]ourt otherwise lack[s] jurisdiction over [Plaintiffs'] claims, it [does] not have subject matter jurisdiction to entertain [their] Declaratory Judgment Act claim either." *Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 945 (D.C. Cir. 2021).

## II.    THE COURT LACKS JURISDICTION OVER PLAINTIFFS' MANDAMUS CLAIM

Plaintiffs' final theory of relief in this case seeks a writ of mandamus "commanding Defendants to return [Plaintiffs] to their respective offices." Compl. ¶ 79. But again, Plaintiffs cannot show that this Court has jurisdiction to issue that writ. Mandamus relief is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 944 F.3d 945, 949 (D.C. Cir. 2019) (citation omitted). "[T]o show entitlement to mandamus, [Plaintiffs] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate remedy exists." *Ibid.* (citation omitted). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).[7]

Even if Plaintiffs had met their burden of showing a "clear and indisputable" right to relief and the violation of a "clear duty to act," they cannot, as a matter of law, show that no adequate alternative remedy exists for their claimed injuries.[8] That is because the CSRA exists for the very purpose of providing the remedies that Plaintiffs seek, and channels claims for such relief exclusively to the MSPB. In fact, when Congress passed the CSRA, it specifically sought "to replace the haphazard arrangements for … review of personnel action … '*including suits for*

---

[7] Another requirement of a successful mandamus claim—that the plaintiff "show compelling equitable grounds" for relief—is non-jurisdictional and therefore not relevant here. *See Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) (quotation cleaned).

[8] If the Court does, after all, determine that it possesses jurisdiction over any of Plaintiffs' claims, the Government will explain in more detail why those claims fail on the merits. But on this motion to dismiss for lack of jurisdiction, the Government need not engage on the merits to prevail, given Plaintiffs' obvious shortcomings on the third element of mandamus jurisdiction. Accordingly, the Government leaves a discussion of the merits for another day, without conceding that Plaintiffs have satisfied those prerequisites to mandamus relief.

*mandamus*, injunction, and declaratory judgment.'" *Fornaro*, 416 F.3d at 67 (quoting *Fausto*, 484 U.S. at 444) (emphasis added). It makes no difference that the pace of MSPB adjudications is not to Plaintiffs' liking: "however unsatisfactory the CSRA's approach may appear to [Plaintiffs], the fact that a remedial scheme chosen by Congress vindicates rights less efficiently [than some other method] does not render the CSRA remedies inadequate for purposes of mandamus." *Id.* at 69. "Because the CSRA regime affords beneficiaries an adequate remedy … there is no jurisdiction to issue the writ." *Ibid.*

That is particularly true where, as here, Plaintiffs have not even exhausted what administrative remedies are available to them before seeking this most extraordinary relief. The doors to mandamus relief simply cannot open to a plaintiff who has not "exhausted all other avenues of relief." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). And here, Plaintiffs *have* invoked administrative remedies under the CSRA, each appealing their termination to the MSPB in parallel with this suit. *See* Compl. ¶ 48 n.4. But nothing in the Complaint suggests the *inadequacy* of those remedies. To the contrary, the MSPB has broad authority "to order relief to prevailing employees, including reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6; *see* 5 U.S.C. §§ 1204(a), 7701(g). The adequacy of such relief for Plaintiffs' alleged injuries decisively undermines their mandamus claims. And even if mandamus relief were *ever* available in this context, Plaintiffs' failure to exhaust the administrative remedies available to them renders mandamus a non-starter here.

At bottom, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." *Lovitky*, 949 F.3d at 759; *see also Ferriero*, 60 F.4th at 714 (mandamus relief "is hardly ever granted"). Here, three former members of the federal civil service have sued for their reinstatement in the Article III courts because, they claim, the MSPB will move too slowly for

their liking. Discomfort with the slow pace of agency adjudication is no extraordinary circumstance warranting the exercise of this rare judicial power. Because this Court lacks jurisdiction to entertain Plaintiffs' mandamus claim, it should dismiss Claim VI with prejudice.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint, in its entirety, with prejudice for lack of jurisdiction.

NOVEMBER 25, 2025                    *Respectfully submitted,*

                                    ERIC J. HAMILTON
                                    Deputy Assistant Attorney General

                                    CHRISTOPHER HALL
                                    DC Bar No. 468827
                                    Assistant Branch Director

                                    */s/ Cesar Azrak*
                                    CESAR AZRAK
                                    DC Bar No. 90025888
                                    Trial Attorney
                                    United States Department of Justice
                                    Civil Division, Federal Programs Branch
                                    1100 L Street, NW
                                    Washington, DC 20005
                                    Telephone: (202) 538-3491
                                    cesar.e.azrak@usdoj.gov

                                    *Counsel for Defendants*

18