**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHAEL M. GORDON, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 25-02409 (JMC) |
| | * | |
| EXECUTIVE OFFICE OF THE | * | |
| PRESIDENT, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*


**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**

# Table of Contents

**ARGUMENT** ................................................................................................................. 2

**I.    APPLICATION OF THE FIRST PRONG OF THE *THUNDER BASIN* TEST REQUIRES THIS COURT TO RETAIN JURISDICTION** ................................................ 3

   A.   A Central Element of the CSRA Was an Independent MSPB ............................................ 4

   B.   The MSPB is No Longer Independent ................................................................................ 9

      1.   The President Has Fired a Member of the MSPB Without Cause .................................. 9

      2.   The President Asserts the Right to Fire MSPB Administrative Judges Without Cause  10

      3.   The President Asserts the Authority to Instruct the MSPB and Its Administrative Judges How To Construe and Apply the Law, Including in Specific, Pending Cases ..................... 11

      4.   This Case Involves a Direct Assertion of Presidential Power To Fire Employees, At the Same Time He Has Assumed Control of the MSPB ............................................................. 13

   C.   Resort to the MSPB Would be Futile for These Plaintiffs .................................................. 15

   D.   Defendants' Arguments to the Contrary are Unavailing .................................................... 16

**II.   APPLICATION OF THE SECOND PRONG OF THE *THUNDER BASIN* TEST REQUIRES THIS COURT TO RETAIN JURISDICTION** .................................................. 18

   A.   Congress Did Not Intend Board, Structural, Constitutional Challenges to the MSPB's Organic Statute to Be Reviewed by the MSPB ..................................................................... 18

   B.   *Free Enterprise Fund* is Controlling ................................................................................. 20

**CONCLUSION** ............................................................................................................. 23

## **Table of Authorities**

**CASES**

*Am. Fed. of Gov't Emps. v. Trump*, 929 F.3d 748 (D.C. Cir. 2019)............................................. 17

*Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023)........................................................ 9, 20, 21

*Brooks v. OPM*, 59 M.S.P.R. 207 (1993) ) ................................................................................ 19

*Carr v. Saul*, 593 U.S. (2021) ........................................................................................... 15, 20

*Cohens v. Virginia*, 6 Wheat. 264 (1821) ....................................................................................... 2

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)........................ 2

*Elgin v. Department of the Treasury*, 567 U.S. 1 (2012)............................................. 4, 16, 19, 20

*Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551 (D.C. Cir. 2023) ......................................... 17

*Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005).......................................................................... 17

*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010) .. 20

*Grosdidier v. Chairman, Broad Bd. of Governors*, 560 F.3d 495 (D.C. Cir. 2009).................... 17

*Harris v. Bessent*, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025), *petition for rehearing pending* . 9

*Houghton v. Shafer*, 392 U.S. 639 (1968)...................................................................................... 15

*Jaroch v. Department of Justice*, Case No. DA-0752-25-0328-I-1 (MSPB Aug. 22, 2025).. 12, 22

*Malone v. Dep't of Justice*, 14 M.S.P.R. 403 (1983)..................................................................... 19

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ........................................................................... 2, 15

*McIntosh v. Department of Defense*, 53 F.4th 630, 640 (Fed. Cir. 2022) ............................... 5, 10

*Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025),................................. 8

*Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, *vacated and en banc review granted*, No
   25-5091 (D.C. Cir. Dec. 17, 2025)......................................................................................... 17

*Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986) ................... 15

*Riggin v. Off. of Senate Fair Emp. Pracs.*, 61 F.3d 1563 (Fed. Cir. 1995). ................................ 22

*Special Counsel v. Gallagher*, 44 M.S.P.R. 57 (1990) ................................................................ 19

*Special Counsel v. Jackson*, 119 M.S.P.R. 175, 179 (2013)........................................................ 19

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)............................3, 4, 9, 18, 19, 22

*United States v. Fausto*, 484 U.S. (1988) ......................................................................... 4, 5, 16

## STATUTES

5 U.S.C §1201................................................................................................................................ 6

5 U.S.C §1202(a) ........................................................................................................................... 6

5 U.S.C. §1202(d) ..................................................................................................................... 5, 10

5 U.S.C §1204(a) ........................................................................................................................... 6

5 U.S.C. §1204(j).......................................................................................................................... 10

5 U.S.C §2301(8)(a)....................................................................................................................... 6

5 U.S.C. §7513(a) ..................................................................................................................... 5, 10

5 U.S.C. §7521(a) ........................................................................................................................ 10

28 U.S.C. §1331 ............................................................................................................................. 2

## OTHER AUTHORITIES

Carter, Jimmy, *Federal Civil Service Reform Message to the Congress*, The American
Presidency Project (March 2, 1978), *https://www.presidency.ucsb.edu/documents/federal-civil-service-reform-message-the-congress*....................................................................................... 6

Civil Service Reform Act of 1978, S. Rep. 95-969 (July 10, 1978).......................................... 5, 7

Executive Order 14215 (Feb. 18, 2025), *https://public-inspection.federalregister.gov/2025-03063.pdf*,....................................................................................................................................... 11

Fed. R. Civ. P. 12(b)(1)............................................................................................................ 2, 17

Fortinsky, Sarah, DOJ suspends 2 prosecutors who referred to Jan. 6 'mob,'" THE HILL (Oct. 29, 2025), *https://thehill.com/regulation/court-battles/5579424-doj-prosecutors-jan-6-mob-trump/* ................................................................................................................................................. 11

Gaiser, Ellio T., *The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding*, White House Office of Legal Counsel (Sept. 26, 2025)...................................................................................................................................... 12

Harris, Sarah M., Acting Solicitor General, to Hon. Charles Grassley, *Multilayer Restrictions on the Removal of Administrative Law Judges* (Feb. 20, 2025), *https://iptp-production.s3.amazonaws.com/media/documents/2025.02.20_ DOJ_letter_re_ALJs.pdf* ..... 10

Lynch, N. Sarah & Goudsward Andrew, *US Justice Department Fires Several More Employees From Jack Smith's Team, Sources Say*, REUTERS (July 14, 2025), *https://tinyurl.com/2fp8k9k6* ................................................................................................... 21

Ngo, Emily, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, POLITICO (Dec. 6, 2025), *https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376?utm_medium=twitter&utm_source=dlvr.it*........ 11

*Statement of Justice Department Chief of Staff Chad Mizelle*, DOJ (Feb. 20, 2025), *https://www.justice.gov/opa/pr/statement-justice-department-chief-of-staff-chad-mizelle*........... 10

Plaintiffs Michael Gordon, Patricia Hartman and Joseph Tirrell (collectively referred to as "Plaintiffs") were career federal employees within the Defendant Department of Justice ("Department") until they were fired without any notice, for no reason, and without due process. Plaintiff Gordon was an Assistant United States Attorney and served for two years as Senior Trial Counsel with the Capitol Siege Section of the U.S. Attorney's Office for the District of Columbia. Complaint ¶¶ 4, 5, ECF 1. Plaintiff Hartman was a Supervisory Public Affairs Specialist and for a period of 18 months was the primary employee handling public affairs work specific to the government's prosecution of cases arising out of the January 6 riot. *Id.* ¶ 6, 7. Plaintiff Tirrell was the Director of the Department's Ethics Office and provided advice to Special Counsel Jack Smith relating to his investigation of President Trump, including on Smith's acceptance of pro bono legal assistance. *Id.* ¶ 8; Josephine Walker, Pam Bondi ousts ethics watchdog amid DOJ purge, Axios (July 14, 2025), *https://www.axios.com/2025/07/14/pam-bondi-fires-ethics-chief-doj-purge*.[1]

The government defends the termination of the Plaintiffs and those of a small number of other federal employees across several agencies who, for a variety of reasons having nothing to do with their performance, are specific targets of the President, via a novel assertion of the President's authority under Article II. That assertion of Article II authority constitutes a broad challenge to the constitutionality of the Civil Service Reform Act ("CSRA"). At the same time, the President has asserted his authority to fire members of the Merit Systems Protection Board ("MSPB"), the agency charged with enforcing the CSRA; actually fired one member of the Board without cause; asserted his authority to instruct the Board and its Administrative Judges

---

[1] Tirell was fired on the same day as around 20 other employees involved in investigations of President Trump. *Id.*

how they should construe federal law, including the CSRA, in specific, pending cases; and asserted his authority to fire MSPB Administrative Judges without cause.[2]

And now, in the subject Motion, Defendants assert Plaintiffs must proceed to challenge the President's novel assertion of Article II authority before the very agency he now controls – the MSPB. That is wrong in the limited pool of cases where the President or a Department head, specifically invoking the President's Article II authority, fired the employees, as we now demonstrate.

## ARGUMENT

All Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction. But because the Plaintiffs' Complaint properly pleads jurisdiction under 28 U.S.C. § 1331 as all the causes of action arise under the Constitution or the laws of the United States, the Motion to Dismiss should be denied.

The Supreme Court has made clear that "federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them" and "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–818 (1976) and *Cohens v. Virginia,* 6 Wheat. 264, 404 (1821)).

Defendants nevertheless argue that this Court lacks jurisdiction because Plaintiffs were obligated to bring all claims arising out of the termination of their employment to the MSPB. Yet, Defendants cannot point to any provision of the CSRA or any other statute that strips

---

[2] The MSPB Administrative Judges function like Administrative Law Judges in other agencies but are called Administrative Judges.

federal courts of jurisdiction over all cases arising out of the termination of federal employees. Rather, Defendants rely on a set of decisions that found congressional intent to "channel" all such claims to the MSPB implicit in the CSRA. Defendants' reliance on those prior precedents is misplaced for two reasons. One, the central rationale of the prior decisions no longer applies given the radical changes that have occurred in the position and status of the MSPB since January 2025. Two, Defendants' unprecedented claim that the CSRA is unconstitutional as applied to the President and his Department heads when they invoke his Article II authority is not the type of claim Congress intended to channel to the MSPB.

As Defendants acknowledge, the fountainhead of channeling jurisprudence is the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). The parties agree that this Court must apply the "two-step inquiry" set forth in that case. *Id*. at 207. At the first step, the Court must determine if a congressional intent to strip District Courts of their ordinary jurisdiction to resolve federal questions is "fairly discernible in the statutory scheme." *Id*. *Only* if that step favors channeling, may the Court proceed to the second step and there require proceeding before the agency only if the Plaintiffs' "claims are of the type Congress intended to be reviewed" by the agency. *Id.* at 212.

Defendants' argument fails at step one. But, even if it did not, Defendant's argument also fails at step two.

## I.    APPLICATION OF THE FIRST PRONG OF THE *THUNDER BASIN* TEST REQUIRES THIS COURT TO RETAIN JURISDICTION

At the first step, the Court must determine if a congressional intent to strip District Courts of their ordinary jurisdiction to resolve federal questions is "fairly discernible in the statutory scheme." *Id*. Defendants argue that such congressional intent is expressed in the CSRA, but they are wrong for the reasons set forth below.

## A.  The Lynchpin of the CSRA Was an Independent MSPB

The CSRA established a process through which federal employees may enforce their rights that is centrally premised on the independence of the administrative judges who and the administrative agency that adjudicates employees' appeals. But now, unlike during the period when the central cases cited by Defendants were decided, those decision-makers are not independent. Both the MSPB Members and its Administrative Judges are being directed by and can be fired by the President. That is particularly problematic when the question of whether the President, or his Department heads exercising the President's Article II authority, may fire the Plaintiffs without cause or process is the sole issue here. Congress did not intend to relegate federal employees to a process controlled by the very individual whose authority is being challenged.

"[W]hether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin*, 510 U.S. at 207 (internal citation omitted). In prior cases in which the Court has held that the CSRA precludes the invocation of federal question jurisdiction in the district courts, the Supreme Court has pointed to "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions," which led to the conclusion that "it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 11-12 (2012); *see also United States v. Fausto*, 484 U.S. 439, 443 (1988) (explaining CSRA "prescribes in great detail the protections and remedies applicable to such actions, including the availability of administrative and judicial review"). Since those

decisions, however, key "detail[s]" of the CSRA have been altered. In fact, the centerpiece of the CSRA has been destroyed.

The system of administrative adjudication that the courts have previously held precluded District Court jurisdiction was founded on the central role and corresponding independence of the MSPB. In *Fausto*, for example, the Court described "the primacy of the MSPB for administrative resolution of disputes over adverse personnel action." 484 U.S. at 449. Given that the MSPB was created to adjudicate appeals by employees of adverse personnel actions taken by federal departments and agencies (most of which are headed by officers who serve at the pleasure of the President), Congress created the MSPB as an independent agency insulated from influence by those entities and the President. The express terms of the Act, its structure, and its legislative history make that clear. *See id.* at 444.

First, the text of the CSRA prevents the President or any other executive branch official from removing members of the MSPB without cause. *See* 5 U.S.C. § 1202(d). Similarly, the Board's Administrative Judges are statutorily protected from removal without cause. *See Id.* at § 7513(a); *McIntosh v. Department of Defense*, 53 F.4th 630, 640 (Fed. Cir. 2022). The MSPB appoints its Administrative Judges, and the CSRA specifically insulates the MSPB's employment decisions from "approval or supervision of the Office of Personnel Management or the Executive Office of the President." 5 U.S.C. § 204(j).

Second, the structure of the CSRA reinforces the centrality of the independence of the MSPB. The Act established a bipartite structure, creating both the MSPB and the Office of Personnel Management ("OPM"). The OPM serves as "the arm of the President in matters of personnel administration." Civil Service Reform Act of 1978, S. Rep. 95-969 at 24 (July 10, 1978). The MSPB, in contrast, plays a quasi-judicial role, adjudicating appeals from personnel

actions taken by agencies on the advice of the OPM and thus the President. *Id.*; 5 U.S.C. § 1204(a). By statute, no more than two members of the MSPB are permitted to be from the same political party, to ensure that federal employees are "protected against arbitrary action, personal favoritism, or coercion for partisan political purposes." *Id*. at §§ 1201, 2301(8)(a). MSPB members serve seven-year terms—terms longer than that guaranteed to the appointing President, thereby preventing a new President from immediately appointing all members of the Board. *Id.* at § 1202(a). All of those structural features of the CSRA reinforce the conclusion that an independent MSPB was central to the congressional design.

Third, the Act's legislative history further supports the conclusion that Congress premised any intention to displace federal court jurisdiction on an independent MSPB. President Carter, in his Federal Civil Service Reform Message to the Congress transmitting the package of reforms that became the CSRA, explained that the reforms were intended to "ensure that employees and the public are protected against political abuse of the system." *Id*. Jimmy Carter, *Federal Civil Service Reform Message to the Congress*, The American Presidency Project (March 2, 1978), *https://www.presidency.ucsb.edu/documents/federal-civil-service-reform-message-the-congres*s. The message made clear that the President intended the reforms to remove adjudication from the control of the President. President Carter explained that the Civil Service Commission, whose functions the CSRA split between OPM and the MSPB, had "assumed . . . inherently conflicting responsibilities. It serves simultaneously both as the protector of employee rights and the promoter of efficient personnel management policy. It is a manager, rulemaker, prosecutor and judge." *Id*. Presider Carter further explained, "I propose to correct the inherent conflict of interest within the Civil Service Commission by . . . replacing it with a Merit Protection Board and Office of Personnel Management." *Id*. The Merit Board "will

be headed by a bipartisan board of three members . . . removable only for cause." *Id.* "This structure will guarantee independent and impartial protection to employees." *Id.*

The Senate Report on what became the CSRA similarly explains that the legislation created an administrative system of adjudication that was to serve as "a vigorous protector of the merit system"—the centerpiece of which was "a strong and independent [MSPB]." S. Rep. 95-969 at 6–7. Congress intended to eliminate the "spoils" system of the 19th century, in which employees were hired and fired based on "political or personal favoritism." *Id.* at 2–3. "The lack of adequate protection [against partisan pressures] was painfully obvious during the civil service abuses" of the past. *Id.* at 6–7. Instead, Congress sought to ensure that employees were "hired and removed on the basis of merit" and "competence." *Id.* at 2–3.

An MSPB independent of the President was intended to be "'the Cornerstone' of Civil Service Reform." *Id.* at 7. In order to effectuate the purpose of preserving the merit system by preventing partisan intervention, Congress recognized that the MSPB had to be "insulated from the kind of political pressures that [had] led to violations of merit principles in the past." *Id.* at 7. Congress explained that "absent such a mandate for independence for the merit board, it is unlikely that [it] would have granted the Office of Personnel Management the power it has or the latitude to delegate personnel authority to the agencies." *Id.* The CSRA thus incorporated President Carter's recommendation by "provid[ing] for an independent merit systems protection board . . . to adjudicate employee appeals and protect the merit system." *Id.* at 2. Congress repeatedly stressed the centrality of a MSPB free from "*any control or direction by the President.*" *Id.* at 24 (emphasis added).

Reviewing the text, structure, and legislative history of the CSRA, the Fourth Circuit recently concluded that "[t]he CSRA's adjudicatory scheme was predicated on the existence of

a[n] . . . independent MSPB." *Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293, 304 (4th Cir. 2025). The Fourth Circuit questioned whether an "independent MSPB" exists any longer and opined that "a new examination of Congressional intent may be required in light of changing circumstances around the MSPB['] . . . removal protections" and related changes. *Id.* at 308.

The facts that now exist indicate even more strongly that Congress did not intend to relegate these Plaintiffs' claims to the MSPB. Notably, in questioning the independence of the MSPB, the Fourth Circuit did not even consider several of the changes described below, including (a) the D.C. Circuit upholding the President's removal of a Member of the MSPB without cause, (b) the President's assertion of authority to remove Administrative Law Judges and MSPB Administrative Judges, (c) the President's or his Attorney General's removal of almost 100 Immigration Judges via an assertion of the President's Article II authority, and (d) the President's assertion of authority to inform all executive branch agencies how to construe federal law and the President, *via* the Justice Department, giving such instructions in specific, pending cases involving the assertion of Article II authority to fire employees. Moreover, the matter under review in the Fourth Circuit case did not involve the President's direct assertion of authority or the invocation of his Article II authority by a Department head. For all of those reasons, this case presents a much more compelling case for a reassessment of congressional intent "in light of changing circumstances around the MSPB." *Id.*

As we demonstrate in subsection B, an independent MSPB no longer exists and thus there is no longer a discernable congressional intent to channel Plaintiffs' claims to the agency.

**B. The MSPB Is No Longer Independent**

Unlike when the central cases that have addressed the channeling issue were decided, now, the centerpiece of the CSRA's remedial structure – an independent MSPB – no longer exists. This is true for three separate reasons.

**1. The President Has Fired a Member of the MSPB Without Cause**

First, for the first time since the CSRA was enacted into law, the President has taken the position that he can remove the members of the MSPB without cause despite Congress' express prohibition of such removals. In fact, President Trump has already removed a member of the Board without cause and expressly proclaimed his right to do so, and the D.C. Circuit has upheld the action. *See Harris v. Bessent*, 2025 WL 3496737 (D.C. Cir. Dec. 5, 2025), *petition for rehearing pending*.[3]

---

[3] Even if the *en banc* D.C. Circuit or the Supreme Court reverses the panel opinion in *Harris*, the agency would still not be independent for the second and third reasons explained in the text in §§ I(B)(2) and (3).

Moreover, forcing Plaintiffs to proceed before the MSPB under that circumstance would inflict a "here and now injury" on the Plaintiffs under *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023). Indeed, this case would be the precise mirror image of *Axon* with the only difference being that the administrative tribunal as currently constituted, *i.e.*, with Harris terminated in violation of the statute, violates Article I and not Article II.

In *Axon*, plaintiffs brought actions in federal district court seeking to enjoin enforcement actions pending before Administrative Law Judges under the Securities and Exchange Act and Federal Trade Commission Act on the grounds that those agencies were unconstitutional in structure. As here, the agencies argued that the plaintiffs had to make those arguments before the agency.

Considering whether precluding district court jurisdiction would "foreclose all meaningful judicial review" under *Thunder Basin*, 510 U.S. at 212-13, the Court found that later review of agency action by a court of appeal was insufficient because the plaintiffs would still have been harmed by "'being subjected' to 'unconstitutional agency authority.'" 598 U.S. at 191. That, the Court found, "is 'a here-and-now injury. . . . impossible to remedy once the proceeding is over.'" *Id*. What the Defendants argue for here is precisely what the Court concluded in *Axon* could not be done, subject the Plaintiffs "to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id*.

If the full D.C. Circuit or the Supreme Court holds that the President's removal of a Member of the MSPB without cause in violation of the CSRA invaded Congress' authority under

**2.  The President Asserts the Right to Fire MSPB Administrative Judges Without Cause**

Second, the President has also taken the unprecedented position that he can remove the Administrative Law Judges who conduct hearings and issue preliminary decisions for independent agencies, including the MSPB, despite Congress' express prohibition of such removals in 5 U.S.C. § 7513(a)[4] and the CSRA's novel, express insulation of the MSPB's employment decisions, including decisions about Administrative Judges, from "approval or supervision of the Office of Personnel Management or the Executive Office of the President." 5 U.S.C. § 1204(j). *See* Acting Solicitor General Sarah M. Harris to Hon. Charles Grassley, *Multilayer Restrictions on the Removal of Administrative Law Judges* (Feb. 20, 2025), *https://iptp-production.s3.amazonaws.com/media/documents/2025.02.20_DOJ_letter_re_ALJs.pdf* ("the Department of Justice has concluded that the multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, that the Department will no longer defend them in court, and that the Department has taken that position in ongoing litigation"); *Statement of Justice Department Chief of Staff Chad Mizelle*, DOJ (Feb. 20, 2025), *https://www.justice.gov/opa/pr/statement-justice-department-chief-staff-chad-mizelle* (*"*The Department of Justice determined that multiple layers of removal restrictions shielding administrative law judges (ALJs) are unconstitutional. Unelected and constitutionally unaccountable ALJs have exercised immense power for far too long. In accordance with

Article I, *Axon*'s holding would be controlling. The Plaintiffs cannot be forced to submit to "unconstitutional agency authority" and later judicial review cannot remedy the harm that would inflict on the Plaintiffs.

[4] The Federal Circuit held that Section 7513(a) applies to MSPB Administrative Judges in *McIntosh*, 53 F.4th at 640.

Supreme Court precedent, the Department is restoring constitutional accountability so that

Executive Branch officials answer to the President and to the people.").[5]

**3. The President Asserts the Authority to Instruct the MSPB and Its Administrative Judges How to Construe and Apply the Law, Including in Specific, Pending Cases**

Finally, the President has taken the position that he has the constitutional authority to

direct all members of the Executive Branch, including members of the MSPB and Administrative

Judges at the MSPB, as to how they must interpret and apply federal law. In Executive Order

14215 (Feb. 18, 2025), *https://public-inspection.federalregister.gov/2025-03063.pdf*, the

President declared:

> The President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch. The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law.

*Id.* § 7. The Order is expressly applicable to formerly independent agencies such as the MSPB.

*See id.* §§ 1, 2(b), 5.

---

[5] The President, via the Attorney General invoking the President's Article II authority, has, in fact, removed 98 immigration judges as of December 6, 2025. *See* Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, POLITICO (Dec. 6, 2025), *https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376?utm_medium=twitter&utm_source=dlvr.it*. And in late October 2025, the Justice Department suspended two Assistant U.S. Attorneys who merely used the term "mob" in a sentencing memorandum to describe those who entered the Capital on January 6, 2021. *See* Sarah Fortinsky, *DOJ suspends 2 prosecutors who referred to Jan. 6 'mob,'* THE HILL (Oct. 29, 2025), *https://thehill.com/regulation/court-battles/5579424-doj-prosecutors-jan-6-mob-trump/*. Therefore, the specter of removal if an Administrative Judge disagrees with the President or the Attorney General concerning their authority under Article II to summarily fire these Plaintiffs, all of whom were involved in investigations or prosecutions related to the January 6th insurrection, is very real.
.

And, in fact, the President, via the Office of Legal Counsel, has already informed MSPB judges that they must follow the President's construction of the law and, *via* the Department of Justice, directed judges in specific cases to do so.

On September 26, 2025, at the request of the Counsel to the President, the Office of Legal Counsel at the Department of Justice issued a Memorandum Opinion addressing "The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding," *https://www.justice.gov/olc/media/1415466/dl* ("OLC Opinion"). Whether the MSPB has authority to adjudicate constitutional questions is a contested issue in a select number of cases pending before the MSPB, specifically, cases like this one where the President or a Department head invoked the President's authority under Article II authority to terminate employees without cause or due process. The OLC Opinion concluded, "MSPB administrative judges must adjudicate the constitutional issued raised by the Agencies." *Id*. at 12.

The Department of Justice immediately conveyed that direction to the Board and its Administrative Judges by filing the OLC Opinion in the two lead cases addressing the Article II issue. *Jackler v. Dep't of Justice*, No. DA-0752-25-0330-I-1 (MSPB), and *Jaroch v. Dep't of Justice* No. DA-0752-25-0328-I-1 (MSPB). The Department of Justice asserted that the OLC Opinion was binding on the Board and its Administrative Judges and required that the contrary opinion of the Chief Administrative Judge be vacated "as it does not represent the legal position of the Executive Branch." Exhibit 1 at 3 (Agency's Motion for Leave to File Additional Pleading and Alternative Motion to Remand, *Jackler v. Department of Justice*, No. DA-0752-25-0330-I-1 (MSPB Sept. 27, 2025)). Thus, the President is taking the position that not only can he fire Members of the MSPB, but he can also instruct the Board Members and all Administrative Judges how to interpret and apply the law, including in specific pending cases, and then fire them

without cause if they disobey (or for any reason whatsoever). A more thoroughgoing rejection of the fundamental premise of the remedial scheme created by Congress in the CSRA – the independence of the MSPB – is hard to imagine.

### 4. This Case Involves a Direct Assertion of Presidential Power To Fire Employees, At the Same Time He Has Assumed Control of the MSPB

The President's actions depriving the MSPB of all independence are particularly problematic as he is advancing a novel assertion of Article II authority – which is being implemented by the Attorney General and other heads of Departments – to fire federal employees, including the three Plaintiffs, without cause or process. In other words, these are not cases where departments or agencies have made separate and independent decisions to fire or otherwise discipline particular employees. Here, the government asserts that the President's Article II authority was invoked to fire the Plaintiffs, and the government asserts that the invocation of the President's Article II authority permits the termination without cause or process. Complaint ¶¶4, 24, 34, 39, ECF 1.

Since the current President assumed office the second time, the government has asserted that there is a difference between ordinary terminations of federal employees by their employer agencies and terminations pursuant to the President's Article II power. In parallel litigation, the government has taken the position that "Congress has granted agencies authority to remove employees pursuant to Chapter 75 [of 5 U.S.C., *i.e.*, for cause and after notice and due process, but] that statutory authority is separate and distinct from the President's inherent removal authority under Article II." Exhibit 2 at 4 (Agency Closing Brief and Motion to Dismiss, *Comans v. Dep't of Homeland Security*, No. DC-0752-25-1783-l-1 (MSPB)). The government has distinguished "the President's or the Attorney General's constitutional removal authority, as opposed to, for example, routine administrative discipline procedures." Exhibit 3 at 20-21

13

(Agency's Petition for Review, *Jackler v. Dep't of Justice*, No. DA-0752,25-0330-I-1 (MSPB)). According to the government, what determines whether the dismissal is an ordinary agency action or an exercise of the President's constitutional authority is what the notice states. Exhibit 2 at 4 (Agency Closing Brief, *Comans*). Here, each of the Plaintiffs' notices of termination state, "Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated." Complaint ¶¶ 24, 34, 39. Although the notices of termination were signed by the Attorney General, they "involve[] the President's exercise of his inherent Article II authority." Exhibit 2 at 4 (*Comans* Brief).

While there is no definitive source, Plaintiffs' counsel, who have extensive federal employment practices, believe that the vast majority of terminations of federal workers do not invoke the President's Article II authority. Counsel represent that they believe the President's Article II authority has been invoked only with respect to particular targets of the President, such as the three Plaintiffs, all of whom worked on matters related to the January 6 insurrection, *see supra* at 1,  immigration judges perceived as hostile to the President's immigration agenda, and others who have, for whatever reasons, invoked the President's ire. Exhibit 5 (Burakiewicz Decl.) ¶ 2.[6]

 Congress did not intend to force employees to challenge such Executive Branch actions before an agency controlled and directly answerable to the President. Under the current circumstances, a congressional intent to displace general federal question jurisdiction is no longer "fairly discernible in the statutory scheme" at least as to adverse actions directed by the

---

[6] As explained in note 10 *infra*, this can be confirmed in discovery, if necessary to establish jurisdiction.

President or his Department heads invoking his Article II authority. Therefore, this Court should retain jurisdiction.

### C.  Resort to the MSPB Would Be Futile For These Plaintiffs

Retention of jurisdiction by this Court is not only commanded by step one of the *Thunder Basin* analysis but by traditional futility doctrine as well. Of course, the Supreme Court "has consistently recognized a futility exception to exhaustion requirements." *Carr v. Saul*, 593 U.S. 83, 93 (2021). "It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested." *Id*. That is clearly the case here, where the President has directed the Plaintiffs' terminations or they were taken pursuant to his Article II authority and where the President has directed that the Board and its Administrative Judges must not only follow the President's construction of the law, but that they can be fired if they do not do so.

"Resort to the administrative process is futile if the agency will almost certainly deny any relief." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986). Thus, in *McCarthy*, the Supreme Court concluded that, "in view of [the] Attorney General's submission that the challenged rules of the prison were 'validly and correctly applied to petitioner,' requiring administrative review through a process culminating with the Attorney General 'would be to demand a futile act.'" *McCarthy*, 503 U.S. at 148 (quoting *Houghton v. Shafer*, 392 U.S. 639, 640 (1968)). Here, the Defendants assert they have the authority to terminate the Plaintiffs without cause or due process using the President's Article II authority and thus to require Plaintiffs to resort to a process in which the President can both dictate the outcome and remove the decision-makers if they disagree with the President would likewise be to demand a futile act.

**D.  Defendants' Arguments to the Contrary Are Unavailing**

Nothing in the decisions cited by Defendants, all of which either preceded the radical and unprecedented changes described above or wholly failed to consider them, contradicts this analysis. While Defendants rely on the Supreme Court's decisions in *Elgin* and *Fausto*, both of those decisions repeatedly emphasize the detailed process created by Congress as we explained above. The Court pointed to the "comprehensive nature of the CSRA," that the Act "prescribes in great detail the protections and remedies applicable to adverse personnel actions," that the Act "exhaustively details the system of review before the MSPB," the "CSRA's structure," the "painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions," and the fact that the CSRA created an "integrated scheme of administrative and judicial review." *Elgin*, 567 U.S. 10-13; *Fausto*, 484 U.S. at 443, 445, 448. Critical "detail[s]" of the "comprehensive system" have now been unilaterally eliminated by the President. *Fausto*, 484 U.S. at 443; *Elgin*, 567 U.S. at 5.

Those decisions clearly would not have been the same if the Court had been aware that a central element of the "comprehensive" and "integrated" scheme of review Congress believed it was creating – the independence of the MSPB – was no longer in place. Indeed, one of the two "structural elements" of the Act that the Court found "important" in *Fausto* was "the primacy of the MSPB." 484 U.S. at 449. That "primacy" no longer exists after the President removed a member without cause and instructed the Board and its Administrative Judges that they are bound to follow his construction of the law. And, correspondingly, Congress' intention to "enable[] the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action" has been equally frustrated by the President's assertion of authority over the development of the law. The logic of both *Elgin* and *Fausto*

makes clear that the Court would not conclude that Congress intended to preclude federal court jurisdiction under the current facts.

*Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762 (D.C. Cir. 2025), *vacated and en banc review granted*, No 25-5091 (D.C. Cir. Dec. 17, 2025), is the one case Defendants cite that post-dates some of the events described above. But the decision rests entirely on *Elgin* and *Fausto* and other decisions predating those events and does not in any way address the arguments made *supra* in § I(B) and (C). *Vought*, 149 F.4th at 774-76. As to the other cited cases, *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551 (D.C. Cir. 2023), predated the events relied on here. Moreover, in that case, the Plaintiff did "not seriously dispute that Congress intended to route challenges to FERS retirement benefits determinations exclusively through the CSRA's remedial regime." *Id.* at 558. *Am. Fed. of Gov't Emps. v. Trump*, 929 F.3d 748 (D.C. Cir. 2019), also predated the critical changes relied on here and involved the Federal Labor Relations Authority, not the MSPB. Similarly, *Grosdidier v. Chairman, Broad Bd. of Governors*, 560 F.3d 495 (D.C. Cir. 2009), adds nothing to the analysis the Court must perform now, nor does *Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005), as both preceded the critical events described *supra* in  I(B).

Finally, Defendants are simply wrong when they suggest that Plaintiffs "invite[] this Court to radically remake the analytical framework that the Supreme Court and D.C. Circuit have articulated." Defendants' Memorandum of Law in Support of Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction at 12 (Dkt. 17-1). To the contrary, as explained above, Plaintiffs agree with the Defendants that the test articulated by the Supreme Court in *Thunder Basin*, and subsequently applied by the D.C. Circuit, should be applied here. Plaintiffs also agree that this Court must ask if a congressional intent to strip district courts of their ordinary jurisdiction to

resolve federal questions is "fairly discernible in the statutory scheme [of the CSRA]." 510 U.S at 207. The answer to that question when the MSPB was actually an independent agency whose members and Administrative Judges could not be arbitrarily fired by the President and who were free to interpret and implement the law using independent judgment is different than the answer today, when none of those facts exist any longer. Congress never intended to force employees who were fired by the President or his Department heads asserting his Article II authority to take their appeals to an agency where the effort would clearly be futile.

For this reason alone, this Court should exercise jurisdiction here and adjudicate the merits of this dispute.

## II.    APPLICATION OF THE SECOND PRONG OF THE *THUNDER BASIN* TEST REQUIRES THIS COURT TO RETAIN JURISDICTION

Even if consideration of the first prong was not dispositive, the second prong of the *Thunder Basin* test also requires that this Court retain jurisdiction. The second prong requires courts to consider "whether [the] claims are of the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. That is not the case here where Defendants make the unprecedented claim that the CSRA is unconstitutional as applied to the President and his Department heads when they invoke his Article II authority.

### A. Congress Did Not Intend Broad, Structural, Constitutional Challenges to the MSPB's Organic Statute to Be Reviewed by the MSPB

In *Thunder Basin* itself, the Court reaffirmed long-standing precedent holding "that [a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Id*. at 215. And that is exactly what is at issue here. Defendants argue that the CSRA is unconstitutional as applied to any personnel action taken by the President or his Department heads pursuant to the President's Article II

18

powers. Lest there be any doubt about whether that is, in fact, Defendants' position, in a parallel case before the MSPB involving the termination of an immigration judge pursuant to Article II, the Department of Justice stated that the employees' "reading of the CSRA[, *i.e.*, that it applies to the President and his Department heads even when they involve the President's Article II powers,] would render it unconstitutional under Article II." Exhibit 3 at 19 (Agency's Petition for Review, *Jackler v. Dep't of Justice,* No. DA-0752-25-0330-I-1 (MSPB)).

A claim that the CSRA is unconstitutional is not the type of claim Congress intended to be reviewed by the MSPB as the MSPB itself has repeatedly held. *See, e.g.*, *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (1990) ("the Board lacks authority to adjudicate the constitutionality of a statute"); *Malone v. Dep't of Justice,* 14 M.S.P.R. 403, 406 (1983) ("administrative agencies are without authority to determine the constitutionality of statutes").[7]

To be sure, *Thunder Basin* makes clear that the existence of a constitutional question does not always preclude channeling, 510 U.S. at 215, as does *Elgin*, 567 U.S. at 10. But the government's argument in these cases is not that the MSPB can adjudicate whether another agency violated the Constitution in the specific action it took concerning a single employee, as was the argument in cases in which the MSPB has considered constitutional claims and in *Elgin*,[8] but rather that the MSPB itself would violate the Constitution if it applied the CSRA in

---

[7] In fact, the government initially moved to dismiss MSPB appeals in parallel cases on the grounds that the Board could not address the constitutional issues at stake because "it is well established that the Board has not been given jurisdiction through any law, rule or regulation over such constitutional law claims." Exhibit 4 at 6 (Agency Narrative Response and Motion to Dismiss for Lack of Jurisdiction, *Comans*). It also argued that the Board lacked jurisdiction over the appeals because the employees were removed "at the direction of the President pursuant to Article II." *Id*.

[8] *See, e.g., Special Counsel v. Jackson*, 119 M.S.P.R. 175, 179 (2013) (arguing that agency "violated [employee's] due process and equal protection rights by selectively enforcing the Hatch Act"); *Brooks v. OPM*, 59 M.S.P.R. 207, 209, 215 n.7 (1993) (petitioners challenged

any way to an employment action directed by the President or taken by Department heads invoking the President's Article II authority. That is a broad challenge to the MSPB's own organic statute. The government argues that the MSPB is without authority under the Constitution to deem unlawful any adverse action taken by the President or any Department head invoking the President's Article II authority against any employees. This is a novel, structural, constitutional challenge to Congress' authority to constrain the President. The Supreme Court has made clear that "agency adjudications are generally ill suited to address structural constitutional challenges." *Carr*, 593 U.S. at 92.

### B. *Free Enterprise Fund* Is Controlling

The Supreme Court's decision in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), which held a plaintiff did not have to proceed through an agency review process, is controlling here. In *Free Enterprise Fund*, the plaintiff objected to the Oversight Board's application of the law to the plaintiff, given the statutory insulation of Board members from removal. The plaintiff, the Court observed, "[o]bjects to the Board's existence, not to any of its auditing standards." *Id*. at 490. Similarly, the government here objects to the MSPB's application of the law to the President, not to any of its constructions of the law. The government raises "a 'standard' issue of . . . constitutional law, relating not at all to 'considerations of [MSPB] policy" and "'outside the [MSPB's] competence and expertise.'" *Axon*, 598 U.S. at 188 (quoting *Free Enterprise Fund*, 561 U.S. at 491).

---

agency construction of statute that caused them to be "denied military service credit for reduction-in-force (RIF) retention purposes and for accrual of annual leave" on the grounds that it deprived them of equal protection"). And, of course, *Elgin* also involved a constitutional challenge to discrete actions taken by an agency employer, *i.e.*, firing employees for failure to register for the draft (and the Court did not hold that the MSPB could or should address the argument). *See* 567 U.S. at 6-8.

That *Free Enterprise Fund* is controlling here is conclusively established by the Court's holding and reasoning in *Axon*. There, the Court expressly posed the question as "whether the cases before us are more like *Thunder Basin* and *Elgin* or more like *Free Enterprise Fund*." *Axon*, 598 at 189. In reasoning that is directly on point here, the Court explained that the case was more like *Free Enterprise Fund* because the challenges "are not to any specific substantive decision. . . . [Rather the plaintiffs] charge that an agency is wielding authority unconstitutionally in all *or a broad swath of its work*." *Id*. (emphasis added). Here, just as in *Axon* and *Free Enterprise Fund*, the argument is that the MSPB would "wield[] authority unconstitutionally in . . . a broad swath of its work" if it applies the CSRA to any employment decisions made or directed by the President or invoking his Article II authority. This is most certainly not the form of discrete, specific, and as-applied constitutional argument advanced by an employee in respect to an employing agency's action that the MSPB must address in the first instance.

That the government's argument would effectively render the CSRA a nullity is made clear by the fact that the President and various Department heads have not limited their argument to inferior officers, Senior Executive Service ("SES") employees, or other high-ranking employees. Rather, the administration has asserted its alleged Article II authority to fire any and all employees at any rank, including those at grade levels as low as GS-9. *See* Exhibit 5 (Burakiewicz Decl.) ¶ 4; Sarah N. Lynch & Andrew Goudsward, *US Justice Department Fires Several More Employees From Jack Smith's Team, Sources Say*, Reuters (July 14, 2025), *https://tinyurl.com/2fp8k9k6*. In other words, while the government does not yet argue that the CSRA is unconstitutional in its entirety, it does argue that it cannot constitutionally be applied to any adverse actions directed by the President or his Department heads invoking the President's

Article II authority, thus effectively allowing the executive branch to do an end run around the Act in every case in which the President or his Department heads wish to do so.

Addressing the government's argument that it can violate the CSRA so long as the President or a Department head wishes to do so would require the Board "to question its own statutory authority" and "to disregard . . . instructions Congress has given it." *Riggin v. Off. of Senate Fair Emp. Pracs.*, 61 F.3d 1563, 1569–70 (Fed. Cir. 1995). And "[a] finding that the agency lacks jurisdiction to decide constitutional questions is especially likely when the constitutional claim asks the agency to act contrary to its statutory charter." *Id*. at 1569. Such a finding is appropriate here as the MSPB's Chief Administrative Judge concluded in *Jaroch v. Dep't of Justice*, Case No. DA-0752-25-0328-I-1 (MSPB Aug. 22, 2025) (Exhibit 6):

> These contentions are, in essence, a challenge to the constitutionality of the removal protections afforded by [the CSRA]. . . .[T]he agency is asking the Board to invalidate one or more of the provisions of the statute. . . . The Board has long recognized that administrative agencies are without authority to determine the constitutionality of statutes.

*Id*., slip op. at 6-7.

Therefore, this Court must retain jurisdiction under *Thunder Basin* step two as well as step one.[9]

---

[9] As explained above, this Court need not address the question of judicial review in order to retain jurisdiction under either step one or two of *Thunder Basin.* The Court observed in its discussion of step two that it had "previously . . . upheld district court jurisdiction over claims considered "wholly 'collateral'" to a statute's review provisions and outside the agency's expertise, . . . *particularly* where a finding of preclusion could foreclose all meaningful judicial review." 510 U.S. at 212-13 (emphasis added). "[P]articularly" most certainly does not mean "only." Moreover, here, while review in the Federal Circuit would be available after an adverse decision by the MSPB, that review would not be "meaningful" because of the deference the court would owe the now not independent agency as the agency's findings of fact would be subject to a deferential "substantial evidence" standard under 5 U.S.C. § 7703(c)(3).

## **Conclusion**

For the above-stated reasons, this Court should deny the Defendants' Motion to

Dismiss.[10]


Date: December 23, 2025                                        Respectfully Submitted,

*/s/ Abbe David Lowell*                                          */s/ Mark S. Zaid*
Abbe David Lowell (DDC No. 358651)              Mark S. Zaid (DDC No. 440532)
David A. Kolansky (DDC No. 7680722)          Bradley P. Moss (DDC No. 975905)
Isabella M. Oishi (DDC No. 7680428)            LAW OFFICES OF MARK S. ZAID, P.C.
LOWELL & ASSOCIATES, PLLC                    1250 Connecticut Avenue, N.W., Suite 700
1250 H Street, N.W., Suite 250                      Washington, D.C. 20036
Washington, D.C. 20005                              T: (202) 498-0011
T: (202) 964-6110                                      Mark@MarkZaid.com
F: (202) 964-6116                                       Brad@MarkZaid.com
ALowellpublicoutreach@lowellandassocates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com


*/s/ Heidi R. Burakiewicz*
Heidi R. Burakiewicz (DDC No. 473973)          */s/ Harold Craig Becker*
BURAKIEWICZ & DEPRIEST, PLLC              Harold Craig Becker (D.C. Bar #371239)
1120 Connecticut Avenue, N.W., Suite 600      Norman L. Eisen (D.C. Bar #435051)
Washington, D.C. 20036                              DEMOCRACY DEFENDERS FUND
T: (202) 856-7500                                       600 Pennsylvania Avenue, S.E., No. 15180
HBurakiewicz@bdlawdc.com                        Washington, D.C. 20003
                                                              T: (202) 594-9958
*Counsel for Plaintiffs*                                  craig@democracydefenders.org
                                                              norman@democracydefenders.org

---

[10] If the Court disagrees as to whether jurisdiction has been established, Plaintiffs request, in the alternative, to be permitted to conduct limited discovery to explore the factual circumstances that demonstrate jurisdiction exists in this Court. Discovery would include, but not be limited to: (1) the scope of the government's claim that when the President or a Department head invokes the President's Article II authority, the CSRA cannot constitutionally be applied, (2) any directions given by the President, the Executive Office of the President, or the Attorney General to Members of the MSPB or MSPB Administrative Judges, and (3) any directions given by the President to terminate the Plaintiffs or to invoke his Article II authority to do so.

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction on December 23, 2025, with the Clerk of Court using the CM/ECF system, which will send a notification of filing to all counsel of record.

*/s/ Heidi R. Burakiewicz*
Heidi Burakiewicz

*Counsel for Plaintiffs*