# Attachment 4

Mary Comans v. Department of Homeland Security

Docket # DC-0752-25-1783-I-1

Agency Motion to Dismiss

Summary Page

Case Title :   Mary Comans v. Department of Homeland Security

Docket Number :   DC-0752-25-1783-I-1

Pleading Title :   Agency Motion to Dismiss

Filer's Name :   Michelle Perry

Filer's Pleading Role :   Agency

Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|
| 1 | Attachment 1 to Motion to Dismiss.pdf | Uploaded |
| 2 | Attachment 2 to Motion to Dismiss.pdf | Uploaded |
| 3 | Attachment 3 to Motion to Dismiss.pdf | Uploaded |
| 4 | Attachment 4 to Motion to Dismiss.pdf | Uploaded |

# Mary Comans v. Department of Homeland Security

# Docket # DC-0752-25-1783-I-1

# Agency Motion to Dismiss

# Table of Contents

| | | |
|---|---|---|
| Summary | ........................................... | 1 |
| Table of Contents | ........................................... | 2 |
| Interview | ........................................... | 3 |
| Body | ........................................... | 4 |
|   A. The Board Has No Jurisdiction Over a Challenge to an Article II Removal | ........................................... | 7 |
| Attachment 1 to Motion to Dismiss | ........................................... | 13 |
| Attachment 2 to Motion to Dismiss | ........................................... | 14 |
| Attachment 3 to Motion to Dismiss | ........................................... | 16 |
| Attachment 4 to Motion to Dismiss | ........................................... | 18 |
| Certificate of Service | ........................................... | 19 |

Mary Comans v. Department of Homeland Security

Docket # DC-0752-25-1783-I-1

Agency Motion to Dismiss

Online Interview

1. Enter a brief title for your pleading.

Agency Motion to Dismiss

2. Does your pleading assert facts that you know from your personal knowledge?

Yes

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

Yes

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| MARY COMANS ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Docket No. DC-0752-25-1783-I-1 |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY ) | |
| ) | |
| Agency. ) | Date: April 25, 2025 |
| ) | |

**AGENCY NARRATIVE RESPONSE AND**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**

This matter comes before the Merit Systems Protection Board ("Board" or "MSPB"), Washington Regional Office, upon the initial appeal of Mary Comans ("Appellant"). The appeal arises out of the actions of the U.S. Department of Homeland Security ("DHS"), and its component, the Federal Emergency Management Agency ("FEMA" or "the Agency"), to terminate Appellant's employment on February 11, 2025. Appellant's removal was undertaken pursuant to Article II of the United States Constitution at the direction of the President.

I. STATEMENT OF FACTS

1. FEMA appointed Appellant to the position of Chief Financial Officer (CFO) on September 13, 2020. Attachment 1 (SF50 Appointment).

2. On February 11, 2025, the Office of the President contacted DHS officials and informed DHS officials that four (4) FEMA employees were to be immediately terminated. Attachment 2 (FEMA Administrator Statement).

3. The DHS officials were specifically instructed to carry out the terminations pursuant to the authority of the President of the United States. Attachment 2.

4. On February 11, 2025, FEMA Senior Official Performing the Duties of the Deputy Administrator MaryAnn Tierney issued the Notice of Termination in order to remove Appellant from her position as the CFO from the Office of the Chief Financial Officer, FEMA. Attachment 3 (Notice of Termination).

5. Appellant's termination was effective that same day. Attachment 4 (SF50 Termination).

## II.     DISCUSSION

It is well established that the President of the United States is the head of the Executive Branch and is the steward of the employees who work within the Branch. As James Madison explained, "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." 1 Annals of Cong. 463 (1789). That power, in turn, generally includes the ability to remove executive officials, for it is "only the authority that can remove" such officials that they "must fear and, in the performance of [their] functions, obey." *Bowsher v. Synar*, 478 U. S. 714, 726 (1986) (internal quotation marks omitted).

Creating what would become the competitive service, the Pendleton Act of 1883 provided a commission to assist the President in screening candidates for the performance of duties in the executive branch. The Pendleton Act did not move to restrict the President's removal power for non-political reasons. *Id*. A 1901 case before the Supreme Court found, in the absence of prescribed laws limiting removals, "the appointing power to remove at pleasure or for such cause as it deemed sufficient" under the Constitution. *Reagan v. United States*, 182 U.S. 419, 425 (1901). This foundational ruling was later refined for cases involving the President, explaining a presumption that the President holds the power to remove executive officers at will

and that a statute must contain "plain language to take [that power] away." *Shurtleff v. United States*, 189 US 311, 316 (1903).

In a few short years, the Lloyd-LaFollette Act of 1912 was passed mandating that "no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal." The Lloyd-LaFollette Act provided procedures for agencies to follow when dismissing employees. Decades later, still working under this general framework, but with small functional edits though executive orders and the Veterans Preference Act (VPA) of 1944, the Supreme Court in *Arnett v. Kennedy* determined that federal employees have a constitutional due process interest in continued federal employment. 416 U.S. 134 (1974).

With this background, Congress passed the Civil Service Reform Act of 1978 (CSRA) to replace prior legislation and executive orders with a new framework. Under the CSRA, 5 U.S.C. §1101 et seq., an employing agency who proposes a covered action against a covered employee must give the employee the right to notice, representation by counsel, an opportunity to respond, and a written reasoned decision from the agency. §7513(b). The CSRA is silent, however, on the President's inherent power to remove executive employees.

The historical recognition of the President's authority has been upheld and reinforced in numerous recent cases. "The removal power helps the President maintain a degree of control over the subordinates he needs to carry out his duties as the head of the Executive Branch, and it works to ensure that these subordinates serve the people effectively and in accordance with the policies that the people presumably elected the President to promote." *Collins v. Yellen*, 594 U.S. 220, 252 (2021); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); *Free*

3 | P a g e

*Enterprise Fund v. Public Co. Acct. Bd.*, 561 U.S. 477, 501-502 (2010).[1] The Supreme Court further stated that at-will removals, then as now, safeguard that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community." *Free Enterprise Fund*, 561 U.S. at 498 (*quoting* 1 Annals of Cong. 499 (1789) (J. Madison)).

### A. The Board Has No Jurisdiction Over a Challenge to an Article II Removal

As stated the President has constitutional authority to remove subordinate officials in the Executive Branch. *Free Enterprise Fund*, 561 U.S. at 513 (addressing the President's authority to remove an "inferior" Constitutional officer who reports to a "Principal" Constitutional officer who also has tenure protections from removal). This authority derives from Article II of the United States Constitution, which states "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; id. at §3). The "vesting of executive power in the President" carries, by "reasonable implication," a grant of power to select subordinates and remove them from service. *Myers v. United States*, 272 U.S. 52, 117 (1926) (because the selection "of administrative officers is essential to the execution of the laws by [President], so must be his power of removing those for whom he cannot continue to be responsible"); *see also Free Enterprise Fund*, 561 U.S. at 513-14 (executive power "includes, as a general matter, the authority to remove those who assist him in carrying out his duties").

Although Congress has granted *agencies* authority to remove employees pursuant to Chapter 75, that statutory authority is separate and distinct from the President's inherent removal

---

[1] As noted *supra* the caselaw is focused on the removal of Officers and Inferior Officers as those are the Executive Branch employees over whom the President has exercised his Article II authority. As all Executive Branch employees fall under the President's authority, however, the same principles apply to the exercise of the President's authority to remove non-officer employees of the Executive Branch.

4 | P a g e

authority under Article II. Long before the passage of the Civil Service Reform Act (CSRA), "the President's absolute power of removal of federal employees was established in principle." Gerald E. Frug, *Does the Constitution Prevent the Discharge of Civil Service Employees*, 124 U. PENN. L. REV. 942 (1976). Congress may pass civil service laws allowing for removal under specified circumstances, but the President's removal authority under the Constitution exists even in the absence of statutory authority. *See Myers*, 272 U.S. 52 at 146 ("It is argued that these express provisions for removal at pleasure indicate that without them no such power would exist in the President. We cannot accede to this view."); *Parsons v. United States*, 167 U.S. 324 (1897) ("The provision for a removal from office at pleasure was not necessary for the exercise of that power by the president, because of the fact that he was then regarded as being clothed with such power in any event.").

    The case at hand involves the President's exercise of his inherent Article II authority, rather than the exercise of statutory authority granted in Title 5. The notice of termination states this clearly. *See* Attachment 3 ("This action is being taken pursuant to Article II of the United States Constitution, at the direction of the President."); *see also* Attachment 4 (removal SF-50). The Agency disclaims any reliance on Title 5 as a basis for Appellant's removal. Instead, the Agency removed appellant from service at the direction of the President. Similarly, in *Myers* a postmaster was "removed from office by order of the Postmaster General, acting by direction of the President." 272 U.S. at 106. The U.S. Supreme Court upheld that removal and ruled that Congress could not require tenure protections that would prohibit the President from directing

the removal of an officer who had been appointed by the President, by and with the advice and consent of the Senate. *Id.* at 106, 176-77.[2]

Because Appellant was removed at the direction of the President pursuant to Article II, rather than Title 5 of the United States Code, the Board has no jurisdiction over this case. "The Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation." 5 C.F.R. § 1201.3. There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II. Appellant's citation to 5 U.S.C. Chapter 75 is inapposite, because that statute governs whether "an *agency* may take an action" to remove an employee. 5 U.S.C. § 7513 (emphasis added). Similarly, her citation to 5 U.S.C. § 3393 and 5 U.S.C. § 3592 is unavailing as neither statute applies to a Presidentially-directed removal action like the one at issue in this case.

Finally, Appellant's allegation that her Fifth Amendment property and liberty interests were violated, and that this action was *ultra vires*, raise constitutional law questions. *See Initial Appeal* at 2. Just as with the absence of jurisdiction over a Presidentially-directed removal action, it is well established that the Board has not been given jurisdiction through any law, rule or regulation over such constitutional law claims. *Smith v. Dept. of Defense*, 106 M.S.P.R. 228 (Jun. 22, 2007) (holding that for the Board to have jurisdiction over claimed constitutional violations the appellant must first establish that the Board has been authorized by law, rule or regulation to review his termination).

---

[2] *But see*, *United States v. Perkins*, 116 U.S. 483, 484-85 (1886) (ruling that "[w]e have no doubt that when congress, by law, vests the appointment of inferior officers in the heads of departments, it may limit and restrict the power of removal as it deems best for the public interest").

### B. Unitary Executive Theory Precludes Review of Appellant's Removal

As noted, under the Constitution, "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; *id.* at §3). "The President's power to remove is essential to the performance of his Article II responsibilities and control over the Executive Branch." *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enterprise Fund*, 561 U.S. at 514.

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 203. The first exception, which is not relevant here, allows Congress to "give for-cause removal protections to a multimember body of experts." *Id.* at 216 (citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)). The second exception enables Congress to "provide tenure protections to certain *inferior* officers with narrowly defined duties." *Seila Law*, 591 U.S. at 204 (emphasis in original) (citing *United States v. Perkins*, 116 U.S. 483 (1886) and *Morrison v. Olson*, 487 U.S. 654 (1988)). These two exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power." *Seila Law*, 591 U.S. at 216.

The CSRA is a Congressional grant of authority to Executive agencies to remove employees, and Congress may set the terms that agencies must follow in exercising that statutory authority. But the President's Article II authority to direct the removal of an employee is a different matter, and the President's authority should be unrestricted.[3] *See Feds for Medical*

---

[3] Lower court opinions have occasionally addressed the topic but, so far as the Agency can discern, no court has analyzed the issue in depth. *Compare Secs. & Exchange Comm'n v. Musk*, No. 3:23-MC-80253-JSC, 2024 WL 2875096, at *8 (N.D. Cal. May 14, 2024) (legislation providing removal protections did not conflict with Article II

*Freedom v. Biden*, 63 F.4th 366, 392 (5th Cir. 2023) (Ho, J., concurring) ("In an appropriate case, we should consider whether laws that limit the President's power to remove Executive Branch employees are consistent with the vesting of executive power exclusively in the President."), *vacated on other grounds*, 144 S. Ct. 480 (2023) (mem.).

The question of whether the civil service protections for employees, as distinguished from Constitutional officers, represent a third exception "to the President's unrestricted removal power," *Seila Law*, 591 U.S. at 203, has not been addressed directly by the Supreme Court. Although civil servants exercise less authority than inferior officers, they also enjoy layers of protection that go well beyond the limits of the two-layer protections that have been upheld in cases involving statutory tenure protections for inferior Constitutional officers. The CSRA establishes a multi-layer process where a removal decision first must be proposed by a proposing official, then can be rejected by a deciding official, by an MSPB Administrative Law Judge, the full Merit Systems Protection Board, and—depending on the grounds for challenge—the EEOC's Office of Federal Operations. Each decision-maker in this process has their own civil service protections that limit Presidential control. In short, if statutory tenure protections under the CSRA inhibit the President's authority to supervise the executive branch, the President may find himself without any feasible recourse. That is plainly inconsistent with the Supreme Court's direction that the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 202 (quoting U.S. CONST. art. II, § 1; id. at §3).

---

when applied to a "mere employee"), *with*, *Moyer v. Brownwell*, 137 F.Supp. 594 (E.D. Pa. 1956) (in case involving revenue agent, stating that "it has been consistently held that the President has virtually unlimited power of removal of employees, such as plaintiff, under [Article II]"). The agency is unaware of any Supreme Court opinions addressing the question of whether Congress can restrict the President's removal power of an employee who is not a Constitutional, whether Principal or inferior, officer.

9 | P a g e

Given this uncertainty as to how the Supreme Court might rule, the Board should not go beyond *Seila Law*'s two recognized "exceptions to the President's unrestricted removal power." *Id.* As neither one of these exceptions applies to mere employees, rather than Constitutional officers, Appellant's CSRA challenge must be dismissed.

Respectfully submitted,

*Michelle L. Perry*

Michelle L. Perry
Senior Attorney-Advisor
Office of the General Counsel
U.S. Department of Homeland Security
Washington, DC 20528
Telephone: (202) 282-9563
Michelle.perry@hq.dhs.gov

Ashley Darbo, Trial Attorney
Department of Homeland Security
Federal Emergency Management Agency
Office of Chief Counsel
500 C Street, S.W., 7SW
Washington, D.C.  20472-3179
T:	202-212-4962
M:	202-286-5875
ashley.darbo@fema.dhs.gov