UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| MICHAEL M. GORDON, PATRICIA A. HARTMAN, and JOSEPH W. TIRRELL,<br><br>   *Plaintiffs*,<br><br>          *v.*<br><br>EXECUTIVE OFFICE OF THE PRESIDENT; PAMELA J. BONDI, in her official capacity as Attorney General; DEPARTMENT OF JUSTICE; and UNITED STATES OF AMERICA,<br><br>   *Defendants*. | No. 1:25-cv-02409-JMC |

**DEFENDANTS' REPLY IN SUPPORT OF
RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF JURISDICTION**

**INTRODUCTION**

Binding precedent requires Plaintiffs to seek the relief they desire exclusively before the MSPB. Determined to sue in federal court, but without caselaw to lean on, they urge the Court to chart a new path for itself at each step of the *Thunder Basin* analysis. At the first step, they argue that the Court should ignore binding precedent altogether because those cases "would not have been the same if the [higher courts] had been aware that a central element of the [CSRA's] scheme … was no longer in place." Br. at 16. At the second step, they urge the Court to inquire not, as it must, whether Plaintiffs' claims "are of the type Congress intended to be reviewed within [the CSRA's] statutory structure," *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994), but rather whether the *defenses* it anticipates the Government will raise are those appropriate for MSPB review.

The Court should not entertain those substantial deviations from settled law. As the Supreme Court and D.C. Circuit have explained many times over, the CSRA channels claims challenging removal from federal employment to the MSPB and the Federal Circuit, thereby bringing uniformity and order in place of the "patchwork" and "wasteful" system of review that had preceded the statute. *United States v. Fausto*, 484 U.S. 439, 444–45 (1988). To that end, the MSPB continues to serve precisely the role Congress intended for it, and the Federal Circuit remains available to provide fulsome judicial review to any party dissatisfied with the outcome of the MSPB's administrative review. For those reasons, judicial review is not available in federal district court, and the Court should dismiss Plaintiffs' Complaint, in its entirety, for lack of jurisdiction.

# ARGUMENT

**I.     THE FIRST STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION OF JURISDICTION**

Plaintiffs do not dispute that the jurisdictional inquiry in this case requires evaluating whether "congressional intent to strip [d]istrict [c]ourts of their ordinary jurisdiction to resolve federal questions is 'fairly discernible in the [CSRA's] statutory scheme.'" Br. at 3 (quoting *Thunder Basin*, 510 U.S. at 207). The Supreme Court has already answered that question. "[T]he CSRA's elaborate framework … indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (quotation cleaned). "Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11–12.

So Plaintiffs urge this Court to flout the Supreme Court. They admit as much—but insist that the Court may do so because *Elgin* and its progeny "either preceded … radical and unprecedented changes" at the MSPB "or wholly failed to consider them." Br. at 16. But as the Supreme Court has *repeatedly* emphasized, "it is [the Supreme] Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *United States v. Hatter*, 532 U.S. 557, 567 (2001) (same); *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (same). And this is true even if the relevant precedent suffers from every kind of infirmity Plaintiffs purport to have identified in *Fausto*, *Elgin*, and their progeny. In *State Oil*, for instance, a lower court characterized an on-point Supreme Court case as one beset with "infirmities" and "increasingly wobbly, moth-eaten foundations," but abided by it nonetheless; the Supreme Court approvingly observed that the lower court "was correct in applying that [case] despite disagreement" with it,

because only the Supreme Court could do away with precedent binding the lower courts. 522 U.S. at 20. In *Mallory v. Norfolk Southern Railway Co.*, by contrast, the Supreme Court chided the court below for failing to "follow the case which directly controls … even if the lower court thinks the precedent is in tension with some other line of decisions." 600 U.S. 122, 137 (2023) (quotation cleaned). And in yet another case, the Court explained: "[i]f a precedent of th[e] [Supreme] Court had direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

That enormity of precedent dismantles Plaintiffs' argument that jurisdiction obtains here because in their view, *Elgin* and *Fausto* "would not have been the same if the [Supreme] Court had been aware that a central element of the [CSRA's] scheme of review … was no longer in place." Br. at 16. The teaching of *State Oil*, *Mallory*, and *Rodriguez* is that a *holding* of the Supreme Court is binding on lower courts until the Supreme Court says otherwise, even if the *reasons* underpinning that holding wither away (which is not the case here, as discussed in more detail below). And with respect to these proceedings in district court, the same goes for those repeated and emphatic D.C. Circuit "opinions … mak[ing] clear that the CSRA's remedial regime is exclusive, and may not be supplemented by the recognition of additional rights to review having their sources outside the CSRA." *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 559 (D.C. Cir. 2023) (collecting cases) (quotation cleaned).

But even if the first step of the *Thunder Basin* analysis were an open question—and again, it is not—Plaintiffs' application of that analysis is fundamentally flawed. They start in the right place: "'Whether a statute is intended to preclude initial judicial review is determined from the

3

statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review.'" Br. at 4 (quoting *Thunder Basin*, 510 U.S. at 207) (quotation cleaned). But from there, Plaintiffs mistakenly seek to add a new element to the mix: evaluating whether Congress's vision is being executed to Plaintiffs' satisfaction in practice. Because, in their view, "an independent MSPB no longer exists," Plaintiffs argue that "there is no longer a discernable congressional intent to channel Plaintiffs' claims to the agency." *Id.* at 8. That makes no logical sense: it conflates what Congress *intended* with whether Congress' intent is being *sufficiently honored*. As Plaintiffs' own recitation of the standard reflects, the *Thunder Basin* analysis depends only on the former, not the latter. The existence of congressional intent—in other words, what Congress wanted when it passed the CSRA—does not depend in the slightest on how the MSPB operates decades after the CSRA's passage.

Still, the bulk of Plaintiffs' arguments have to do with whether, in their view, the MSPB—an agency housed within the Executive Branch—is sufficiently "independent" from the very head of that branch (namely, the President). That argument can only succeed in securing jurisdiction here if its critical underlying premise is true: that if the MSPB were *not* sufficiently insulated from a democratically elected, politically accountable President, the CSRA's exclusive scheme should be snuffed out altogether. But the Supreme Court has flatly rejected that scorched-earth approach to the aftermath of changes to removal protections for officials within a broader statutory scheme. Take *Free Enterprise Fund v. Public Company Accounting Oversight Board*, for instance. 561 U.S. 477 (2010). There, the petitioners persuaded the Supreme Court that multiple levels of for-cause removal protections for members of the PCAOB was "incompatible with the Constitution's separation of powers." *Id.* at 498. But they urged the Court to go even further, arguing that the PCAOB's "freedom from presidential oversight and control" rendered the entire body, and all of

4

the authority it exercised, "in violation of the Constitution." *Id.* at 508. The Court refused to throw the baby out with the bathwater. "[W]hen confronting a constitutional flaw in a statute," the Court explained, "we try to limit the solution to the problem" in the statute "while leaving the remainder intact." *Id.* at 508. And because the statute's provisions were "not incapable of functioning independently," undoing the PCAOB's removal protections did not require scrapping the agency altogether. *Id.* at 509 (quotation cleaned). There was no reason to believe, the Court concluded, "that Congress, faced with the limitations imposed by the Constitution, would have preferred no [PCAOB] at all to a [PCAOB] whose members are removable at will." *Ibid.*

Just so here. The Supreme Court has explained that prior to the CSRA, aggrieved federal employees needed to navigate an "outdated patchwork of statutes and rules" that produced "wide variations in the kinds of decisions issued on the same or similar matters" and a "wasteful and irrational" system of judicial review. *Fausto*, 484 U.S. at 444–45 (quotation cleaned). "Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. And "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" reflects Congress's desire to channel such claims to the MSPB. *Elgin*, 567 U.S. at 11–12. That scheme, and the historical reality that gave rise to it, puts to bed any notion that "Congress … would have preferred no [MSPB] at all to a[n] [MSPB] whose members are removable at will." *Cf. Free Enterprise Fund*, 561 U.S. at 509. To the contrary, the MSPB continues to play a critical role in Congress's plan for the "sound and efficient administration" of federal personnel claims, *Fausto*, 484 U.S. at 445, and nothing about the President's assertion—rightly or wrongly—of his constitutional removal

5

power calls into question any one of those statutory features that the Supreme Court has held preclude district-court jurisdiction under the *Thunder Basin* framework. The same logic likewise extends to the President's assertion of authority to "'provide authoritative interpretations of law for the executive branch.'" Br. at 11 (quoting Exec. Order No. 14215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10448 (2025)).

In a tacit acknowledgment of the MSPB's continued viability, *Plaintiffs themselves* have each appealed their removal to the MSPB and have asked it for the very same relief they seek here. *See* Compl. ¶ 48 n.4. In other words, they make no effort to challenge the legitimacy of the MSPB or of any relief they may one day obtain from the proceedings they have initiated in that forum. For good reason: if the MSPB really were an illegitimate forum as applied to Plaintiffs, it would necessarily be illegitimate as to *all* ongoing proceedings in that forum, resulting in thousands of federal-employee suits flooding the federal district courts—despite Congress' dedication of a specific administrative entity to adjudicate those claims. So to avoid making an argument of such breathtaking consequence, Plaintiffs are cabined to a more conservative position: that the President's assertion of his constitutional authority opens a second, *parallel* avenue to relief in district court without necessarily depriving the MSPB of its legitimacy. But again, that makes little sense given Congress's efforts, in creating the MSPB, to do away with the "wasteful and irrational" system of judicial review that had preceded it. *Fausto*, 484 U.S. at 445.

Finally, Plaintiffs argue that "[r]etention of jurisdiction is commanded" by an alternative to the *Thunder Basin* framework altogether: "traditional futility doctrine," which they describe as an "exception to exhaustion requirements" that applies when "'adjudicators … are powerless to grant the relief requested.'" Br. at 15 (quoting *Carr v. Saul*, 593 U.S. 83, 93 (2021)). That argument fails twice over. For starters, the MSPB was created specifically to exercise the power

to grant the relief requested in this case, *cf. Elgin*, 567 U.S. at 6 ("MSPB is authorized to order relief … including reinstatement, backpay, and attorney's fees" (citing 5 U.S.C. §§ 1204(a)(2), 7701(g))), and Plaintiffs cite no examples in which the MSPB denied relief because of "the President's Article II authority" "to terminate [an employee] without cause or due process," Br. at 15. In fact, in the most recent MSPB decision that Plaintiffs cite, an administrative judge *did* grant the aggrieved former federal employee relief while refusing to consider the "Article II authority" argument that Plaintiffs cite as the linchpin of futility here. *See id.* at 22 (citing *Jaroch v. DOJ*, No. DA-0752-25-0328-I-1, 2025 WL 2476809 (MSPB Aug. 22, 2025)[1]).

But more to the point, Plaintiffs' futility argument fails because this is not an exhaustion case. In its opening brief, the Government did explain that in the context of mandamus jurisdiction, no court could grant relief to a plaintiff who had not first "exhausted all other avenues of relief." ECF #17-1 at 17 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). But even if Plaintiffs here had exhausted their administrative remedies, that still would not trigger district-court jurisdiction for *any* of their asserted theories of relief, because again, the CSRA's "statutory review scheme is exclusive." *Elgin*, 567 U.S. at 13. As the D.C. Circuit has repeatedly put it, "'what you get under the CSRA is what you get,'" "even when that scheme provides no judicial relief." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009) (quoting *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.)); *see also Grosdidier v. v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("the CSRA is the exclusive avenue for suit even if the plaintiff cannot prevail in a claim under the CSRA"). If Plaintiffs do not prevail under the CSRA's review scheme, they cannot obtain relief at all.[2]

---

[1] The Government has appealed this decision to the full Board.
[2] By footnote, Plaintiffs add one more counter-factual argument: that if the *en banc* D.C. Circuit or Supreme Court reverse the D.C. Circuit's panel opinion upholding the President's

7

**II.   THE SECOND STEP OF THE *THUNDER BASIN* ANALYSIS EVINCES PRECLUSION OF JURISDICTION**

The second step of the *Thunder Basin* inquiry likewise requires redirecting this case to the MSPB. That step asks whether Plaintiffs' claims "are of the type Congress intended to be reviewed within [the CSRA's] statutory structure." *Thunder Basin*, 510 U.S. at 212. Again, the Supreme Court has decided that question. "The CSRA makes MSPB jurisdiction over an appeal dependent *only on the nature of the employee and the employment action at issue.*" *Elgin*, 567 U.S. at 18 (emphasis added). Plaintiffs concede that they are covered by the CSRA, *see* Compl. ¶ 52, and "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme," *Elgin*, 567 U.S. at 22. That should end the inquiry.

Plaintiffs resist this straightforward conclusion. And they do so by quietly—but fundamentally—altering the governing standard. Consider *Thunder Basin*'s articulation of the test: "whether petitioner's claims are of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 212. (The petitioner in that case was the plaintiff.) Then *Elgin*'s articulation of the argument: "Petitioners raise … additional factors in arguing that *their claims*

---

removal of Cathy Harris from the Board, "this case would be the precise mirror image of" *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023). Br. at 9–10 n.3. With respect to the *en banc* D.C. Circuit, that ship has now sailed. *Harris v. Bessent*, No. 25-5037, 2026 WL 88114 (D.C. Cir. Jan. 9, 2026) (denying petition for rehearing *en banc*). But in any event, Plaintiffs' analogy to *Axon* is incorrect. There, respondents in administrative enforcement actions sued in district court to enjoin the administrative proceedings that certain agencies had initiated against them, arguing that those proceedings were unlawful because the agencies were constituted in a constitutionally problematic manner. 598 U.S. at 182. The Supreme Court held that such claims are not channeled to exclusive administrative review because the claim was not about the outcome of the enforcement action, but about "subjection to an illegitimate proceeding, led by an illegitimate decisionmaker," *even if* the respondents ultimately prevailed in the enforcement actions brought against them. *Id.* at 191. That is nothing like this case, where Plaintiffs have affirmatively sought relief from the MSPB and have not challenged the constitutional legitimacy of its operations.

are not the type that Congress intended to be reviewed within the CSRA scheme." 567 U.S. at 15 (emphasis added). (The petitioners, again, were the plaintiffs.) And now the D.C. Circuit's articulation of the holding in *Federal Law Enforcement Officers Association*: "The Association's claims are also of the type Congress intended for CSRA review." 62 F.4th at 560. (The Association was the plaintiff.) Examples abound, all reflecting a subtle, but critical, point: that the second *Thunder Basin* factor evaluates whether a "claim," brought by a plaintiff, is of the type Congress intended to be reviewed within the relevant statutory scheme. *See also Free Enterprise Fund*, 561 U.S. at 487 (evaluating claim, brought in district court by subject of PCAOB investigation, seeking declaratory judgment that PCAOB is unconstitutional).

Now consider Plaintiffs' articulation of the test: "'whether [the] claims are of the type Congress intended to be reviewed within this statutory structure.'" Br. at 18 (quoting *Thunder Basin*, 510 U.S. at 212) (alteration in original). That alteration takes the identity of the relevant party—*i.e.*, the petitioner-plaintiff—out of the picture. And then the punchline: that there can be no preclusion of jurisdiction "where *Defendants* make the … *claim* that the CSRA is unconstitutional as applied to the President." *Ibid.* (emphasis added).

That completely reinvents the second step of the *Thunder Basin* analysis. Plaintiffs' argument leans repeatedly—and exclusively—on those litigating positions Plaintiffs allege the Government to have taken in MSPB proceedings: "Defendants argue that the CSRA is unconstitutional as applied," *id.* at 18; "that is, in fact, Defendants' position," *id.* at 19; "[a] claim that the CSRA is unconstitutional is not the type of claim Congress intended to be reviewed by the MSPB," *ibid.*; "the government's argument in these cases is … that the MSPB itself would violate the Constitution if it applied the CSRA" in this context, *id.* at 19–20; "[t]he [G]overnment argues that the MSPB is without authority under the Constitution" to side with Plaintiffs, *id.* at 20; the

9

Government's position "is a novel, structural, constitutional challenge to Congress'[s] authority," *ibid.* But none of this matters. Though litigants often colloquially describe their opponents' arguments as "claims," that is not what that term means in a legal sense. As the cases quoted above reflect—and in light of the identity, each time, of the source of the "claims" at issue—the term refers to those *claims for relief* brought forth *by a plaintiff* in the complaint. *Cf.* Fed. R. Civ. P. 8(a)–(b) (describing requirements for stating "a claim for relief" as opposed to "defenses"); Fed. R. Civ. P. 12(b)(6) (permitting motions for dismissal for "failure to state a claim upon which relief can be granted"). And here, Plaintiffs have not argued that the CSRA is unconstitutional, or brought any "novel, structural, constitutional challenge to Congress'[s] authority." Br. at 18–19. Instead, they have brought straightforward claims challenging their removal from the federal civil service—that is, claims "precisely the type … regularly adjudicated by the MSPB," *Elgin*, 567 U.S. at 22, and precisely the type addressed by *Elgin*. Under the *Thunder Basin* framework, that puts their claims out of the reach of district-court jurisdiction.

For the same reasons, Plaintiffs are wrong to analogize this case to *Free Enterprise Fund*. Br. at 20–22. In that case, the subject of an investigation by the PCAOB brought suit in district court seeking a declaratory judgment that the PCAOB was unconstitutional, and an injunction preventing that agency from exercising its powers. 561 U.S. at 487. The Supreme Court held that the district court had jurisdiction over that claim for relief because the plaintiffs could not otherwise "meaningfully pursue" their claims. *Id.* at 490. But Plaintiffs here do not "charge that an agency is wielding authority unconstitutionally," Br. at 21 (quoting *Axon*, 598 U.S. at 189); they *can* meaningfully pursue their claims in the MSPB, and have, in fact, done so, Compl. ¶ 48 n.4. It makes no sense to retort, as Plaintiffs do, that they may nevertheless sue in district court because of their concern that *the Government* will be prevented from meaningfully pursuing its

10

*defenses* in the MSPB.  Br. at 22.  After all, if Plaintiffs are correct that the MSPB cannot consider the Government's defenses, the result—as reflected in the very example they cite from just a few months ago—would be an MSPB decision *in Plaintiffs' favor*.  *See ibid.* (quoting *Jaroch*, 2025 WL 2476809, in which MSPB administrative judge reversed appellant's removal after concluding it could not entertain agency's argument that "Article II of the Constitution precludes the application of the removal protections afforded under the" CSRA).  Needless to say, the specter of *success* is hardly a basis upon which Plaintiffs can complain about being compelled to proceed before the MSPB.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint, in its entirety, for lack of jurisdiction.[3]

---

[3] The Court should deny Plaintiffs' last-gasp request for jurisdictional discovery.  Br. at 23 n.10.  As binding precedent has repeatedly made clear, no set of facts would permit a district court to exercise jurisdiction over Plaintiffs' claims, which are "the vehicle by which they seek to reverse the removal decisions" and therefore fall in the wheelhouse of the MSPB's exclusive jurisdiction under the CSRA.  *Elgin*, 567 U.S. at 22.  Further, it is unclear what, if any, discovery could be had as to "the scope of the government's claim that when the President or a Department head invokes the President's Article II authority, the CSRA cannot constitutionally be applied."  Br. at 23 n.10.  Such legal questions cannot be answered by freewheeling discovery requests.

11

| | |
|---|---|
| JANUARY 20, 2026 | *Respectfully submitted,* |
| | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division |
| | CHRISTOPHER HALL<br>DC Bar No. 468827<br>Assistant Branch Director<br>Federal Programs Branch |
| | <u>*/s/ Cesar Azrak*</u><br>CESAR AZRAK<br>DC Bar No. 90025888<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L Street, NW<br>Washington, DC 20005<br>Telephone: (202) 538-3491<br>cesar.e.azrak@usdoj.gov |
| | *Counsel for Defendants* |

12