# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MAURENE COMEY,                                                         :
                                                                       :
                                        Plaintiff,                     :
                                                                       :               25-CV-7625 (JMF)
                 -v-                                                    :
                                                                       :               OPINION AND ORDER
UNITED STATES DEPARTMENT OF JUSTICE et al.,   :
                                                                       :
                                        Defendants.                    :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Maurene Comey was, by all accounts, an exemplary Assistant United States Attorney.  In

her nearly ten years working at the United States Attorney's Office for the Southern District of

New York, she was assigned some of the country's highest profile cases, and she consistently

received the highest accolades from supervisors and peers alike.  But Comey is also the daughter

of James B. Comey, the former Director of the Federal Bureau of Investigation and long-time

target of President Donald J. Trump's ire.  And in the spring of 2025, prominent supporters of

President Trump began to call for her ouster based on that connection.  On July 16, 2025, only

one day after the U.S. Attorney's Office assigned Comey yet another high-profile matter to

handle, President Trump's supporters got their wish.  Comey was notified by email from

Department of Justice ("DOJ") officials in Washington, D.C., that her employment was

terminated, effective immediately.  She was given one and only one reason for her removal:

Article II of the U.S. Constitution, which "vest[s]" the "executive Power" in the President.

In this case, brought against DOJ and others, Comey challenges her termination on the

ground that she was improperly removed "solely or substantially because her father is former

FBI Director James B. Comey, or because of her perceived political affiliation and beliefs, or

both." ECF No. 1 ("Compl."), ¶ 5. For present purposes, Defendants do not dispute Comey's factual allegations. Instead, they argue — by way of a motion to dismiss for lack of jurisdiction — that she may not bring her claims in federal district court. She must, they insist, bring her claims before the Merit Systems Protection Board ("MSPB"), an Executive Branch agency created by the Civil Service Reform Act of 1978 ("CSRA"), and, thereafter, by appeal to the United States Court Appeals for the Federal Circuit. At first glance, that argument is not without force. The Supreme Court has long held that Congress can divest federal district courts of jurisdiction they otherwise would have by channeling cases into a scheme of administrative and judicial review. And the Supreme Court has specifically held that, through the CSRA, Congress did so for many, if not most, categories of disputes between federal employers and employees.

On closer examination, however, Defendants' argument falls short. Although the Supreme Court has described the CSRA's administrative review scheme as comprehensive, it has also made clear that not all challenges to personnel actions fall within its scope. To determine whether a particular challenge does, a court must ask whether it is "fairly discernible" from the "text, structure and purpose" of the CSRA that Congress intended the statutory review scheme to preclude district court jurisdiction. If the answer to that question is yes, then the court must decide whether the claims at issue are of the type Congress intended to be reviewed within this statutory scheme. Applying that well-established test here, the Court concludes that Comey's case does not fall within the purview of the CSRA's scheme because she was fired pursuant to Article II of the Constitution, not pursuant to the CSRA itself. Defendants' sole reliance on the Constitution — rather than the removal provisions of the CSRA — places Comey's case outside the universe of cases that Congress intended the MSPB to resolve. Accordingly, and for the reasons discussed below, the Court has jurisdiction to hear her case.

**THE STATUTORY SCHEME**

The CSRA, enacted in 1978 and codified in scattered sections of Title 5 of the U.S. Code, "comprehensively overhauled the civil service system," creating a "new framework for evaluating adverse personnel actions" against federal employees. *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985); *accord Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). Through the CSRA, Congress sought to harmonize the "haphazard arrangements for administrative and judicial review of personnel action" and to reform an "outdated patchwork of statutes and rules built up over almost a century." *United States v. Fausto*, 484 U.S. 439, 444 (1988); *Frazier v. Merit Sys. Prot. Bd.*, 672 F.2d 150, 154 (D.C. Cir. 1982) (noting that President Carter proposed the CSRA with the stated objectives of strengthening the protection of legitimate employee rights, providing incentives and opportunities for managers to improve the efficiency of the federal government, and reducing the red tape and delay in the present system). The CSRA thus set out "in great detail the protections and remedies applicable to [adverse employment actions], including the availability of administrative and judicial review." *Fausto*, 484 U.S. at 443.

Most relevant here, Subchapter II of Chapter 75 of the CSRA provides protections with respect to, and "governs review of[,] major adverse actions taken against employees 'for such cause as will promote the efficiency of the service.'" *Elgin*, 567 U.S. at 5 (quoting 5 U.S.C. §§ 7503(a), 7513(a)). More specifically, Subchapter II applies to five "covered" actions:

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay; and

(5) a furlough of 30 days or less.

5 U.S.C. § 7512.[1]  Employees subject to Subchapter II include those in the "excepted service" who meet certain requirements regarding probationary periods and years of service, *id.* § 7511(a)(1), a category that the parties here agree included Comey, *see* ECF No. 32 ("Gov't Mem."), at 3 n.1; ECF No. 38 ("Comey Mem."), at 23.

Section 7513 of the CSRA, titled "Cause and procedure," is especially relevant here.  First, Subsection (a) provides that "an agency may take an action covered by this subchapter," including removal, "against an employee *only* for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a) (emphasis added).  Second, Subsection (b) provides that "[a]n employee against whom an action is proposed is entitled to" certain procedural protections, including at least thirty days' advance written notice (subject to certain exceptions not relevant here), "a reasonable time" to respond orally and in writing, representation, and "a written decision and the specific reasons therefor at the earliest practicable date."  *Id.* § 7513(b).  Finally, Subsection (d) provides that "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board."  *Id.* § 7513(d).

Chapter 77 of the CSRA then governs appeals.  First and foremost, it "confers on federal employees a broad right to challenge personnel decisions before the [MSPB]."  *Frazier*, 672 F.2d at 155.  Specifically, Section 7701(a) provides that "[a]n employee . . . may submit an appeal to

---

[1]     By its terms, Subchapter II does *not* apply to national-security removals (which are governed by Subchapter IV); reductions-in-force (which are governed by Chapter 35); certain actions taken against supervisors on probation (which are governed by Chapter 33); performance-based actions (which are governed by Chapter 43); disciplinary actions brought through the Office of Special Counsel (which are governed by Chapter 12); actions involving administrative law judges (which are governed by Subchapter III of Chapter 75); and suitability actions taken by the Office of Personnel Management ("OPM").  *See* 5 U.S.C. § 7512.  Nor does it apply to adverse actions taken against members of the "Senior Executive Service" or "SES," defined as employees who "occupy high-level positions in the Executive Branch but are not required to be appointed by the President and confirmed by the Senate."  *Elgin*, 567 U.S. at 6 n.1 (citing 5 U.S.C. § 3131(2)).  SES employees are covered instead by Subchapter V of Chapter 75.

the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation," 5 U.S.C. § 7701(a), a universe that, pursuant to Section 7513(d), includes "an action . . . taken under" Section 7513 against an "employee" covered by Chapter II of the CSRA, *id.* § 7513(d); *see also id.* § 1204.[2]  The MSPB is authorized by statute "to order relief to prevailing employees, including reinstatement, backpay, and attorney's fees." *Elgin*, 567 U.S. at 6 (citing 5 U.S.C. §§ 1204(a)(2), 7701(g)).  If an employee is dissatisfied with a decision of the MSPB, she is then entitled to judicial review — but (subject to exceptions not relevant here) *only* in the United States Court of Appeals for the Federal Circuit.  *See* 5 U.S.C. §§ 7703(a)(1), (b)(1)(A); *see also* 28 U.S.C. § 1295(a)(9); *Elgin*, 567 U.S. at 6; *Downey v. Runyon*, 160 F.3d 139, 143 (2d Cir. 1998).

## RELEVANT FACTS

The following facts are, unless otherwise noted, taken from the Complaint and assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  The Court may and does also take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).  This generally includes "documents in the public record, which includes records and reports of administrative bodies" such as the MSPB.  *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015) (cleaned up).

Comey served as an Assistant United States Attorney for the Southern District of New York from November 16, 2015, until July 16, 2025.  Compl. ¶¶ 1, 11.  Over the course of her tenure as an AUSA, Comey prosecuted "crime and corruption, without fear or favor," securing

---

[2]     That universe also includes certain reductions in grade or removals under Chapter 43 of the CSRA, which, as noted, governs performance-based actions.  *See* 5 U.S.C. § 4303(e).  As Defendants tacitly concede, Comey was not entitled to seek MSPB review under Chapter 43.

hundreds of criminal convictions, including in homicide, racketeering, and public corruption cases. *Id.* ¶¶ 1-2, 26-28. An "exemplary, dedicated and highly decorated" public servant, she was assigned to work on any number of high-profile cases, including those involving Jeffrey Epstein, Ghislaine Maxwell, Sean "Diddy" Combs, Dr. Robert Hadden, and Senator Robert Menendez. *Id.* ¶¶ 2, 26; *see also id.* ¶¶ 28-44. Comey's supervisors and peers consistently lauded her work, describing her as a "brilliant lawyer and a gifted supervisor," "the lawyer the office turns to when legal excellence is a must," "an outstanding AUSA in every respect" with "judgment, work product, and courtroom advocacy [that are] among the finest in the country," and a "tireless[]" worker who "represents the Department of Justice and the court of law in a professional manner." *Id.* ¶¶ 2, 25. She earned promotions and countless accolades, including "outstanding" ratings in annual reviews as recently as April 25, 2025. *Id.* ¶¶ 2, 3, 25, 55.

Comey's star in the U.S. Attorney's Office never faded, as evidenced by the fact that, on July 15, 2025, she was asked to assume a lead role in a major public corruption case. *Id.* ¶¶ 3, 45-46. And yet, one day later, on July 16, 2025, she was abruptly fired. *Id.* ¶ 3. Not by the Interim U.S. Attorney for the Southern District of New York, Jay Clayton. Nor in person. Instead, at 4:57 p.m., Comey received an e-mail from DOJ's Justice Management Division, Director of Human Resources, which attached a memorandum from Francey Hakes, Director of the Executive Office for United States Attorneys, titled "Memorandum for Maurene R. Comey." *Id.* ¶ 47. The one-page memorandum stated in full:

> Subject: Notice of Removal from Federal Service.
>
> This memorandum provides official notice that you are removed from your position of Assistant United States Attorney, AD-0905-29, Criminal Division, Southern District of New York, Offices of the United States Attorneys, and from the federal service, effective immediately.

Pursuant to Article II of the United States Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated, and you are removed from federal service effective immediately.

If applicable, you may have a right to file an appeal of this removal with the U.S. Merits Systems Protection Board (MSPB) within 30 days of the effective date of this removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

ECF No. 1-1 ("Termination Memorandum"); *see also* ECF No. 1-2 ("Notification of Personnel Action Form") (listing as the sole "Legal Authority" for Comey's removal "ART II CONSTITUTION.").  The Government made no claim that Comey's termination was for cause or for the efficiency of the service.  Compl. ¶¶ 3-4, 48.  Nor did it provide her with any advance notice of her termination or an opportunity to contest it.  *Id.* ¶¶ 4, 48.  When Comey asked Interim U.S. Attorney Clayton the basis for her termination shortly after receiving Hakes's memorandum, he responded, in sum and substance: "All I can say is it came from Washington.  I can't tell you anything else."  *Id.* ¶ 50.  The White House claimed that Comey's termination "was a decision that was made by the Department of Justice."  *Id.* ¶ 51.  "No other explanation was ever provided to Ms. Comey regarding the reasons for her termination."  *Id.* ¶ 50.

Comey alleges that the real reason she was fired is "because her father is former FBI Director James B. Comey, or because of her perceived political affiliation and beliefs, or both." *Id.* ¶ 5; *accord id.* ¶ 57.  In support of that allegation, she points to, among other things, President Trump's well-known and longstanding vendetta against James Comey, whom he had fired as FBI Director in 2017.  *See id.* ¶¶ 57-62; *see id.* ¶ 57 (alleging that, as of the filing of the Complaint in this case, President Trump had "posted (or reposted) approximately 259 times about Mr. Comey, including describing him repeatedly as the 'worst' FBI Director in history").[3]

---

[3]     On September 25, 2025, after this case was filed, a grand jury in the Eastern District of Virginia indicted James Comey on one count of making false statements to Congress and one count of obstructing a congressional proceeding. *See United States v. James B. Comey, Jr.*, No.

In May 2025, amidst rising tensions between President Trump and James Comey, supporters of President Trump "called for the termination" of Maurene Comey and her husband, who also worked in the Department of Justice at the time. *Id.* ¶¶ 7, 63-66.  Most notably, Laura Loomer — a "social media influencer" with over 1.7 million followers on X and "political influence in the Trump Administration, including influence over the termination of federal employees," *id.* ¶¶ 7, 63-64 — pressed repeatedly for "James Comey's liberal daughter and her Democrat husband" to be "FIRED from the DOJ immediately," *id.* ¶ 64; *see also id.* ¶¶ 65-66.  The day Comey was fired, Loomer lauded the decision and claimed credit.  *Id.* ¶¶ 8, 67.

"Out of an abundance of caution," and in order to comply with the CSRA's statute of limitations, *see* 5 C.F.R § 1201.22(b)(1), Comey filed an appeal of her termination with the MSPB on August 14, 2025.  Comey Mem. 10; Compl. ¶ 76 n.42; *see* ECF No. 33-1; *Comey v. DOJ*, No. PH-0752-25-1814-I-1 (M.S.P.B. 2025).  Just over one month later, on September 15, 2025, Comey filed this case, challenging her termination on the ground that it violated, among other things, the U.S. Constitution, the Administrative Procedure Act, and the CSRA.  Compl. ¶¶ 87-118.  She seeks a declaration that Defendants' actions were unlawful, an order requiring Defendants "to immediately reinstate [her]," an "award of backpay and other monetary and administrative relief as appropriate," and an award of costs and reasonable attorney's fees.  Compl. Prayer for Relief.  (In a letter, Comey later advised that she has taken a job in the private sector and that, "while [she] continues to seek all forms of relief identified in her complaint, she

---

25-CR-272 (MSN), ECF No. 1 (E.D. Va. Sept. 25, 2025).  On November 24, 2025, the United States District Court for the Eastern District of Virginia dismissed the indictment on the ground that the person who had appeared in the grand jury on behalf of the Government was not lawfully exercising the authority of the U.S. Attorney for the Eastern District of Virginia.  *See United States v. James B. Comey, Jr.*, 810 F. Supp. 3d 768, 771 (E.D. Va. 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025).

seeks reinstatement and back pay only through December 20, 2025." ECF No. 49.) Comey has consistently asserted that her MSPB filings are without prejudice to her claims here, reasserting at every turn that she is entitled to seek relief in district court. *See, e.g.*, ECF No. 33-6, at 6.[4]

## DISCUSSION

Title 28, United States Code, Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Were that the only statute relevant here, this Court would indisputably have jurisdiction over Comey's case because it plainly "aris[es] under" the Constitution, and federal courts have "a 'virtually unflagging obligation' to exercise the jurisdiction given them." *McCarthy v. Madigan,* 503 U.S. 140, 146 (1992) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). Congress's power to establish the inferior federal courts, however, includes the power to define, and thus limit, their jurisdiction. *See* U.S. CONST. art. III, § 1; *Lockerty v. Phillips*, 319 U.S. 182, 187 (1943). And pursuant to that power, Congress may require that cases "proceed exclusively through a statutory review scheme." *Elgin*, 567 U.S. at 10. The Supreme Court has held repeatedly that "the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023) (citing *Elgin*, 567 U.S. at 10-15, and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-12 (1994)).

---

[4]    On November 26, 2026, the Chief Administrative Judge issued an Order to Show Cause why Comey's MSPB appeal should not be dismissed without prejudice pending resolution of two other cases before the MSPB that raised the question of whether and to what extent the MSPB may rule on constitutional issues. *See* ECF No. 33-4, at 1-2. The other two cases were decided on March 20, 2026, *see* ECF No. 53-1, at 7-11, but the record is silent with respect to whether or when Comey's MSPB appeal was reinstated.

In enacting the CSRA, Congress indisputably created a "statutory review scheme" that divests district courts of jurisdiction over many, perhaps most, claims brought by federal employees. *See Elgin*, 567 U.S. at 10-14; *Fausto*, 484 U.S. at 444-45. The question here is whether Comey's claims fall within the scope of that scheme or not. The Supreme Court's cases provide that, to answer that question, the Court must engage in a two-step inquiry, commonly known as the *Thunder Basin* test after the Supreme Court case by that name. *See Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 281 (2d Cir. 2016). First, the Court must determine "whether it is 'fairly discernible' from the . . . 'text, structure and purpose'" that Congress intended the CSRA's statutory review scheme "to preclude district court jurisdiction." *Elgin*, 567 U.S. at 9-10. If it is, then the Court must determine whether the claims at issue "are of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin*, 510 U.S. at 212. Three factors are relevant to that assessment: whether (1) "a finding of preclusion could foreclose all meaningful judicial review," (2) the claims are "wholly collateral to a statute's review provisions," and (3) the claims are "outside the agency's expertise." *Id.* at 212-13 (cleaned up).

## A. *Thunder Basin* Step One

The Court begins with the first step of the inquiry.[5] Citing *Elgin*, Defendants argue that "[t]he Supreme Court has confirmed that district courts lack jurisdiction over adverse employment actions that fall within the purview of the CSRA." ECF No. 48 ("Gov't Reply"), at 3 (citing *Elgin*, 567 U.S. at 11). True enough, but that merely begs the question of whether

---

[5] Comey argues that the Court need not even engage in the two-step inquiry because her claims are independent of the CSRA. *See* Comey Mem. 19-20. But whether her claims are subject to the CSRA is precisely the question that the first step of the inquiry asks. *See Thunder Basin*, 510 U.S. at 207. That conclusion is supported by the fact that the cases on which Comey relies all involved consideration of the first step. *See, e.g.*, *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 914-16 (8th Cir. 2025) (assessing whether the relevant statutes show that the statutory review scheme is preclusive).

Comey's case "falls within" the purview of the statute. *See, e.g.*, *Union Pac. R.R. Co. v. U.S. R.R. Ret. Bd.*, 162 F.4th 908, 914 (8th Cir. 2016) ("[T]he threshold question is whether the *agency order at issue* falls within the relevant statutory review scheme." (emphasis added)). And significantly, as comprehensive a scheme as the CSRA is, the Supreme Court itself has made clear that "[n]ot *all* personnel actions are covered" by it. *Bush v. Lucas*, 462 U.S. 367, 385 n.28 (1983) (emphasis added). As the Fifth Circuit has observed: "[I]f Congress wanted to make the CSRA process applicable to every claim an employee could ever bring against a federal employer, it could've said so. That would've made the CSRA less complicated by obviating all the personnel-action limitations in Chapter 23 and Chapter 75 — a road Congress plainly did not take." *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 374 (5th Cir. 2024), *vacated as moot*, 144 S. Ct. 480 (2023); *see, e.g.*, *Bosco v. United States*, 931 F.2d 879, 883 (Fed. Cir. 1991) ("The Supreme Court did not rule that the CSRA provided the only means of judicial review of *any* actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically *covered* by the CSRA . . . ." (emphases in original)).

Subchapter II of Chapter 75 of the CSRA, which "governs review of major adverse actions taken against employees 'for such cause as will promote the efficiency of the service,'" *Elgin*, 567 U.S. at 5 (quoting 5 U.S.C. §§ 7503(a), 7513(a)), is most relevant here. Significantly, however, Section 7513(d) does not channel all actions against all employees within the scope of that Subchapter into the MSPB. Instead, that jurisdiction-channeling provision is limited by its terms to "action[s] . . . taken under" Section 7513 alone. And Section 7513(a), in turn, provides that "an agency may take an action covered by this subchapter against an employee *only* for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (emphasis added). It

11

follows that Section 7513(d) channels into the MSPB — and, by extension, the Federal Circuit — *only* a subset of covered actions, namely those that were taken "for such cause as will promote the efficiency of the service." *See* 5 U.S.C. § 7701(a) ("An employee. . . may submit an appeal to the Merit Systems Protection Board from any action which is *appealable to the Board under any law, rule, or regulation*." (emphasis added)).[6] Had Congress intended otherwise, and meant for the MSPB's jurisdiction to extend to all actions covered by Subchapter II, regardless of the statutory authority invoked, it need only have repeated Section 7513(a)'s phrase "covered by this subchapter" in Section 7513(d).  When, as here, "Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional." *United States v. Peterson*, 394 F.3d 98, 107 (2d Cir. 2005).

That all but compels the conclusion that Comey's case belongs in federal court — not in the MSPB.  Yes, Comey was an employee "covered" by Subchapter II of Chapter 75 of the CSRA.  *See* 5 U.S.C. § 7511(a)(1)(C).  And yes, she was removed, which is an action also "covered" by Subchapter II.  *See id.* § 7512.  But she was not removed "for such cause as will promote the efficiency of the service," the category of removals that Subchapter II regulates.  *Id.* § 7513(a).[7]  Instead, Defendants cited one and only one reason for her removal: Article II of the

---

[6]     Troublingly, Defendants elide this point by asserting that "Section 7513 of the CSRA gives jurisdiction to the MSPB to hear appeals of any adverse action 'covered by this subchapter.'"  ECF No. 48 ("Gov't Reply"), at 3 (citing 5 U.S.C. § 7513(a), (d)).  Although Defendants cite both Subsections (a) and (d) for this proposition, the quoted language appears *only* in Subsection (a).

[7]     In arguing that Subchapter II casts a wider net, Defendants assert that, "in exhaustively cataloguing the CSRA's preclusive structure, *Elgin* and *Fausto* do not even mention the 'for cause' removal restrictions."  Gov't Reply 4.  But that is flat wrong.  In point of fact, the Supreme Court wrote in *Fausto* that "Chapter 75 of the Act governs adverse action taken against employees *for the 'efficiency of the service,'*" 484 U.S. at 446 (emphasis added), and observed in *Elgin* that "Subchapter II of Chapter 75 governs review of major adverse actions taken against

Constitution.  *See* Notification of Personnel Action Form; *see also* Termination Memorandum.[8]

It follows that her removal was not "an action . . . taken under" Section 7513 itself, which means

that her removal was not within the purview of Section 7513(d), the provision that defines the

metes and bounds of the MSPB's jurisdiction under Subchapter II of Chapter 75.  In other words,

Comey challenges agency action taken separate and apart from the CSRA, not pursuant to it, and

thus is not subject to administrative channeling.  She does not, as in *Elgin* (upon which

Defendants rely heavily), "seek to carve out an exception to CSRA exclusivity for" federal

employees.  *Elgin*, 567 U.S. at 12.  Instead, Defendants' sole reliance on the Constitution —

rather than the CSRA's removal provisions — places Comey's case outside the universe of cases

that Congress intended the MSPB to resolve.[9]

In this way, Comey's case is different from every case cited by Defendants in which the

Supreme Court concluded at the first step of the *Thunder Basin* test that Congress intended a

statutory review scheme to preclude district court jurisdiction.  In each of these cases, the

challenged agency action was taken pursuant to the very statute whose review scheme was

---

employees '*for such cause as will promote the efficiency of the service*,'" 567 U.S. at 5
(emphasis added) (quoting 5 U.S.C. §§ 7503(a), 7513(a)).

[8]     While the Notification of Personnel Action form cited only "Article II" as the basis for
Comey's termination, the termination memorandum from Hakes referred to both "Article II of
the United States Constitution *and* the laws of the United States."  Termination Memorandum
(emphasis added).  But Defendants do not argue that "the laws of the United States" was a
reference to the CSRA or contend that Comey was fired "for such cause as will promote the
efficiency of the service."  Thus, Defendants have forfeited any such argument for present
purposes.

[9]     Whether Defendants could properly rely on the Constitution to fire Comey is the merits
question at the heart of this case — and thus a question for another day.  For now, it suffices to
say that the President has long been understood to have constitutional powers separate and apart
from any powers granted by statute.  *See, e.g.*, *Dalton v. Specter*, 511 U.S. 462, 473 (1994);
*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952).  And regardless, that is the
sole basis of the power that Defendants invoked in firing Comey.

13

invoked.  *See Thunder Basin*, 510 U.S. at 205-06 (challenge to agency interpretation of 30 U.S.C. § 813(f) of the Federal Mine Safety and Health Amendments Act); *Axon*, 589 U.S. at 182-83 (challenge to a Federal Trade Commission administrative enforcement proceeding pursuant to the Securities Exchange Act); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) (challenge to an agency action taken pursuant to the Sarbanes-Oxley Act); *Elgin*, 567 U.S at 22 (challenge to a termination pursuant to Chapter 75 of the CSRA).  By contrast, when the challenged conduct does not derive from the statute whose review scheme is invoked, as here, the rationale for channeling evaporates.  *See, e.g.*, *Feds for Med. Freedom*, 63 F.4th at 373 ("[T]he text and structure of the CSRA creates a decades-old, well-established, bright-line rule: Federal employees must bring challenges to CSRA-covered personnel actions through the CSRA, but they *remain free to bring other, non-CSRA challenges under the district courts' general § 1331 jurisdiction*." (emphasis added)).

Whether or how that conclusion accords with the purposes of the CSRA, which were to promote implementation of "merit system principles" in the federal workforce, 5 U.S.C. § 2301, and to replace a "patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration," *Fausto*, 484 U.S. at 445, is harder to say.  On the one hand, allowing employees such as Comey to sue in federal court rather than pursuing relief through the MSPB could frustrate, rather than advance, "the development . . . of a unitary and consistent Executive Branch position on matters involving personnel action," add rather than "avoid[] an 'unnecessary layer of judicial review' in lower federal courts," and result in "'[in]consistent judicial decisions.'"  *Id.* at 449 (quoting S. Rep. No. 95–969, at 52).  On the other hand, requiring employees such as Comey to seek relief through the Executive Branch

14

in the first instance when, as here, the Constitution, not the statute, is invoked as the basis for the adverse action, and the employee's challenge thus raises questions about Executive power and the separation of powers, makes little sense. *See, e.g.*, *Carr v. Saul*, 593 U.S. 83, 92 (2021) ("[A]gency adjudications are generally ill suited to address structural constitutional challenges.").

Regardless, where, as here, the text and structure of a statute compel the conclusion that Congress did not intend to divest the federal courts of jurisdiction, purpose provides no basis to stray from that conclusion. *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (observing that a court's role "begins with the language of the [relevant] statute[s]" and, when "the statutory language provides a clear answer, it ends there as well." (internal quotation marks omitted)). Indeed, if the purpose of developing a unitary and consistent Executive Branch position on personnel matters were sufficient to override text and structure, *all* challenges to personnel actions would be channeled to the MSPB. But as noted, that is not — and never has been — the law. *See Bush*, 462 U.S. at 385 n.28; *see also, e.g.*, *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 71 (1st Cir. 2025) (observing that there is no reason to "attribute to Congress the intention in enacting the CSRA that . . . Congress intended to bar every challenge to an unlawful effort by the Executive" regarding employee termination). Moreover, there is an apparent explanation for any gap between the Court's conclusion here and congressional purpose: As far as the Court can tell, when enacting the CSRA, Congress did not consider "Article II removals" of career civil servants because they were not a thing. The parties do not cite, and the Court has not found, any instance between the 1883 enactment of the Pendleton Civil Service Reform Act and the 1978 enactment of the CSRA in which the Executive Branch

15

invoked standalone "Article II" authority to remove a career civil servant.[10]  Instead, the general understanding appears to have been that Congress could "limit and restrict the power of [such] removals as it deems best for the public interest."  *United States v. Perkins*, 116 U.S. 483, 485 (1886); *see also, e.g.*, *Bartenwerfer v. Buckley*, 598 U.S. 69, 80 (2023) ("This Court generally assumes that, when Congress enacts statutes, it is aware of this Court's relevant precedents").  Had Congress anticipated the rise of such removals, it may well have thought twice before committing review of them to the MSPB, an Executive Branch agency with questionable competence to adjudicate a dispute with substantial constitutional stakes.

The fact that Congress may not have even considered the possibility of Article II removals when enacting the CSRA also distinguishes this case from *Fausto*, upon which Defendants rely.  *See* Gov't Reply 5.  In that case, the Supreme Court held that the CSRA's statutory scheme "display[ed] a clear congressional intent to *deny*" MSPB review to a category of employees that was expressly referenced elsewhere in the statute.  *Fausto*, 484 U.S. at 447 (emphasis added).  "It seems to us evident," the Court explained, "that the absence of provision

---

[10]  Notably, the OPM manual, which provides an exhaustive list of legal authorities that agencies may invoke in removing employees, makes no mention of Article II.  *See* OFF. OF PERS. MGMT., CHAPTER 31: SEPARATIONS BY OTHER THAN RETIREMENT tbl. 31-B, https://www.opm. gov/policy-data-oversight/data-analysis-documentation/personnel-documentation/processing-personnel-actions/gppa31.pdf [https://perma.cc/BUP2- GZFX]; *see also, e.g.*, Aditya Bamzai & Peter M. Shane, *The Removal Question: A Timeline and Summary of the Legal Arguments*, 78 STAN. L. REV. ONLINE 64, 74 (2025) (tracing the history of the removal power); Katherine Shaw, *Partisanship Creep*, 118 NW. U. L. REV. 1563, 1565 (2024) ("It was once well settled and uncontroversial — reflected and grounded in legislative enactments, Executive Branch practice, judicial doctrine, and the broader constitutional culture — that the Constitution imposed limits on partisanship in public employment and by public officials."); Catherine L. Fisk, *Democracy and a Nonpartisan Civil Service*, 67 ARIZ. L. REV. 629, 631 (2025) ("Ever since John Adams replaced George Washington, incoming administrations have generally not replaced most government workers, even when the presidency switched parties.  Since the Pendleton Act of 1883, statutes have embodied the principle that federal service below the Cabinet and high-level offices does not terminate with each election.").

16

for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review . . . ." *Id.* at 448-49.  Here, as even Defendants appear to acknowledge (in arguing that Comey can seek review in the MSPB), there is no such evidence of congressional intent to deny review.  *See* Gov't Reply 4.  The CSRA references (indeed, subject to certain protections, authorizes) removals of federal employees for various specified reasons — pursuant to a "reduction in force," 5 U.S.C. § 3502, "in the interests of national security," *id.* § 7532(b), for "unacceptable performance," *id.* § 4303(a), and for "such cause as will promote the efficiency of the service," *id.* § 7513(a) — but makes no mention of "Article II removals."  Here, therefore, the omission from the statutory scheme "*can . . . be explained on the theory that Congress simply did not have them in mind.*"  *Fausto*, 484 U.S. at 448 (emphasis added).

Perhaps recognizing the holes in their argument under Chapter 75 of the CSRA, Defendants try a different tack in their reply memorandum of law, asserting in passing that Comey's allegations "amount to a claim that her removal was a prohibited personnel practice under Chapter 23 of the CSRA."  Gov't Reply 5.  As relevant here, Chapter 23 prohibits an agency from engaging in certain "prohibited personnel practices," including discrimination against an employee "on the basis of . . . political affiliation."  5 U.S.C. § 2302(a), (b)(1)(E); *see Fausto*, 484 U.S. at 446.  And it provides for limited agency and judicial review.  Specifically, the statute gives an employee in Comey's position "the right to file charges of 'prohibited personnel practices' with the Office of Special Counsel of the MSPB, whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency." *Fausto*, 484 U.S. at 446 (citing 5 U.S.C. § 1206); *see* 5 U.S.C. § 1214(a), (b)(2)(B); *id.* § 2302.

17

If the agency does not "act to correct the prohibited personnel practice" in "a reasonable period of time," the Office of Special Counsel "may" petition the MSPB for "corrective action."  *Id.* § 1214(b)(2)(C); *see also id.* § 1214(b)(3)-(4).  Thereafter, an adversely affected employee may seek review of the MSPB's "final order or decision" in the United States Court of Appeals for the Federal Circuit.  *Id.* § 1214(c)(1); *id.* § 7703(b)(1)(A).

But there are reasons to doubt that Chapter 23 covers Comey's claims here — not the least being the fact that Defendants make the argument for the first time in their reply and, even then, only in passing.[11]  "Chapter 23 is the bottom of the CSRA's pyramid."  *Feds for Med. Freedom*, 63 F.4th at 370.  In general, "[i]t governs the least severe employment actions the Government can take and provides concomitantly fewer procedural protections and remedies for federal employees aggrieved by those employment actions."  *Id.*; *see also Payne v. Biden*, 602 F. Supp. 3d 147, 155 (D.D.C. 2022) ("Chapter 23 governs less severe personnel practices against executive-branch employees."), *aff'd,* 62 F.4th 598 (D.C. Cir. 2023), *vacated as moot*, 144 S. Ct. 480 (2023).  Admittedly, Chapter 23 defines "personnel action" to include "an action under chapter 75," 5 U.S.C. § 2302(a)(2)(iii), which, as noted, includes removals, *see id.* § 7512.  But Defendants cite, and the Court has found, no case in which an employee obtained judicial review of a removal pursuant to the review mechanisms in Chapter 23.[12]  Instead, the text and structure

---

[11]    Under most circumstances, that would constitute waiver or forfeiture of an argument. *See, e.g.*, *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 n.4 (2d Cir. 1998); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).  But not here, as the issue involves jurisdiction. *See, e.g.*, *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable.").

[12]    In support of their Chapter 23 argument, Defendants cite only *Gober v. Collins*, No. CV 25-714 (RC), 2025 WL 1360434 (D.D.C. May 8, 2025), in which the court denied the plaintiffs' request for a preliminary injunction requiring the defendant agencies to "to 'clarify that performance had nothing to do with [the plaintiffs'] terminations . . .' and to make them 'whole.'"  *Id.* at *3; *see* Gov't Reply 6.  The court did so in part on the ground that it lacked jurisdiction because the plaintiffs had a remedy available to them under the CSRA — namely,

of the statute — including but not limited to the "relatively modest" nature of "Chapter 23's review mechanisms," *Feds for Med. Freedom*, 63 F.4th at 371 — strongly suggest that Congress intended for Chapter 75 (and Chapter 43, though it is not relevant here) to be the primary, if not exclusive, path for aggrieved employees covered by 5 U.S.C. § 7511(a) to challenge removals under the CSRA, *see, e.g.*, *Refaei v. United States*, 129 Fed. Cl. 1, 19 (2016) ("[T]here are [only] two provisions of the CSRA that cover removal of Federal Employees, Subchapter II of Chapter 75 and Chapter 43."), *aff'd*, 725 F. App'x 945 (Fed. Cir. 2018); *see also Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 308 (4th Cir. 2025) ("Chapter 75 of the CSRA governs the most severe adverse employment actions taken or proposed against covered federal employees."). As discussed, that path is not open to Comey because Congress did not include Article II removals within the scope of Chapter 75.

Notably, the Court's conclusion that Comey may seek relief in federal district court accords with the conclusion of what appears to be the only other court to confront claims like hers to date. *See Comans v. Exec. Off. of the President*, 25-cv-1237 (MSN) (WEF), 2026 WL 1132803 (E.D. Va. Apr. 15, 2026). Mary Comans was the Chief Financial Officer of the Federal Emergency Management Agency and was a career member of the Senior Executive Service or SES. On February 11, 2025, she received a termination memorandum, which, much like Comey's, "stated merely that she was being removed 'pursuant to Article II of the United States Constitution.'" *Id.* at *1. Thereafter, she sued in the United States District Court for the Eastern

---

review by Office of Special Counsel under Chapter 23. *Gober*, 2025 WL 1360434, at *6. But unlike Comey, the plaintiffs in *Gober* were probationary employees, who (akin to the employees at issue in *Fausto*) were expressly excluded from "the MSPB's Chapter 75 jurisdiction." *Id.* at *5 (citing 5 C.F.R. § 1201.3(a)(1) and 5 U.S.C. §§ 7501, 7511(a)(1)). In any event, the *Gober* court gave no consideration to whether, as discussed below, Chapter 23 of the CSRA provides a meaningful opportunity for review of a removal not covered by Chapter 75, as the second step of the *Thunder Basin* test requires.

District of Virginia, and the defendants moved to dismiss for lack of jurisdiction. In an opinion filed earlier this month, Judge Michael S. Nachmanoff denied the defendants' motion in relevant part. In reaching that conclusion, he parsed the relevant language of Chapter 75 of the CSRA, which, because Comans was a member of the SES, was Subchapter V. *See id.* at *3. As this Court did above, Judge Nachmanoff observed that the agency review provision (much like Section 7513(d)) limited the MSPB's relevant jurisdiction to "action[s] [] taken under" Section 7543, 5 U.S.C. § 7543(d), which is a subset of the universe covered by the Subchapter as a whole and does not include removals pursuant to Article II alone. *Id.* at *3-4. "As Defendants have repeatedly confirmed," he concluded, "Plaintiff's termination is premised only upon the President's asserted Article II powers, not the CSRA. Taking this fundamental fact together with the plain text of the CSRA, it is clear that Plaintiff's [] claims are not channeled away from this Court. In fact, jurisdiction in federal district court, and not the MSPB, is mandatory." *Id.* at *2 (citations omitted).[13]

Perhaps even more notably, and certainly more ironically, the Court's conclusion here accords with the Executive Branch's own views — at least until just recently. Before she filed suit in federal court, Comans, like Comey, filed an appeal with the MSPB. The Government responded by arguing that the MSPB had no jurisdiction because Comans's notice of termination indicated that her removal "involve[d] the President's exercise of his inherent Article II authority, rather than the exercise of statutory authority granted in Title 5." ECF No. 39-1, at 5;

---

[13]    Judge Nachmanoff reached that conclusion without applying the *Thunder Basin* test. *See Comans*, 2026 WL 1132803, at *3 (describing the parties' "focus" on the question of "whether implied preclusion of jurisdiction is evident under *Thunder Basin*" as "misplaced"). As discussed above, *see supra* note 5, the Court's view is that *Thunder Basin* does provide the relevant framework for analysis. In either case, the plain language of the statute leads to the same conclusion.

*see also id.* ("The Agency disclaims any reliance on Title 5 as a basis for Appellant's removal. Instead, the Agency removed appellant from service at the direction of the President."). "Although Congress has granted agencies authority to remove employees pursuant to Chapter 75," the Government argued, "that statutory authority is separate and distinct from the President's inherent removal authority under Article II." *Id.* at 4-5. Thus, the Government continued, "the Board has no jurisdiction over this case. The Board's appellate jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation. There is no law, rule, or regulation that confers jurisdiction on the Board to review removal actions taken pursuant to Article II." *Id.* at 6 (cleaned up); *see also Comans v. Dep't of Homeland Sec.*, Docket #DC-0752-25-1783-I-1 (M.S.P.B.). Thereafter, Comey and Comans filed suit in federal district court. Only days later, the Executive Branch changed its tune and argued that their only recourse was through the MSPB. *See* Gov't Reply 2 n.1.[14] But nothing in the Government's about-face undoes the logic and correctness of its initial position. Put differently, while the Government's litigation position may have changed, the law did not.

---

[14]     Some might infer a relationship between the Government's about-face and developments at the MSPB and Office of Special Counsel. First, the Administration has been able to remove members of the MSPB and the Special Counsel appointed by President Joseph R. Biden and replace them with choices of its own. *See* Compl. ¶ 83; *Harris v. Bessent*, 160 F.4th 1235, 1256 (D.C. Cir. 2025), *pet. for rehearing en banc denied*, No. 25-5037, consolidated with 25-5055, 2026 WL 88114 (D.C. Cir. Jan. 9, 2026); *Dellinger v. Bessent*, No. 25-5052, 2025 WL 935211, at *1 (D.C. Cir. Mar. 27, 2025). Second, President Trump issued an Executive Order decreeing that all Executive Branch employees, including members of the MSPB and the Special Counsel, must follow his or the Attorney General's opinions on "matter[s] of law." Exec. Order 14215 (Feb. 18, 2025) § 7; *see id.* §§ 1, 2(b), 5 (extending this mandate to "so-called" independent agencies). But the Court need not and does not address here the import of those developments — even though Comey relies on them to argue, in the alternative, that MSPB review should not be required of her because it would be futile. *See* Comey Mem. 35-40; *see also Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 305 (4th Cir. 2025) (remanding for factfinding on whether "the text, structure, and purpose of the Civil Service Reform Act has been so undermined that the jurisdiction-stripping scheme no longer controls").

**B.** *Thunder Basin* **Step Two**

In any event, even if it were "fairly discernible from the text, structure and purpose" of the CSRA that Congress intended the statutory review scheme "to preclude district court jurisdiction," *Elgin*, 567 U.S. at 10 (internal quotation marks omitted), that would not be the end of the analysis.  The question would then become whether Comey's claims "are of the type Congress intended to be reviewed within this statutory structure" — the second step of the *Thunder Basin* test.  *Thunder Basin*, 510 U.S. at 212.  As noted, three factors are relevant to that assessment: whether (1) "a finding of preclusion could foreclose all meaningful judicial review," (2) the claims are "wholly collateral to a statute's review provisions," and (3) the claims are "outside the agency's expertise."  *Id.* at 212-13 (cleaned up); *accord Axon*, 598 U.S. at 186.  "When the answer to all three questions is yes, we presume that Congress does not intend to limit jurisdiction.  But the same conclusion might follow if the factors point in different directions." *Axon*, 598 U.S. at 186 (internal quotation marks omitted).  "[T]he ultimate question is how best to understand what Congress has done — whether the statutory review scheme, though exclusive where it applies, reaches the claim in question"; the *Thunder Basin* factors are meant only to "aid in th[at] inquiry."  *Id.*

Here, all three factors favor the exercise of jurisdiction.  First, a finding of preclusion could indeed foreclose "all meaningful judicial review" for Comey.  *Thunder Basin*, 510 U.S. at 212-13.  True, the Supreme Court has recognized "the primacy of the MSPB for administrative resolution of disputes over adverse personnel action," *Fausto*, 484 U.S. at 449, given that the CSRA "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review," *id.* at 443.  And the Supreme Court has held that appeal to the MSPB followed by judicial review in the Federal Circuit

22

satisfies this factor, even when an "employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." *Elgin*, 567 U.S. at 5, 17-20. But as discussed above, the principal paths to the MSPB and, in turn, the Federal Circuit under the CSRA — appeals under Chapters 43 and 75 — are closed to Comey. To the extent that the statute would foreclose her from obtaining judicial review of colorable constitutional claims, "serious constitutional questions . . . would arise." *Elgin*, 567 U.S. at 9 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)); *see id.* (observing that courts demand a "heightened showing" of "clear" congressional "inten[t] to preclude judicial review of constitutional claims" where "a statute . . . purports to 'deny any judicial forum for a colorable constitutional claim'" (quoting *Webster*, 486 U.S. at 603)).[15]

To the extent that, as Defendants argue in reply, *see* Gov't Reply 5-6, Comey has a potential path to federal court under Chapter 23 of the CSRA, it "provides no guarantee of judicial review — much less a meaningful one." *Feds for Med. Freedom*, 63 F.4th at 379. As noted above, because Chapter 23's covered personnel actions are "relatively mild," its "review mechanisms are also relatively modest." *Id.* at 371; *see also id.* at 380 ("This is not particularly surprising, given that Chapter 23 is the bottom of the CSRA's pyramid and warrants the fewest procedural protections for federal employees."). Comey would be required to file a charge with the Office of Special Counsel, which would have "total and unfettered discretion to decide whether to bring the claims before the MSPB." *Id.* at 381; *see Krafsur v. Davenport*, 736 F.3d 1032, 1034 (6th Cir. 2013) ("[I]f the Special Counsel . . . declines to refer the case to the Board, the employee is out of luck. A court may not review the Special Counsel's decisions unless the

---

15      This is another reason that Defendants' reliance on *Fausto* is misplaced: "[T]he employees there brought a statutory, not constitutional, challenge." *Comans*, 2026 WL 1132803, at *5 n.3.

Counsel has declined to investigate a complaint at all." (internal quotation marks omitted)).[16] Indeed, a decision by the Office of Special Counsel not to pursue a claim is unreviewable and bars any substantive review of the claim in the Federal Circuit. *See Heckler v. Chaney*, 470 U.S. 821, 837 (1985) (holding that prosecutorial exercise of discretion is not reviewable). In the unlikely event Comey's claims somehow made it through this gauntlet to the Federal Circuit, the scope of judicial review would be "extremely limited . . . . As then-Judge Scalia explained: 'judicial scrutiny [is] limited, at most, to insuring compliance with the statutory requirement that the [Office of Special Counsel] perform an adequate inquiry.'" *Feds for Med. Freedom*, 63 F.4th at 371 (quoting *Carducci v. Regan*, 714 F.2d 171, 175 (D.C. Cir. 1983)). In short, "the narrowness of Chapter 23's review provisions — and the fact that any review at all turns on the unreviewable discretion of Government officials — puts the lie to the Government's [perfunctory] suggestion that the [Office of Special Counsel] or MSPB could or would give" Comey a path to meaningful judicial review. *Id.* at 380.

The second *Thunder Basin* factor — whether the claims at issue are "wholly collateral to [the] statute's review provisions" — also cuts in Comey's favor. *Thunder Basin*, 510 U.S. at 212. At issue here is whether Article II power can be exercised without regard to a congressional statute — that is, whether the CSRA, and its prescribed enforcement mechanisms, are unconstitutional as applied to Article II removals. A claim of that nature is hardly "commonplace"; instead, "as in *Free Enterprise Fund*," it involves a challenge "to the structure or very existence of" the CSRA. *Axon*, 598 U.S. at 189; *id.* at 192 (explaining that a claim is collateral where it "challeng[es] the [agency's] power to proceed at all, rather than actions taken

---

16    Not for nothing, but the developments discussed above, *see supra* note 14, would seem to suggest that the Office of Special Counsel would likely exercise its "total and unfettered discretion" to reject Comey's challenge to her removal.

in the agency proceedings"); *Abramovitz v. Lake*, 25-CV-887 (RCL), ECF No. 76 ("*Abramovitz* Op."), at 13-14 (D.D.C. Aug. 28, 2025) (holding that the second *Thunder Basin* factor weighed in favor of jurisdiction where, as here, the "defendants' sole merits defense" implicated whether the statute at issue "runs afoul of constitutional separation of powers" because "cases questioning the constitutionality of such statutes are routinely held to be 'collateral'" (citing *Axon*, 598 U.S. at 192)).  Because Comey "is challenging the [government's] power to proceed with [her] termination at all, not the substantive rationale underlying [her] termination, [her] challenge is collateral to the CSRA review scheme." *Abramovitz* Op. 14 (cleaned up).

Finally, as in *Axon*, "the Government here does not pretend that [Comey's] constitutional claims are . . . intertwined with or embedded in matters on which the [MSPB or Office of Special Counsel] are expert." 598 U.S. at 195.  That is because, again, in terminating Comey, Defendants relied only on Article II of the Constitution, not on the CSRA.  Comey's claims, in turn, raise fundamental questions about Executive Branch power under Article II — including whether and how far down the Executive Branch chain the President can delegate his constitutional removal authority — and the constitutional separation of powers.  The MSPB (and Office of Special Counsel) may know "a good deal" about the CSRA specifically and personnel matters generally, but they know "nothing special about the separation of powers." *Id.* at 194; *see Carr*, 593 U.S. at 92 ("[A]gency adjudications are generally ill suited to address structural constitutional challenges"); *see also Thunder Basin*, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies").[17]  By contrast, such matters are the traditional province of Article

---

[17]    In fact, until last month, the MSPB itself had long held the view that it lacked jurisdiction to hear structural constitutional challenges generally and constitutional challenges to the CSRA specifically.  *See Comans*, 2026 WL 1132803, at *5; *see also Davis-Clewis v. Dep't of Veterans*

III courts. *See Marbury v. Madison,* 1 Cranch 137, 177 (1803) (holding that the Constitution is the "fundamental and paramount law of the nation," and "[i]t is emphatically the province and duty of the judicial department to say what the law is").

In sum, "[a]ll three *Thunder Basin* factors thus point in the same direction — toward allowing district court review of" Comey's claims. *Axon*, 598 U.S. at 195. Her claims "cannot receive meaningful judicial review" through the CSRA; "[t]hey are collateral to any decisions" the MSPB (or Office of Special Counsel) could make; and "they fall outside the [agency's] sphere of expertise." *Id.* at 195-96. It "follows" that her claims "are not 'of the type' the statutory review scheme[] reach[es]," *id.* at 196 (quoting *Thunder Basin*, 510 U.S. at 212), and this Court may review them pursuant to its ordinary federal question jurisdiction.

## CONCLUSION

The CSRA indisputably channels many, if not most, challenges to personnel actions brought by federal employees or former federal employees to the MSPB and, thereafter, to the Federal Circuit. But, for the reasons discussed above, the Court concludes that Comey's case does not fall within the purview of the CSRA's scheme because she was fired pursuant to Article II of the Constitution, not pursuant to the CSRA itself. First, reviewing the text, structure, and purposes of the CSRA, the Court does not discern a congressional intent to channel challenges to such "Article II removals" into the statutory review scheme. And in any event, the Court finds

---

*Affs.*, 2024 M.S.P.B. 5, ¶ 9 (M.S.P.B. 2024); *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (M.S.P.B. 1990); *Malone v. Dep't of Just.*, 13 M.S.P.B. 81, 83 (M.S.P.B. 1983). In September 2025, the Office of Legal Counsel challenged that view, 49 Op. O.L.C. __ (Sept. 26, 2025), and on March 20, 2026, the MSPB came around, holding that it does have authority to consider constitutional challenges, *Jackler & Jaroch Consolidation v. Dep't of Just.*, Docket No. CF-0752-26-0069-I-1 (M.S.P.B. Mar. 20, 2026) (ECF No. 53-1). Whether that conclusion is correct or not is a question the Court must answer here, but it underscores the fact that MSPB has no real experience, let alone expertise, in addressing constitutional issues.

that Comey's claims are not of the type Congress intended to be reviewed within that scheme because it would deprive her of meaningful judicial review, her claims are wholly collateral to the CSRA's review provisions, and her claims — which raise fundamental constitutional questions — fall outside of the MSPB's traditional expertise.  Accordingly, the Court has jurisdiction over Comey's case pursuant to the federal question statute, *see* 28 U.S.C. § 1331, and Defendants' motion to dismiss for lack of jurisdiction must be and is DENIED.

Unless and until the Court orders otherwise, Defendants shall answer Comey's claims within **two weeks of the date of this Opinion and Order**.  *See* Fed. R. Civ. P. 12(a)(4)(A).  In addition, the initial pretrial conference, previously adjourned, is hereby reinstated and RESCHEDULED for **May 28, 2026**, at **3:00 p.m.** in **Courtroom 24B** of the **Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY.**  The parties are reminded that, no later than the **Thursday before the conference**, they must submit a joint status letter and proposed Case Management Plan.  *See* ECF No. 20.

The Clerk of Court is directed to terminate ECF No. 31.

SO ORDERED.

Dated: April 28, 2026
      New York, New York

JESSE M. FURMAN
United States District Judge

27