UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL M. GORDON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT *et al.*,<br><br>Defendants. | Civil Action No. 25-02409 (JMC) |

**DEFENDANTS' RESPONSE TO COURT'S AUGUST 18, 2026 MINUTE ORDER REGARDING PLAINTIFFS' NOTICES OF SUPPLEMENTAL AUTHORITY**

Under the Court's August 18, 2026, Minute Order, Defendants respond to Plaintiffs' Notices of Authority, ECF No. 24, 25, and 28, related to other district court decisions—specifically, "addressing the [district] courts' reasoning in those decisions and its relevance to this case," and "address[ing] their understanding of 5 U.S.C. § 7513(a), (b), and (d), as well as 5 U.S.C. § 7543(a), (b), and (d)."

## INTRODUCTION

In November 2025, Defendants moved to dismiss for lack of jurisdiction, because the Civil Service Reform Act of 1978 (CSRA) requires exclusive channeling of Plaintiffs' removal claims to the Merit Systems Protection Board (MSPB or the Board). The MSPB's jurisdiction extends to Plaintiffs—three former Department of Justice (DOJ) employees—notwithstanding the invocation of the President's discretionary Article II power as the basis for their removal. This conclusion is not undermined by the two out-of-circuit district court cases Plaintiffs cited after the completion of briefing on the Motion: (i) *Comans v. Executive Office of the President*, -- F. Supp. 3d. --, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026) ("*Comans I*") (see ECF No. 24)—with further jurisdictional

discussion in a footnote in the subsequent merits opinion, *Comans v. Executive Office of the President*, -- F.Supp.3d -- , 2026 WL 2100037 (E.D. Va. July 21, 2026) ("*Comans II*") (see ECF No. 28) (together, "*Comans"*); and (ii) *Comey v. Department of Justice*, No. 25-cv-7625, 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) (see ECF No. 25). These two cases, which erroneously held that the plaintiffs' claims were not channeled under the CSRA because each was removed under Article II, misread the CSRA and are contrary to Supreme Court and D.C. Circuit precedent.

The CSRA's plain text makes clear that, to invoke the MSPB's jurisdiction, it is enough that an individual meet the relevant definitions of "employee" under Chapter 75, Subchapter II or Subchapter V (as the case may be), and that the adverse action is a "covered action" under those respective subchapters. Contrary to the courts' view in *Comans* and *Comey*, the CSRA does not create a third jurisdictional element—a covered *reason* for the action—that also must be satisfied. The first two points are outcome-determinative, and any *reasons* for the covered action are of no jurisdictional significance, and go to only the merits of the claim, which the MSPB itself evaluates (with judicial review generally in the Federal Circuit). Simply put, executive agencies invoking Article II as the basis for removal of an employee do not control a "jurisdictional off-switch" for MSPB review.[1]

Because each plaintiff here was a statutory covered employee at the time of their removals (Plaintiffs Gordon and Hartman were "employees" under Subchapter II, while Plaintiff Tirell was an "employee" under Subchapter V), challenging a statutorily covered personnel action, these facts alone are conclusive as to both the MSPB's jurisdiction over their claims and preclusion of this

[1] If this is Plaintiffs' position, it would ill-serve their interests. Under the CSRA, the MSPB is authorized to provide relief that would include reinstatement and back pay. *See Zummer v. Sallet*, 37 F.4th 996, 1003-04 (5th Cir. 2022). District courts, by contrast, are limited to specific relief for constitutional claims, and there is no waiver of sovereign immunity that would permit them to award back pay. *See Hubbard v. Administrator, EPA*, 982 F. 2d 531, 532 (D.C. Cir. 1992).

Court's. Supreme Court and D.C. Circuit precedent confirm this. And so do Plaintiffs themselves: each Plaintiff has plead that their removals are "covered" by the CSRA, Compl. ¶¶ 24-25, 34-35, 39-40, ECF No.1, and moreover, each has filed an appeal with the MSPB, where their appeals remain pending. *See id*. at p.14 n.4.

## ANALYSIS

### I. Statutory and Regulatory Framework

Chapter 75 of Title 5 supplies the CSRA's framework for (major) adverse actions against employees—including, as relevant to Plaintiffs here, removal. Subchapter II (5 U.S.C. §§ 7511-7515) applies to certain competitive service or excepted service employees, and Subchapter V (5 U.S.C. §§ 7541-7543) applies to Senior Executive Service (SES) employees. Subchapters II and V are structured similarly and include analogous (and largely identical) provisions. *See Comans I*, 2026 WL 1132803, at *5 n.2. Three analogous sections (as relevant here) compose both subchapters.

*First*, Sections 7511 and 7541 defines terms "[f]or the purpose of this subchapter," including "employee." *See* 5 U.S.C. §§ 7511(a)(1); 7541(1). Here it is undisputed that Mr. Gordon and Ms. Hartman were each "employees" under Section 7511(a)(1), and that Mr. Tirrell (as a member of the SES) was a statutory "employee" under Section 7541.[2]

*Second*, both subchapters proceed by identifying the (employment) "actions covered," which include "removal"—with various exceptions inapplicable here. *See* 5 U.S.C. § 7512 ("This subchapter applies to—(1) a removal . . . ."); *id.* § 7542 ("This subchapter applies to a removal

[2] *See* Compl. ¶¶ 4-5 (Mr. Gordon); *id.* ¶¶ 6-7 (Ms. Hartman). Mr. Tirrell qualifies as an "employee" covered by Subchapter V of the CSRA because his tenure as a member of the SES exceeded one year, *see id.* ¶ 8, or alternatively, because he was covered by Subchapter II "immediately before appointment to the [SES]." *See* 5 U.S.C. § 7541(1)(B). *See* Compl. ¶ 9.

from the civil service. . . . "). Here, where the memorandum of removal for each Plaintiff explains that the removal was "'[p]ursuant to Article II of the United States Constitution,'" Compl., p. 2, it is undisputed that each Plaintiff's removal was a covered action, and that each removal does not implicate any exception.[3]

Without even reaching the third section of Subchapter II or V (addressed *infra*), the above two showings alone establish that Plaintiffs are employees expressly covered by the CSRA, *see* 5 U.S.C. §§ 7511 and 7541, who experienced an employment action expressly covered by the CSRA, *see* 5 U.S.C. §§ 7512, 7542. Plaintiffs have never contested either of those points. Indeed, the Complaint itself refers to "agency action to remove employees covered by the CSRA through termination, *such as in this matter* . . . . ." Compl. ¶ 52 (emphasis added).

Binding precedent forecloses district court jurisdiction upon satisfaction of these two elements. In *Elgin v. Department of Treasury,* the Supreme Court expressly and repeatedly emphasized this point. *See* 567 U.S. 1, 20 (2012) ("When a covered employee appeals a covered adverse action, the CSRA grants the MSPB jurisdiction over the appeal"); *id.* at 21 ("In sum, the CSRA grants the MSPB and the Federal Circuit jurisdiction over petitioners' appeal because the–y are covered employees challenging a covered adverse employment action"); *see also Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 364 (D.D.C. 2020) (The CSRA "generally deprives district

---

[3] Mr. Gordon's and Ms. Hartman's removals implicate neither 5 U.S.C. § 7532 (which applies to adverse actions taken "in the interests of national security"); *id.* § 4303 (which applies to actions based on unacceptable performance); *id.* § 1215 (which applies to disciplinary action taken for committing a prohibited personnel practice, a violation of law, or a violation of an MSPB order); nor 5 U.S.C.§ 7521 (actions against administrative law judges). *See* 5 U.S.C. § 7512 (A), (D), (E). And, Mr. Tirrell's removal from the SES implicates neither 5 U.S.C. § 1215 nor § 7532 (for the same reasons) nor 5 U.S.C. § 3592 (which applies to demotions from a position within the SES to without); nor 5 U.S.C. § 3595 (which applies to removals or demotions pursuant to an agency's "reduction in force of career appointees").

courts of subject-matter jurisdiction over claims within its ambit, that is, claims brought by covered employees challenging covered employment actions.") Simply put, because each Plaintiff was a covered employee who experienced a covered action, the CSRA precludes district court jurisdiction.

The *third*—and final—section of Subchapter II and V, 5 U.S.C. §§ 7513, 7543, addresses a different issue: not covered employees or covered actions, but rather the permissible *reasons* why an agency may take those covered actions against the covered employees or members of the SES. Section 7513 provides that "an agency may take an action covered by this subchapter against an employee only <u>for such cause</u> as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (emphasis added). And for SES members, Section 7543 provides that "an agency may take an action covered by this subchapter against an employee [as defined for this subchapter] only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer or function." *Id.* § 7543(a). Section 7513 and 7543 both then provide that "[a]n employee against whom an action covered by this subchapter is proposed is entitled to" various procedures: 30 days' advance written notice; a reasonable time to respond; representation by an attorney; and a written decision on the proposed action. *Id.* § 7513(b); *id.* § 7543(b). Finally, both sections provide that an employee against whom adverse action is taken "is entitled to appeal" to the MSPB "under [5 U.S.C. §] 7701." *Id.* §§ 7513(d); 7543(d).

Thus, Sections 7513 and 7543 cap off a clear tripartite structure within Subchapters II and V of the CSRA. The first is a description of covered employees, 5 U.S.C. §§ 7511, 7541; the second, a description of covered actions, 5 U.S.C. §§ 7512, 7542; and the third, a description of the permissible reasons for those covered actions, along with concomitant procedures, and entitlement to administrative appeal, 5 U.S.C. §§ 7513, 7543. As the Complaint and the motion-

to-dismiss briefing demonstrate, the claims in this case reflect, at bottom, Plaintiffs' views that they are covered employees who experienced a covered adverse action (removal), but for what they contend is a non-covered reason (the President's discretion under Article II). Again, for jurisdictional purposes, the first two points are outcome-determinative: claims by covered employees regarding covered actions belong exclusively in the MSPB. Any *reasons* for the covered action are of no jurisdictional significance, and go to only the merits of the claim, which are evaluated by the MSPB itself. As the Supreme Court put it in *Elgin*, "the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue." 567 U.S. at 18. And an action is "under" § 7413(d) and § 7543(d) if it is *subject to* the standards and procedures of § 7513 and 7543, respectively. Thus, as a statutory matter, removals of employees like Plaintiffs are subject to § 7513 and § 7543, regardless of whether the relevant agency complied with the section or the reason for not doing so because MSPB jurisdiction depends on only "the nature of the employee and the employment action at issue." *Elgin*, 567 U.S. at 18.

This conclusion is reinforced by the appellate jurisdiction conferred upon the MSPB by statute. The CSRA provides that "[t]he [MSPB] shall . . . adjudicate . . . all matters within the jurisdiction of the Board under this title, or any other law, rule, or regulation." 5 U.S.C. § 1204(a)(1). Then, in Chapter 75, the CSRA expressly provides for appeal rights "under [§] 7701[.]" *See id*. §§ 7513(d), 7543(d). And Section 7701, in turn, recites the same language from the jurisdictional grant provided at § 1204(a)(1): a covered employee "may submit an appeal," it explains, "from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a).

And the jurisdictional "regulation[s]" referenced at both § 1204(a)(1) and § 7701(a), and incorporated by reference at Sections 7513(d) and 7543(d), likewise confirm that the MSPB's jurisdiction depends only on the nature of the employee and adverse action at issue, not the underlying reasons or authority for that action. Specifically, 5 C.F.R. § 1201.3(a) (Appellate Jurisdiction) applies MSPB jurisdiction to "removal[s]" without applicable limitation. *See id.* §§ 1201.3(a)(1), (a)(8).[4] Likewise, the "Coverage" regulations at 5 C.F.R. §§ 752.401(a) and 752.601(a) confirm this. Section 752.401(a) applies to "removals" without applicable limitation, and Section 752.601(a) imports the scope of the term "removals" from § 7542, which likewise imposes no limitations on that term applicable to this case. Similarly, the regulations covering appeal rights, 5 C.F.R. § 752.405 and 5 C.F.R. § 752.605 import from § 7513(d) and § 7543(d), respectively.[5] This confirms, MSPB jurisdiction "does not turn on the . . . nature of an employee's claim, but rather on the type of the employee and the challenged employment action." *Elgin*, 567 U.S. at 15. *See also,* 5 C.F.R. § 1201.3(a) ("The Board's jurisdiction does not depend solely on the label or nature of the action or decision taken . . . .").

## II. The *Comans* and *Comey* Decisions

The district courts in *Comans* and *Comey* denied (in relevant part) the defendants' motions to dismiss for lack of jurisdiction because the articulated basis for the removal was Article II (rather than a specified cause). In both cases, the defendants argued that the CSRA channeled the plaintiffs' removal claims to the MSPB. As explained below, the shared premise of both *Comans*

---

[4] Section 1201.3(a)(8) was redesignated from Section 1201.3(a)(10). *See* Appellate Jurisdiction Update II, 91 Fed. Reg. 51997-01 (Aug. 12, 2026).

[5] *See* 5 C.F.R.§ 752.405(a) ("Under the provisions of 5 U.S.C. 7513(d), an employee against whom an action is taken under this subpart is entitled to appeal to the [MSPB]") and 5 C.F.R. § 752.605(a) ("Under 5 U.S.C. 7543(d), a career appointee against whom an action is taken under this subpart is entitled to appeal to the Merit Systems Protection Board.").

and *Comey* is the courts' view that, in both sections 7513 and 7543, subsection (a) does not simply describe the limits on when an agency may lawfully remove an employee; instead, it functions as the condition on which the MSPB's jurisdiction is premised.

In *Comans I*, the Court observed that the plaintiff, who was a member of the SES, was an "employee" for purposes of the CSRA, and that Subchapter V "applies to a removal from the civil service . . . with certain exceptions inapplicable here." 2026 WL 1132803, at *3 (quotation omitted). But despite the observation that the statute covered both removals and the plaintiff herself, the court found that the statute's exclusive review scheme did not cover *her removal*. *Id*. at *4. The court reasoned that, because the right of appeal to the MSPB existed only if the challenged removal satisfied the terms of the section containing the right—namely, section 7543(a) (*i.e.,* "for misconduct, neglect of duty, malfeasance, . . ."—the right to appeal to the MSPB did not exist if the challenged removal invoked the President's removal authority under Article II of the U.S. Constitution. *Id*. at *3-4. The court determined that this conclusion must follow from the different textual references to "covered by this subchapter" in 5 U.S.C. § 7543(a) and "under this section" in 5 U.S.C. § 7543(d). *See Comans I*, 2026 WL 1132803, at *3-4.

In *Comey*, the court arrived at the same conclusion as to the parallel provisions in Subchapter II. 2026 WL 1142679, at *1, *12. The court looked to section 7513(a), which permits an agency to take a covered action "only for such cause as will promote the efficiency of the service," alongside section 7513(d), which provides for appeal to the MSPB to "[a]n employee against whom an action is taken under this section." *Id*. at *2, *5-6. The court concluded that Comey's removal was not "an action . . . taken under" Section 7513(a) itself. *Id*. at *6 (quoting 5 U.S.C. § 7513).

The two courts split (at least at first) in their analytical paths. In *Comans I,* although both sides espoused the *Thunder Basin* framework for analyzing the CSRA, the court determined that this approach was "misplaced." *See* 2026 WL 1132803, at *3. Instead, it viewed the "threshold question" as whether the agency action "falls within the relevant statutory review scheme at all," *id*. at *3 (quotation omitted), and concluded the Article II termination did not. *Id*. at *4.[6] By contrast, *Comey* applied *Thunder Basin*. 2026 WL 1142679, at *4-11. Under step one, the court determined it was "fairly discernible" from the CSRA's "text, structure and purpose" that Congress did not intend the statutory scheme to preclude district court jurisdiction, concluding that only the category of actions described in § 7513(a) (for cause "as will promote the efficiency of the service") were channeled to the MSPB. *Id*. at *5-6 (quotations omitted). Even under the second step of *Thunder Basin*, the court concluded, "Comey's claims are not of the type Congress intended to be reviewed . . . ." *Id*. at *12.

*Comey* included an important caveat while applying the first step: It "is harder to say," the court there explained, "[w]hether or how [this] conclusion accords with the purposes of the CSRA, which were to promote implementation of 'merit system principles' in the federal workforce, and to replace a 'patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration.'" *Id*. at *7 (first quoting 5 U.S.C. § 2301; and then quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). "[A]llowing employees such as Comey to sue in federal court rather than pursuing relief through the MSPB could frustrate, rather

[6] The court concluded that "the MSPB's jurisdiction as articulated in Section 7543(d) is narrower than the scope of actions (*i.e.,* removal generally) for which Plaintiff has due process and statutory rights." *Comans I*, 2026 WL 1132803, at *4. The court also concluded that a removal undertaken under Article II does not constitute an action taken under 5 U.S.C. 7543(a) such that the MSPB is conferred jurisdiction by Section 7543(d)." *Id.* (citation modified).

than advance, 'the development . . . of a unitary and consistent Executive Branch position on matters involving personnel action,' add rather than "avoid[ ] an 'unnecessary layer of judicial review' in lower federal courts," and result in '[in]consistent judicial decisions.'" *Id.* (quoting *Fausto*, 484 U.S. at 449).[7]

Finally, although in *Comans I* the court had rejected the *Thunder Basin*-approach, later, in its July 21, 2026 decision on the merits, the court returned to the threshold jurisdictional issue and stated in a footnote that it has determined that "as an alternative basis for jurisdiction, Congress did not intend for Plaintiff's claims to be channeled under *Thunder Basin* [510 U.S. 200 (1994)], as articulated by Judge Furman in [*Comey*]." *See Comans II*, 2026 WL 2100037, at *3 n.1.

Although not the subject of this Court's August 18 Minute Order, the *en banc* Federal Circuit now is considering the scope of MSPB jurisdiction, in a consolidated appeal of two former immigration judges where Article II was invoked as the basis for removal. *See Jackler v. Dep't of Justice*, 178 F.4th 1327 (Fed. Cir. 2026) (per curiam). While the Board in the underlying cases had held that the removal restrictions in 5 U.S.C. § 7513(a) are unconstitutional as applied (in preventing the removal of the executive officers there), the Board also concluded that the proper disposition was to dismiss for lack of jurisdiction. *See Jackler v. DOJ*, 2026 M.S.P.B. 3, 2026 MSPB LEXIS 1551 (Mar. 20, 2026). The government, in its recently-filed brief to the Federal Circuit, has made clear it disagrees with the Board's conclusion that the as-applied unconstitutionality of procedural protections reflects a jurisdictional bar on MSPB review. *See* No. 26-1575 (Fed. Cir. Aug. 28, 2026) (Brief for Intervenor the Department of Justice, Dkt. 208)

---

[7] The *Comey* court further reasoned that if Congress had meant for the MSPB to review every action covered by Section 7512, regardless of the rationale invoked for the action, Congress would have repeated the phrase "covered by this subchapter" in Section 7513(d). *Comey*, 2026 WL 1142679, at *5.

(explaining that the correct approach would have been for the Board to exercise jurisdiction, but then deny relief *on the merits* for all the same reasons identified in its opinion.) Nonetheless, even the Board's opinion disclaiming jurisdiction would retain jurisdiction where Article II is improperly asserted (which Plaintiffs contend here).[8]

## III. *Comans* and *Comey* Misread the CSRA and are Contrary to Supreme Court and D.C. Circuit Precedent.

Several critical errors underlie the conclusion in *Comans* and *Comey* that a covered employee challenging a covered removal is not exclusively channeled through the MSPB. Or, as articulated in *Comey*, that the "path [to the MSPB, and in turn, to the Federal Circuit] is not open to [plaintiffs] because Congress did not include Article II removals within the scope of Chapter 75." *See* 2026 WL 1142679, at *8.

*First*, as *Comey* itself recognized (*see supra*), this conclusion leaves a gaping hole in Congress's deliberate effort, in passing the CSRA, to address a "leading purpose" of that legislation: "to replace the haphazard arrangements for administrative and judicial review of personnel action[s]." *Fausto*, 484 U.S. at 444. As to judicial review, the Supreme Court has noted, "there was dissatisfaction with the wide variations in the kinds of decisions . . . issued on the same or similar matters . . . under various bases of jurisdiction[.]" *Id*. at 445 (quotation omitted). And "beginning the judicial process at the district court level, with repetition of essentially the same review on appeal in the court of appeals" was understood to be "wasteful and irrational." *Id.* Congress enacted the CSRA specifically to address that "haphazard" system head-on, *id*. at 444, replacing it with a single, "integrated scheme of administrative and judicial review[.]" *Id* at 445.

[8] The Federal Circuit has set the *Jackler* appeal for *en banc* oral argument on December 10, 2026. *See id.* (Dkt. 209)

Thus, the upshot of *Comans* and *Comey* is that the MSPB and the Federal Circuit—which Congress chose for "consistent judicial decisions" in this field—would be cut out whenever an agency uttered the words "Article II." *Fausto*, 484 U.S. at 449 (quotation omitted); 5 U.S.C. § 7703(b)(1)(A). Employees covered under the CSRA would be able to challenge adverse personnel actions in district courts across the country and appeal to the regional circuits. This would likely result in precisely the patchwork of jurisdictional precedents and constitutional law governing the Executive Branch's removal decisions, which Congress specifically sought to eliminate. One district court could hold that an AUSA is removable at will while another could hold the opposite. And yet another court could hold that the Board has no jurisdiction at all. And district courts could disagree with the MSPB decisions. Simply put, allowing the underlying articulated theory for an adverse action to dictate jurisdiction would undermine the CSRA's integrated scheme of review and potentially result in a reversion to the pre-CSRA patchwork of review.

*Second*, it is implausible that the right of employees to seek relief from the MSPB "under this section," *see* 5 U.S.C. §§ 7513, 7543(d)—including relief such as back-pay—would depend solely on the agency's invocation of its underlying authority for the removal action, including Article II. In contrast to the MSPB, district courts are powerless to award back pay under the CSRA. *See Comans I*, 2026 WL 1132803, at *5; *Elgin*, 567 U.S. at 6. It makes no sense (and Congress never intimated) that the relief available would turn simply on the articulated basis for the removal. At base, Congress did not provide for a forum-selection regime—particularly in light of these practical consequences—simply by describing 5 U.S.C. §§ 7513(a), 7543(a) actions as "covered by this subchapter" and, under 5 U.S.C. §§ 7513(d), 7543(d), channeling actions "taken under this section" to the MSPB. If invocation of Article II was enough to defeat MSPB jurisdiction, agencies could manufacture district-court litigation by the form of a letter.

*Third*, applying the *Comans* and *Comey* courts' own reading of the CSRA in an internally consistent and cohesive manner leaves the MSPB no role in enforcing the procedural protections afforded to covered employees by the CSRA. Under the courts' reading, a removal that does not satisfy any of the conditions of Section 7513 (*i.e.,* "for such cause as will promote the efficiency of the service") or Section 7543 (*i.e.,* "for misconduct, neglect of duty, malfeasance ….") would not be "under" that section, and therefore not appealable to the MSPB. *See Comans I*, 2026 WL 1132803, at *3-4; *Comey*, 2026 WL 1142679, at *5-6. But Sections 7513 and 7543 also impose other requirements, for instance, that removals be preceded by "at least 30 days advance written notice," 5 U.S.C. § 7543(b)(1), and that employees be afforded "reasonable time . . . to answer orally and in writing[.]" *See id.* §§ 7513(b)(2); 7543(b)(2). Thus, on the courts' logic, if an aggrieved employee's right to appeal to the MSPB depends on satisfying § 7513(a) or § 7543(a), as appropriate, it must also depend on satisfying § 7513(b) or § 7543(b) because the pivotal language refers to action taken "under this section" in its entirety, not just subsection (a).

Thus, under the courts' reading of the statutes, where an employee merely receives 29 days' notice, or six days to furnish evidence, or even a written decision lacking in "specific reasons," or issued after undue delay, the path to the MSPB under Chapter 75 is closed. This would reduce the MSPB to reviewing the justifications for a "for cause" dismissal and the sufficiency of the evidence supporting those removals; it would have no role to play in adjudicating actions – even if "covered" by the CSRA—that were not taken consistent with either the "for cause" requirements of subsection (a) or the notice and procedural requirements in subsection (b). Put differently, the MSPB docket would be reduced to challenges on the merits of a given removal, with satisfaction of all the requirements of subsection (a)-(b) as a jurisdictional prerequisite. Needless to say, that conception of the MSPB's purview bears no resemblance to the agency that has, by Congressional

design, served as the preeminent venue for adjudicating employment claims by covered federal employees for decades. And rather than a hub of integrated administrative review, the MSPB now would work alongside 94 district courts to review adverse actions against federal employees.

*Fourth*, the *Comans* and *Comey* decisions provide no reason for departing from the plain reading of the text, set forth in Section I *supra*, which avoids these anomalies. The plain reading of the CSRA reflects that Sections 7513 and 7543 are the only sections in the respective subchapters that *authorize* removals. Congress's use of different language—"covered by this subchapter" in Sections 7513(a) and 7543(a), but "under this section" in Sections 7513(d) and 7543(d)— manifest this. Whereas Sections 7512 and 7542 simply list various types of actions that would be addressed in the following sections (*i.e.,* 7513 and 7543), it is Sections 7513 and 7543 that actually *authorize* taking those types of actions. And while § 7513(a)-(b) and § 7543(a)-(b) authorize the taking of various adverse actions (by reference to 7512 and 7542, respectively), Sections 7513(d) and 7543(d) address the employee's *response* to the taking of such an adverse action, which could have been taken under only Section 7513(a)-(b) and Section7543(a)-(b). Thus, there would have been no reason for Congress to describe the appeal right by reference to the entire subsection when reference to the only section authorizing the adverse action would have the same effect.

In other words, as explained above, Sections 7513(a) and 7543(a) set out the limits of when an agency can take a lawful action. Specifically, Section 7513(a) provides that an agency "may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service," and Section 7543(a) provides the SES analog: an agency "may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accept a position in a transfer of

function." *See Elgin*, 567 U.S. at 5. But neither of these subsections acts as a condition on the jurisdiction of the MSPB over appeals of adverse actions provided for under Sections 7513(d) and 7543(d). Indeed, the reason for the covered action is of no jurisdictional significance and, instead, goes only to the merits of the claim, which are properly evaluated by the MSPB itself.

That understanding of MSPB jurisdiction supports the underlying purpose of the CSRA, as described above; comports with statutory text; and is reaffirmed by longstanding MSPB regulations. Both the statute and regulations have long explicitly provided that the MSPB's appellate jurisdiction extends to removals, without relevant qualification, of covered employees, without qualification. *See* Part I, *supra*. At base, §§ 7513(d) and 7543(d) grant covered employees the right to appeal adverse actions to the MSPB under § 7701, and regulations expounding the scope of that appellate jurisdiction make repeatedly clear that such jurisdiction does not depend on the underlying reasons or authority pursuant to which the relevant adverse action was taken. *See id.* Indeed, Plaintiffs have a pending MSPB appeal invoked on this very ground.

*Fifth*, the district courts' imposition of a third jurisdictional element—a covered *reason* for the action—runs afoul of clear Supreme Court and D.C. Circuit precedent. As explained above, the Supreme Court repeatedly emphasized that whether jurisdiction lies with the MSPB is determined by the application of the first two sections of subchapters II and V: if a covered employee experiences a covered action, the CSRA precludes district courts from exercising jurisdiction over that action. *See Elgin,* 567 U.S. at 20 ("When a covered employee appeals a covered adverse action, the CSRA grants the MSPB jurisdiction over the appeal"); *id*. at 18 ("the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue."); *id.* at 13 ("In only one situation does the CSRA expressly exempt a covered employee's appeal of a covered action from Federal Circuit review based on the

type of claim at issue," namely "[w]hen a covered employee alleges that a basis for the action was discrimination." (quotation cleaned)).

Accordingly, the CSRA provides the totality of review, whether administrative or judicial, that is available to covered employees in the face of adverse employment action. Indeed, "the CSRA's elaborate framework demonstrates Congress'[s] intent to entirely foreclose judicial review [even] to employees to whom the CSRA denies statutory review," and likewise "indicates that extra-statutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Elgin*, 567 U.S. at 11. In other words, no cognizable cause of action outside of the CSRA exists in the district courts. And, when, as here, a plaintiff's claims arise from their federal employment relationship, "what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 68 (D.C. Cir. 2005) (Roberts, J.). *See also*, *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009). "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector," thereby demonstrating Congress's intention that "the statutory scheme … be exclusive with respect to claims within its scope," and thus precluding district-court jurisdiction. *Am. Fed. of Gov't Emps. v. Trump*, 929 F.3d 748, 755, 757 (D.C. Cir. 2019) (quotation cleaned). *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 560 (D.C. Cir. 2023) ("the CSRA provides individual claimants with an opportunity for meaningful judicial review" by way of "appeal of final MSPB decisions directly to the Federal Circuit.").[9]

[9] In *Comans I*, the court attempted to distinguish *Elgin* on the grounds that the employment action at issue there was within the scope of the CSRA's test, whereas Plaintiff Comans' removal was not. *See* 2025 WL 1132803 at *5. But nothing in *Elgin* suggests that difference would matter, or would support carving an exception. Similarly, the court in *Comey* attempted to distinguish *Fausto* on the grounds that "the employees there brought a statutory, not a constitutional challenge." 2026 WL 1142679, *10 n.15. But there too, the court cites nothing in the decision suggesting that this difference matters.

## IV. Under *Thunder Basin*, Plaintiffs' Claims are Properly Channeled to the MSPB.

With this understanding, the Court should follow the *Thunder Basin* analysis—which both sides have espoused—as outlined in Defendants' motion-to-dismiss briefs. At step one of the *Thunder Basin* analysis, *Elgin* teaches that the CSRA evinces Congress's intent to preclude district-court jurisdiction. *See* Defs.' Mem. of Law in Supp. of Rule 12(b)(1) Mot. to Dismiss for Lack of Jurisdiction, at 8-10, ECF No. 17-1 ("MTD"); *Elgin*, 567 U.S. at 10-13. As explained above, in *Comey*, at step one, the court erroneously concluded that the removal—where the agency cited only Article II for the removal—"was not 'an action . . . taken under' Section 7513 itself" and therefore "not within the purview of Section 7513(d)." 2026 WL 1142679, at *6. This improperly conflates the government's merits defense with the statutory characterization of the action, which remains a removal of a covered employee from the federal service. Rather, as explained, above, Plaintiffs' removal was based on a delegated exercise of the President's Article II removal authority, and thus did not follow the process for cause-based removals as set forth at 5 U.S.C. §§ 7513 and 754. This does not alter Congress's intent to preclude jurisdiction, which is manifested in the CSRA's statutory language and decades of Supreme Court precedent alike.

And at step two of that analysis, Plaintiffs' claims are channeled to the MSPB because they are "of the type Congress intended to be reviewed within this statutory structure." *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212 (1994); *see* MTD at 9–11. Plaintiffs are challenging their removals, and a challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit with the CSRA framework. *Elgin*, 567 U.S. at 22. Reinstatement and back pay are precisely the kinds of relief that that the MSPB and the Federal Circuit may provide. *Id.* As Plaintiffs themselves acknowledge, their removals from federal service are "covered" by the CSRA. Compl. ¶ 52. Meaningful judicial review remains available under the CSRA's scheme by way of the Federal Circuit; and claims like these, which aim to

vindicate Plaintiffs against removal, are neither "collateral" to the CSRA's review provisions nor "outside the agency's expertise," given the CSRA's detailed attention to the removal of federal employees. *See* MTD at 9–11. Indeed, the absence of district court jurisdiction does not foreclose meaningful review, as "the CSRA provides individual claimants with the opportunity for meaningful review" by way of "appeal of final MSPB decisions directly to the Federal Circuit." *Ahuja*, 62 F.4th at 560. As the court held in *Elgin,* the Board's inability to have the last word on constitutional questions is the reason that the Federal Circuit exists in this scheme. In sum, applying the *Thunder Basin* as outlined in Defendants' motion-to-dismiss briefs, the Court should dismiss for lack of jurisdiction.

## V. Even if *Comans* and *Comey* are Correct that an Article II-Removal Cannot be Appealed to the MSPB, this Court Still Lacks Jurisdiction Because Plaintiffs Failed to Exhaust Required Administrative Remedies.

Finally, even if the courts in *Comans* and *Comey* are correct in their reading of the CSRA that an Article II removal cannot be appealed to the MSPB, this in itself does not confer jurisdiction for this lawsuit in this court. Because Plaintiffs sustained a "personnel action" as defined in Chapter 23 of the CSRA, irrespective of the articulated basis for the action (*i.e.,* the Article II power), Plaintiffs were required to exhaust their administrative remedies by first presenting their claim to the Office of Special Counsel. It is undisputed they failed to do so.

Chapter 23 of CSRA defines the "prohibited personnel practice" as a "personnel action" that violates "any law, rule, or regulation implementing, or directly concerning, the merit system principles" set forth in the statute, 5 U.S.C. § 2302(b)(12), including "proper regard for . . . constitutional rights," *id*. § 2301(b)(2). If an employee believes that a prohibited personnel action has been taken, the employee must file his grievance with the OSC, which is charged with investigating "whether there are reasonable grounds to believe that a prohibited personnel practice

has occurred, exists, or is to be taken." *Id.* §§ 1212(a); 1214(a)(1)(A).[10] Thus, under these provisions, OSC has jurisdiction to investigate an employee's claim that a personnel action violated the Constitution. *See, e.g.*, *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1432 (D.C. Cir. 1996).

As the D.C. Circuit made clear in *Steadman v. Governor, U.S. Soldiers' & Airmen's Home,* 918 F.2d 963, 967 (D.C. Cir. 1990), for claims arising directly under the Constitution, the CSRA's exhaustion requirement is a jurisdictional prerequisite: "When [] statutory and constitutional claims are premised on the same facts and the CSRA remedy would have been fully effective in remedying the constitutional violation, exhaustion [of CSRA remedies] is mandated." (quotations omitted). A claim may escape the CSRA's exhaustion requirement if it is a constitutional challenge that "raises issues totally unrelated to the CSRA procedures." *Id.* That is not the case here: Plaintiffs' Due Process claims challenging the articulated Article II basis for the removal are not "totally unrelated to the CSRA procedures." Thus, even if the invocation of Article II as the basis for each Plaintiff's removal could somehow be said to deprive the MSPB of jurisdiction over their removals, Plaintiffs would be required to file alleged prohibited personnel practice complaints with the OSC and exhaust that process prior to bringing any constitutional challenge in district court. Plaintiffs could have done this, but undisputedly did not. Because they have failed to satisfy this jurisdictional prerequisite, *see id*., this Court lacks jurisdiction even if the *Comans* and *Comey* courts were somehow correct to say that the path to MSPB is "closed" to challenge the invocation of Article II removal.

[10] If the OSC finds a prohibited personnel practice, the OSC must file a report of its determination, recommendations and findings to the agency in question and to the MSPB. *See* 5 U.S.C. § 1214(b)(2)(B). If the agency takes no corrective action after a reasonable period, the OSC may petition the MSPB to direct the agency to do so. *Id.* § 1214(b)(2)(C).

## CONCLUSION

For the foregoing reasons, and for those identified in Defendants' motion to dismiss briefing, the Court should dismiss the Complaint for lack of jurisdiction.

Dated: September 15, 2026

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Steven M. Chasin*
STEVEN M. CHASIN, DC Bar# 495853
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 305-0747
Steven.M.Chasin2@usdoj.gov

*Counsel for Defendants*