**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL M. GORDON *et al*,

*Plaintiffs*,

*v.*

EXECUTIVE OFFICE OF THE PRESIDENT *et al*,

*Defendants*.

No. 1:25-cv-02409-JMC

**PLAINTIFFS' RESPONSE TO COURT'S AUGUST 18, 2026 MINUTE ORDER REGARDING NOTICES OF SUPPLEMENTAL AUTHORITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. Defendants' Argument Fails at *Thunder Basin* Step Two ........ 2

II. Defendants' Argument Fails Because The MSPB Lacks Jurisdiction ........ 4

III. Defendants' Argument Also Fails at *Thunder Basin* Step One ........ 11

IV. Defendants May Not Argue Failure to Exhaust at This Time and Exhaustion Would Be Futile ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## Cases

*Abdelfattah v. DHS*, 787 F.3d 524 (D.C. Cir. 2015) .......... 10
*Abramowitz v. Lake*, 803 F.Supp.3d 1 (D.D.C. 2025) .......... passim
*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) .......... 3, 10
*Carr v. Saul*, 593 U.S. 83 (2021) .......... 3, 12
*Cf. United States v. Smalls*, 720 F.3d 193 (4th Cir. 2013) .......... 12
*Coleman v. Napolitano*, 65 F. Supp. 3d 99 (D.D.C. 2014) .......... 10
*Comans v. Executive Office of the President*, No. 1:25-cv-01237, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026) .......... passim
*Comans v. Executive Office of the President*, No. 1:25-cv-01237, 2026 WL 2100037 (E.D. Va. July 21, 2026) .......... 1, 4
*Comey v. Department of Justice*, No. 25-cv-7625, 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) .......... passim
*Dellinger v. Bessent*, No. 25-5052, 2025 WL 935211 (D.C. Cir. March 27, 2025) .......... 12
*Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012) .......... 6, 7, 8
*Elgin v. Dep't of the Treasury*, 641 F.3d 6 (1st Cir. 2011) .......... 7
*Feds for Med. Freedom v. Bien*, 63 F.4th 366 (5th Cir. 2023), *vacated as moot*, .......... 13
*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477 (2010)* .......... 3
*King v. Jerome*, 42 F.3d 1371 (Fed. Cir. 1994) .......... 6
*Krafsur v. Davenport*, 736 F.3d 1032 (6th Cir. 2013) .......... 13
*Marbury v. Madison*, 1 Cranch 137 (1803) .......... 3
*Margolin v. Nat'l Ass'n of Immigration Judges*, 146 S. Ct. 1285 (2026) .......... 11
*McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp*., 606 U.S. 146 (2025) .......... 10
*Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) .......... 11
*Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90 (D.C. Cir. 1986) .......... 12
*Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) .......... 10
*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) .......... passim
*Trump v. Slaughter*, 146 S. Ct. 2283 (2026) .......... 12

## Statutes

5 U.S.C. § 3328 .......... 7
5 U.S.C. § 3393(g) .......... 4
5 U.S.C. § 7503(a) .......... 6, 7
5 U.S.C. § 7511(a)(1)(C) .......... 6
5 U.S.C. § 7513 .......... 7
5 U.S.C. § 7513(a) .......... 6, 7
5 U.S.C. § 7513(d) .......... 6, 7
5 U.S.C. § 7541 .......... 4
5 U.S.C. § 7542 .......... 5
5 U.S.C. § 7701(a) .......... 6

5 U.S.C. 5596(b)(1) .......... 8
5 U.SC. § 7543 .......... 5, 9
5 U.SC. § 7543(a) .......... 5, 9
5 U.SC. § 7543(b) .......... 5, 9
5 U.SC. § 7543(d) .......... 4, 5, 9
28 U.S.C. 1346(a)(2) .......... 8
28 U.S.C. 1491(a)(1) .......... 8

**Regulations**

Executive Order 14215, 90 Fed. Reg. 10,447 (Feb. 18, 2025) .......... 12

Plaintiffs submit this memorandum in response to this Court's August 18, 2026 order regarding notices of supplemental authority.

## **ARGUMENT**

Defendants, in their memorandum in response to the Court's order, ECF No. 30, discount the mounting precedent affirming federal court jurisdiction over the subject matter of this case – a challenge to the Attorney General's exercising of the President's asserted Article II authority to terminate the Plaintiffs in violation of the Civil Service Reform Act ("CSRA"). Defendants dismissively refer to "two out-of-circuit court cases," ECF No. 30 at 1, but at this time three separate District Courts, including this Court, have affirmed federal court jurisdiction. *See Comey v. Department of Justice*, No. 25-cv-7625, 2026 WL 1142679 (S.D.N.Y. Apr. 28, 2026) (ECF No. 25); *Comans v. Executive Office of the President*, No. 1:25-cv-01237, 2026 WL 1132803 (E.D. Va. Apr. 15, 2026) ("*Comans I*"); (ECF No. 24); *Comans v. Executive Office of the President*, No. 1:25-cv-01237, 2026 WL 2100037 (E.D. Va. July 21, 2026) ("*Comans II*") (ECF No. 28) (together "*Comans*"); *Abramowitz v. Lake*, 803 F.Supp.3d 1 (D.D.C. 2025).

These decisions are correct for three separate reasons: (1) all three courts correctly held that Defendants' argument that Congress implicitly deprived this Court of federal question jurisdiction fails at step two of the analysis required under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); (2) the *Comans* and *Comey* courts correctly held that the Merit Systems Protection Board ("MSPB") lacks jurisdiction when the President or the Attorney General, exercising the President's Article II authority, terminates an employee *via* a naked assertion of that authority rather than for cause as permitted by the CSRA; (3) congressional intent to channel cases to the MSPB is no longer discernable in the statutory scheme because the MSPB is no longer independent from the President and thus Defendants' argument also fails at step one of the *Thunder*

*Basin* analysis.

Finally, Defendants' new argument that Plaintiffs failed to exhaust administrative remedies is not properly before this Court as it was not made in their Motion to Dismiss (ECF 17). Moreover, resort to the Office of Special Counsel (OSC) would be futile where the President's authority is at issue. The President has asserted the authority to instruct all members of the executive branch, including the Special Counsel, how to construe and apply the law and has already fired one Special Counsel unilaterally and without cause.

## I. Defendants' Argument Fails at *Thunder Basin* Step Two

We begin with the rationale adopted by all three of the courts that have addressed this issue: Defendants' argument that Plaintiffs may only proceed before the MSPB fails at step two of the analysis set forth in *Thunder Basin* – a test all parties agree applies here.

The second prong of the *Thunder Basin* test requires courts to consider "whether [the] claims are of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 212. That is not the case here where Defendants make the unprecedented claim that the CSRA is unconstitutional as applied to the President and his Department heads when they invoke his Article II authority, as was explained in the Plaintiffs' Opposition at 18-22 (ECF No. 21). The three courts that have ruled on this issue all agree.

This Court in *Abramowitz* held it had subject matter jurisdiction under step two. *Id*., 803 F. Supp. 3d at 1113. The Court rested its step two analysis on "the plain fact that the MSPB has no comparative advantage when it comes to the separation of powers issue at the heart of this dispute." *Id*. at 13. The *Abramowitz* Court held that the "discrete question [whether the plaintiff was unlawfully fired] necessarily raises the issue—and indeed, the defendants' sole merits defense—of whether Congress's structuring of the appointment and removal of the director of Voice of

America runs afoul of constitutional separation of powers. And cases questioning the constitutionality of such statutes are routinely held to be 'collateral' to agency review schemes." *Id.* at 12.

The Southern District of New York in *Comey* reached the same conclusion. The *Comey* Court found that all three of the factors courts must consider under *Thunder Basin* step two cut in favor of federal court jurisdiction. Focusing on factors two and three, the *Comey* Court explained:

> The second *Thunder Basin* factor — whether the claims at issue are "wholly collateral to [the] statute's review provisions" — also cuts in Comey's favor. . . . At issue here is whether Article II power can be exercised without regard to a congressional statute — that is, whether the CSRA, and its prescribed enforcement mechanisms, are unconstitutional as applied to Article II removals. A claim of that nature is hardly "commonplace"; instead, "as in *Free Enterprise Fund*," it involves a challenge "to the structure or very existence of" the CSRA. *Axon*, 598 U.S. at 189; *id.* at 192 (explaining that a claim is collateral where it "challeng[es] the [agency's] power to proceed at all, rather than actions taken in the agency proceedings"); *Abramowitz* . . . .
>
> Finally, as in *Axon*, "the Government here does not pretend that [Comey's] constitutional claims are ... intertwined with or embedded in matters on which the [MSPB or Office of Special Counsel] are expert." 598 U.S. at 195. That is because, again, in terminating Comey, Defendants relied only on Article II of the Constitution, not on the CSRA. Comey's claims, in turn, raise fundamental questions about Executive Branch power under Article II — including whether and how far down the Executive Branch chain the President can delegate his constitutional removal authority — and the constitutional separation of powers. The MSPB (and Office of Special Counsel) may know "a good deal" about the CSRA specifically and personnel matters generally, but they know "nothing special about the separation of powers." *Id.* at 194; *see Carr*, 593 U.S. at 92 ("[A]gency adjudications are generally ill suited to address structural constitutional challenges"); *see also Thunder Basin*, 510 U.S. at 215 ("[A]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies"). By contrast, such matters are the traditional province of Article III courts. *See Marbury v. Madison*, 1 Cranch 137, 177 (1803) (holding that the Constitution is the "fundamental and paramount law of the nation," and "[i]t is emphatically the province and duty of the judicial department to say what the law is").
>
> In sum, "[a]ll three *Thunder Basin* factors thus point in the same direction — toward allowing district court review of" Comey's claims. *Axon*, 598 U.S. at 195. Her claims "cannot receive meaningful judicial review" through the CSRA; "[t]hey are

> collateral to any decisions" the MSPB (or Office of Special Counsel) could make; and "they fall outside the [agency's] sphere of expertise." *Id.* at 195-96. It "follows" that her claims "are not 'of the type' the statutory review scheme[ ] reach[es]," *id.* at 196 (quoting *Thunder Basin*, 510 U.S. at 212), and this Court may review them pursuant to its ordinary federal question jurisdiction.

2026 WL 1142679 at * 11 (cleaned up).

Finally, the Eastern District of Virginia agreed with the holding of the two other courts in *Comans II,* citing both *Abramowitz* and *Comey. See* 2026 WL 2100037 at *n. 1.

Defendants' cursory treatment of *Thunder Basin* step two, (ECF No. 30 at 17-18), wholly fails to address the reasoning of the prior decisions.

This Court should join this well-reasoned consensus.[1]

## II. Defendants' Argument Fails Because The MSPB Lacks Jurisdiction

The *Comans* and *Comey* courts found that they had subject matter jurisdiction for an additional reason: that the MSPB lacks jurisdiction over the claims of these employees fired *via* an assertion of Article II authority. *Comans I*, 2026 WL 1132803 at *3-5; *Comey*, 2026 WL 1142679 at *5-6.

The *Comans I* Court reasoned:

> To start, Plaintiff was a member of the [Senior Executive Service] SES.[[2]] . . . A member of the SES may not be removed from the SES except in accordance with certain statutes. 5 U.S.C. § 3393(g). . . . [T]he only provision pertinent to Plaintiff's removal here is 5 U.S.C. 7543(d), which is a part of Subchapter V ("Senior Executive Service") of Chapter 75 of the CSRA. . . .
>
> Subchapter V is composed of three sections. 5 U.S.C. § 7541 provides definitions "[f]or the purpose of this subchapter," including who is an SES "employee . . . . 5

---

[1] If this Court agrees with the prior decisions on these grounds, it need not proceed to the alternative grounds explained in Sections II and III.

[2] Here, Plaintiff Tirrell was also a member of the SES, *see* ECF 1, Complaint ¶ 8. Plaintiffs Gordon and Hartman were not, but, as set forth below in the discussion of the *Comey* decision, parallel reasoning applies to the provisions of the CSRA covering Comey, Gordon, and Hartman as Defendants acknowledge. *See* ECF No. 30 at 3 ("Subchapters II and V are structured similarly and include analogous (and largely identical) provisions.")

U.S.C. § 7542 ("Actions covered") states in relevant part that "[t]his subchapter applies to a removal from the civil service or suspension for more than 14 days". . . . 5 U.S.C. § 7543 ("Cause and procedure") is more comprehensive, stating in pertinent part:

> (a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function.
> (b) An employee against whom an action covered by this subchapter is proposed is entitled to [certain process].
> ....
> (d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.
> ....

Several things are evident from all of this. First, an "*action covered by this subchapter*," defined in Section 7542 to include removal from the civil service, may only be taken against Plaintiff for the causes specified in Section 7543(a). 5 U.S.C. § 7543(a) (emphasis added). Plaintiff may not be removed otherwise. . . .

Second, the due process procedures articulated in Section 7543(b) apply to "an employee against whom an *action covered by this subchapter* is proposed." 5 U.S.C. § 7543(b) (emphasis added). That is, the procedures in Section 7543(b) are required regardless of the basis of a proposed action, so long as the type of action is covered by Section 7542 (including a removal from the civil service).

Third, Section 7543(d) makes clear that the MSPB only has jurisdiction over "[a]n employee against whom an *action is taken under this section*." 5 U.S.C. § 7543(d) (emphasis added). MSPB jurisdiction is not extended to an "action covered by [Subchapter V]" via Section 7542 in the abstract, but rather *only* to an "action covered" by Section 7542 "taken under" and for the causes permitted by Section 7543(a)—"misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function."
Thus, the MSPB's jurisdiction as articulated in Section 7543(d) is narrower than the scope of actions (i.e., removal generally) for which Plaintiff has due process and statutory rights. Plaintiff's termination pursuant only to "Article II" does not constitute an "action [ ] taken under" 5 U.S.C. § 7543(a) such that MSPB is conferred jurisdiction by Section 7543(d).

To hold otherwise would be to equate "actions covered by" Subchapter V with "actions [ ] taken under" Section 7543. But Congress could have used the former term in the latter's place in Section 7543(d) and did not. And "when Congress deliberately uses different words, we presume those words to 'have different

> meanings.'" . . . This is especially so where the difference in meaning bears on the scope of the MSPB''s jurisdiction, which is not plenary and must be construed "narrowly" to include "only those actions *specificall*y granted by some law, rule, or regulation." *King v. Jerome*, 42 F.3d 1371, 1374 (Fed. Cir. 1994) (emphasis added).

2026 WL 1132803 at *3-4.

The *Comey* court reasoned similarly, in the process directly refuting Defendants' argument (ECF No. 30 at 2 that all that is required for MSPB jurisdiction is a covered employee subject to a covered action:

> Subchapter II of Chapter 75 of the CSRA, which "governs review of major adverse actions taken against employees 'for such cause as will promote the efficiency of the service,' " *Elgin*, 567 U.S. at 5 (quoting 5 U.S.C. §§ 7503(a), 7513(a)), is most relevant here. Significantly, however, Section 7513(d) does not channel all actions against all employees within the scope of that Subchapter into the MSPB. Instead, that jurisdiction-channeling provision is limited by its terms to "action[s] ... taken under" Section 7513 alone. And Section 7513(a), in turn, provides that "an agency may take an action covered by this subchapter against an employee *only* for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (emphasis added). It follows that Section 7513(d) channels into the MSPB — and, by extension, the Federal Circuit — *only* a subset of covered actions, namely those that were taken "for such cause as will promote the efficiency of the service." *See* 5 U.S.C. § 7701(a) ("An employee... may submit an appeal to the Merit Systems Protection Board from any action which is *appealable to the Board under any law, rule, or regulation*." (emphasis added)). Had Congress intended otherwise, and meant for the MSPB's jurisdiction to extend to all actions covered by Subchapter II, regardless of the statutory authority invoked, it need only have repeated Section 7513(a)'s phrase "covered by this subchapter" in Section 7513(d). When, as here, "Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional." . . .
>
> That all but compels the conclusion that Comey's case belongs in federal court — not in the MSPB. *Yes, Comey was an employee "covered" by Subchapter II of Chapter 75 of the CSRA.* See *5 U.S.C. § 7511(a)(1)(C). And yes, she was removed, which is an action also "covered" by Subchapter II.* See id. *§ 7512. But she was not removed "for such cause as will promote the efficiency of the service," the category of removals that Subchapter II reg*ulates. *Id.* § 7513(a).[7] Instead, Defendants cited one and only one reason for her removal: Article II of the Constitution. . . . It follows that her removal was not "an action ... taken under" Section 7513 itself, which means that her removal was not within the purview of Section 7513(d), the provision that defines the metes and bounds of the MSPB's jurisdiction under Subchapter II of Chapter 75. In other words, Comey challenges

> agency action taken separate and apart from the CSRA, not pursuant to it, and thus is not subject to administrative channeling. She does not, as in *Elgin* (upon which Defendants rely heavily), "seek to carve out an exception to CSRA exclusivity for" federal employees. *Elgin*, 567 U.S. at 12. Instead, Defendants' sole reliance on the Constitution — rather than the CSRA's removal provisions — places Comey's case outside the universe of cases that Congress intended the MSPB to resolve

2026 WL 1142679, at *5-6 (cleaned up and emphasis added).

Defendants attempt to undermine the *Comans* and *Comey* courts' reasoning by citing general language in cases that did not raise similar constitutional challenges to the CSRA itself or the ability of the MSPB to enforce the Act. Defendants rely heavily on *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), but *Elgin* involved an employee fired for cause under the CSRA and the constitutional question was not whether the MSPB could apply the CSRA to the action, but whether the MSPB should find a lack of cause because the statute applied by the employing agency (the Selective Service Act) was unconstitutional. The prior decisions distinguished *Elgin* on precisely that grounds. The *Comans I* court explained:

> in *Elgin*, the "employment action at issue" *was* within the scope of the CSRA's text. There, the plaintiff employees were discharged for failure to register for Selective Service pursuant to 5 U.S.C. § 3328 (and challenged the constitutionality of that statute), which constituted a removal "for such cause as will promote the efficiency of the service"—5 U.S.C. § 7513, which is materially similar to Section 7543, specifically permits removal "taken under this section" on that basis and accordingly permits appeal to the MSPB for such removal. 5 U.S.C. § 7513(d); *Elgin*, 567 U.S. at 5, 7; *see also* 641 F.3d 6, 8 (1st Cir. 2011). As discussed above, and unlike the removals in *Elgin*, Plaintiff's removal here was not "taken under" the applicable CSRA section such that the MSPB has jurisdiction.")

2026 WL 1132803 at *5 (cleaned up). The *Comey* court similarly distinguished *Elgin*:

> Comey's case is different from every case cited by Defendants." The Supreme Court "observed in *Elgin* that "Subchapter II of Chapter 75 governs review of major adverse actions taken against employees '*for such cause as will promote the efficiency of the service*,' " 567 U.S. at 5 (emphasis added) (quoting 5 U.S.C. §§ 7503(a), 7513(a)).

2026 WL 1142679 at *6 & n.7. *See also Abramowitz*, 803 F.Supp.3d at 12 ("Abramowitz's claim is vastly different from the removal claim at issue in *Elgin.)*

Defendants' further efforts to undermine the reasoning of the prior cases are similarly misguided.

First, Defendants argue that the decisions create "a gaping hole" in the exclusive jurisdiction of the MSPB. ECF No. 30 at 11. But, as they acknowledge on the next page, it is the current administration that has opened the hole based on its unprecedented assertion of authority to ignore the provisions of the CSRA and thus it is the administration that controls the size of the hole. *See id*. at 12 ("the MSPB . . . would be cut out whenever an agency uttered the words 'Article II'" and "agencies could manufacture district-court litigation by the form of a letter").

Second, Defendants argue that it is "implausible" that Congress would have deprived employees like the Plaintiffs of the ability to appeal to the MSPB when district courts lack authority to grant them backpay. ECF No. 30 at 12. But, if that is the unambiguous meaning of the statute, as the *Comans* and *Comey* courts found, the predicted consequence cannot alter this Court's holding. Moreover, Defendants are wrong about the consequences. District Courts have authority to award back pay up to $10,000 under 28 U.S.C. 1346(a)(2) (the "Little Tucker Act"), and, if a District Court holds that an employees was "affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay," a subsequent action in the Court of Claims under the Tucker Act can result in full back pay even if that exceeds $10,000. 5 U.S.C. 5596(b)(1) (Back Pay Act). *See also* 28 U.S.C. 1491(a)(1) (Tucker Act).

Third, Defendants argue that the *Comans* and *Comey* courts' reasoning would strip the MSPB of jurisdiction anytime an agency makes a procedural error in taking an otherwise covered adverse action. ECF No. 30 at 13-14. But that is not the implication of either decision. Take the

*Comans*' reasoning, for example. Defendants argue that, under the Court's reasoning, any procedural violation of 5 U.SC. § 7543(b), such as a failure to provide 30-days' notice, would also deprive the MSPB of jurisdiction. But the language cited by the *Comans* court in Subsection 7543(d) is "against whom an action is taken under this section." The phrase "taken under" clearly refers to actions authorized by Subsection 7543(a), *i.e.,* actions taken for cause. If Defendants were correct, Subsection 7543(b) would read "against whom an action is taken under and in compliance with this section." That is not what the text states and, thus, the *Comans* and *Comey* holding do not preclude MSPB review of adverse actions that are procedurally deficient.

Fourth, Defendants argue that the difference in statutory wording relied on by the *Comans* and *Comey* courts has no significance because, again using *Comans* as an example, Section 7543 is the only section in the subchapter that authorizes removal of SES employees, thus, "there would have been no reason for Congress to describe the appeal right by reference to the entire" subchapter. ECF No. 30 at 4. But that observation undercuts Defendants' own argument as it suggests that the *Comans* and *Comey* courts would have been correct even if Congress had used the words "under this subchapter" because Section 7543 is the only section of the subchapter authorizing removal. Thus, "under this subchapter" means the same thing as "under this section" for the relevant purpose. And Congress simply made doubly sure to grant a right to appeal to the MSPB only to employees removed for the reasons specified in Subsection (a) of Section 7543 by using the words "under this section" instead of "under this subchapter." If Defendants were correct, Congress would have used different language entirely. Congress could, for example, have provided that "[a]n employees against whom an action described in this subchapter is taken is entitled to appeal to the [MSPB]." But Congress did not so provide, and the *Comans* and *Comey* courts properly gave meaning to the precise words used in the statute.

Finally, Defendants conclude this portion of their argument by suggesting that if the MSPB lacks jurisdiction, Plaintiffs would be without any remedy because "the CSRA provides the totality of review, whether administrative or judicial that is available to covered employees in the face of adverse employment action" even to employees "to whom the CSRA denies review." Dkt. No. 30 at 16. But that broad and harsh application of the doctrine of implied preclusion flies in the face of the Supreme Court's increasing skepticism concerning such. *See McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp*., 606 U.S. 146, 157 (2025) ("When Congress wants to preclude judicial review … it can easily say so."); *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 217 (2023) (Gorsuch, J., concurring) ("Respectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon.").

Moreover, Defendants' assertion is plainly wrong as applied to constitutional claims like the due process claims Plaintiffs plead here. The D.C. Circuit "time and again . . . has affirmed the right of civil servants to seek equitable relief [in federal district court] against their supervisors, and the agency itself, in vindication of their constitutional rights." *Spagnola v. Mathis*, 859 F.2d 223, 229-30 (D.C. Cir. 1988). *See also Abdelfattah v. DHS*, 787 F.3d 524, 534 (D.C. Cir. 2015) (explaining that "the CSRA [Civil Service Reform Act] did not preclude judicial review of federal employees' constitutional claims altogether. Civil servants and job applicants could still 'seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights.'"). As this Court has held, there is no implied preclusion of ordinary federal question jurisdiction when such preclusion would "deny any judicial forum for a colorable constitutional claim." *See Coleman v. Napolitano*, 65 F. Supp. 3d 99, 104–05 (D.D.C. 2014).

If this Court does not agree with the *Comans*, *Comey*, and *Abramowitz* courts that the CSRA does not implicitly preclude federal question jurisdiction under *Thunder Basin* step two,

*i.e.*, that the MPSB does not have exclusive jurisdiction over Plaintiffs' claims, it should conclude that the MSPB lacks jurisdiction over Plaintiffs' claims.

### III. Defendants' Argument Also Fails at *Thunder Basin* Step One

In our original opposition, ECF No. 21 at 3-18, we argued that congressional intent to strip federal courts of jurisdiction over cases of this type was not "fairly discernible in the statutory scheme" and thus Defendants' argument failed at *Thunder Basin* step one. 510 U.S. at 207. We demonstrated that was the case because the lynchpin of the CSRA was an independent MSPB and that no longer exists and Congress did not intend to strip federal courts of jurisdiction and relegate federal employees to an MSPB fully controlled by the President, particularly in a case where the President's own actions and legal positions are at issue.

In our prior argument, we relied on *Nat'l Ass'n of Immigration Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025), while also pointing out that the President's assumption of control over the MSPB was even more complete than at the time that case was decided. . Since the filing of our Opposition, the Supreme Court reversed that decision, but on other grounds (lack of presentment). *See Margolin v. Nat'l Ass'n of Immigration Judges*, 146 S. Ct. 1285 (2026). This remains an independent grounds for retaining jurisdiction over this case.

### IV. Defendants May Not Argue Failure to Exhaust at This Time and Exhaustion Would Be Futile

Defendants did not previously argue that a failure to exhaust administrative remedies was grounds for dismissal in their original motion. ECF No. 17-1. Rather, they argued only that a failure to exhaust the appeal process at the MSPB was grounds for denying a writ of mandamus. *Id*. at 17. Defendants never mentioned the OSC, the agency they now suggest Plaintiffs must first resort to in order to exhaust administrative remedies. ECF No. 30 at 18. Moreover, the new exhaustion argument is not responsive to the Court's August 18, 2026, order requesting further briefing related

to the supplemental authorities submitted by the Plaintiffs. The argument is thus not properly before the Court. *Cf. United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013) ("new arguments cannot be raised in a reply brief.")

Moreover, resort to the OSC would be futile. The Supreme Court "has consistently recognized a futility exception to exhaustion requirements." *Carr v. Saul*, 593 U.S. 83, 93 (2021). "It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested." *Id*.

That is the case here, where (1) the Defendants, including the Executive Office of the President and the Attorney General, assert the President had unilateral authority to fire Plaintiffs despite the protections of the CSRA, (2) the President asserts unilateral authority to fire the Special Counsel, did fire the Special Counsel, and that unilateral termination without cause was effectively upheld by the Supreme Court in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026). *See Dellinger v. Bessent*, No. 25-5052, 2025 WL 935211 (D.C. Cir. March 27, 2025) (dismissing appeal as moot and vacating District Court decision after former Special Counsel indicated he no longer wished to pursue his claims); and (3) the President asserts that he and the Attorney General, acting under his supervision, have the authority to instruct all actors in the executive branch, including the heads of formerly independent agencies such as the OSC, how to construed and apply the law. *See* Executive Order 14215, 90 Fed. Reg. 10,447 (Feb. 18, 2025), https://public-inspection.federalregister.gov/2025-03063.pdf. "Resort to the administrative process is futile if the agency will almost certainly deny any relief." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986). That is clearly true of any resort to the current Special Counsel by Plaintiffs under those circumstances. To require Plaintiffs to resort to a process in which the President and the Attorney General, whose actions would be challenged, can dictate

the outcome and the President can remove the decision-maker if he disagrees with the outcome would be to demand a futile act.[3]

## CONCLUSION

For the reasons stated above, as well as those stated in our original Opposition, this Court should deny the motion to dismiss and retain jurisdiction over this case.

Dated: September 29, 2026

Respectfully submitted,

*/s/ Harold Craig Becker*
Harold Craig Becker (DDC No. 371239)
Norman L. Eisen (DDC No. 435051)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue, S.E., No. 15180
Washington, D.C. 20003
T: (202) 594-9958
craig@democracydefenders.org
norman@democracydefenders.org

Abbe David Lowell (DDC No. 358651)
David A. Kolansky (DDC No. 7680722)
Isabella M. Oishi (DDC No. 7680428)
LOWELL & ASSOCIATES, PLLC
1250 H Street, N.W., Suite 250
Washington, D.C. 20005
T: (202) 964-6110
F: (202) 964-6116
ALowellpublicoutreach@lowellandassocates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

Heidi R. Burakiewicz (DDC No. 476973)
BURAKIEWICZ & DEPRIEST, PLLC
1120 Connecticut Avenue, N.W., Suite 600
Washington, D.C. 20036
T: (202) 856-7500
HBurakiewicz@bdlawdc.com

Mark S. Zaid (DDC No. 440532)
Bradley P. Moss (DDC No. 975905)
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
T: (202) 498-0011
Mark@markzaid.com
brad@markzaid.com

*Counsel for Plaintiffs*

---

[3] The Special Counsel could simply take no action and Plaintiffs would have no recourse. The OSC has "total and unfettered discretion to decide whether to bring the claims before the MSPB." *Feds for Med. Freedom v. Bien*, 63 F.4th 366, 380 (5th Cir. 2023), *vacated as moot*, 144 S.Ct. 480 (2023). S*ee also Krafsur v. Davenport*, 736 F.3d 1032, 1034 (6th Cir. 2013) ("[I]f the Special Counsel ... declines to refer the case to the Board, the employee is out of luck. A court may not review the Special Counsel's decisions unless the Counsel has declined to investigate a complaint at all."